UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                                             :
STATE OF NEW YORK and DENISE M. SHEEHAN as
Trustee of the Natural Resources,
                                                             :

                                    Plaintiffs,              :          89-CV-815

          -against-                                          :          Senior
                                                                        ~~Chief~~ Judge Scullin
HONEYWELL INTERNATIONAL INC.,                                :

                                    Defendant.               :

-------------------------------------------------------------X

> **U.S. DISTRICT COURT - N.D. OF N.Y.**
> **FILED**
> JAN - 4 2007
> AT_____ O'CLOCK_____
> Lawrence K. Baerman, Clerk - Syracuse

# CONSENT DECREE BETWEEN THE STATE OF NEW YORK
# AND HONEYWELL INTERNATIONAL INC.

**DATED: OCTOBER 11, 2006**

# CONTENTS

Page

REPRESENTATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTION (¶¶ 18-19) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

HONEYWELL'S OBLIGATIONS (¶¶ 20-43 ) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Remedial Design Workplan (¶¶ 22-27) . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    Remedial Design Contents (¶¶ 28-29) . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    Remedial Action ("Construction") and Reporting (¶¶ 30-35) . . . . . . . . . 11

    Modification of the Remedial Program (¶¶ 36-37) . . . . . . . . . . . . . . . . . 13

    Progress Reports (¶¶ 38-39) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

    Review of Submittals (¶¶ 40-43) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

DISPUTE RESOLUTION (¶¶ 44-52) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VIOLATIONS OF THE CONSENT DECREE (¶¶ 53-59) . . . . . . . . . . . . . . . . 20

    Stipulated Penalties (¶¶ 55-56) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    Force Majeure (¶¶ 57-58) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    Upland Sources (¶ 59) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

ENTRY UPON SITE (¶ 60) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

PAYMENT OF COSTS INCURRED BY THE STATE (¶¶ 61-67) . . . . . . . . . . 24

FINANCIAL ASSURANCE (¶¶ 68-73) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

RESERVATION OF RIGHTS (¶¶ 74-79) . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

INDEMNIFICATION (¶ 80) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

i

COMMUNICATIONS (¶¶ 81-86). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

ENVIRONMENTAL EASEMENTS (¶ 87). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

COMPLIANCE WITH LEGAL REQUIREMENTS (¶¶ 88-89). . . . . . . . . . . . . . . 38

CONTRIBUTION PROTECTION (¶ 90). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

COVENANT NOT TO SUE (¶¶ 91-92). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CITIZEN PARTICIPATION (¶ 93). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

LODGING AND OPPORTUNITY FOR PUBLIC COMMENT (¶ 94) . . . . . . . . . . 41

MISCELLANEOUS (¶¶ 95-104) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

CONSENT DECREE CONTROLS (¶ 105) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

TERMINATION OF CONSENT DECREE (¶ 106 ). . . . . . . . . . . . . . . . . . . . . . . 44

COURT'S CONTINUING JURISDICTION (¶ 107). . . . . . . . . . . . . . . . . . . . . . 44

The State of New York, Denise M. Sheehan, as Commissioner of Environmental Conservation, the Department of Environmental Conservation ("DEC") (collectively, the "State") and Honeywell International Inc. ("Honeywell"), a corporation organized and existing under the laws of the State of Delaware, represent as follows:

1. On June 27, 1989, the State filed this lawsuit against Allied-Signal Inc., pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and state law, *inter alia*, to compel a cleanup of Onondaga Lake, its tributaries and related upland areas, to recover all response costs incurred and to be incurred by the State in responding to the contamination, and to recover natural resource damages. Honeywell is the successor to Allied-Signal Inc.

2. The complaint alleges, *inter alia*, that there have been releases and that there is a threat of further releases of hazardous substances, as that term is defined by section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and other waste substances from Honeywell's industrial facilities which have contaminated the sediments and surface water of Onondaga Lake and its tributaries and upland areas.

3. On March 16, 1992, this Court entered an interim consent decree ("RI/FS Consent Decree") which provided, *inter alia*, for the performance of a Remedial Investigation and Feasibility Study ("RI/FS"), performed in accordance with federal and state laws and regulations, to address contamination and the threat of further contamination of Onondaga Lake, its tributaries and related upland areas (collectively, "Onondaga Lake site"). The RI/FS Consent Decree specified the various investigations, studies and reports that were required, and established a schedule for their completion.

1

4. The RI/FS Consent Decree, as subsequently amended, provided that, based on the studies and reports generated by the RI/FS process, as well as other information available to it, the State would develop and make available for public comment proposed plans for remedial actions at sites related to the Onondaga Lake site, *e.g.*, the Onondaga Lake Bottom subsite (alternatively, "Lake Bottom subsite") and the Geddes Brook/Ninemile Creek site, and that after considering the public comments on the proposed plans, the Commissioner of Environmental Conservation would adopt a final remedy for each site in a Record of Decision ("ROD").

5. On September 30, 1993, the United States Environmental Protection Agency ("EPA") and DEC entered into a cooperative agreement ("Cooperative Agreement") pursuant to section 104(d) of CERCLA, 42 U.S.C. § 9604(d), which agreement provides, in relevant part, that DEC will be the lead agency with respect to the Onondaga Lake site and will prepare draft RODs for subsites, subject to EPA approval, and take the lead in all enforcement actions to ensure that responsible parties commit to undertake necessary work to investigate and remediate subsites.

6. On December 16, 1994, EPA listed Onondaga Lake, its tributaries, and those upland sites which have contributed or are contributing hazardous substances to the Lake and its tributaries on the National Priorities List ("Onondaga Lake NPL site") pursuant to section 105(a)(8)(B) of CERCLA, 42 U.S.C. § 9605(a)(8)(B). 59 Fed. Reg. 65209 (December 16, 1994).

7. The RI/FS for the Onondaga Lake Bottom subsite (a discrete portion of the Onondaga Lake NPL site) was completed in November 2004 in accordance with the schedule set by this Court.

8. Based on information obtained during the RI/FS process, the State has determined that

2

the Onondaga Lake Bottom subsite is contaminated with hazardous substances, within the meaning of section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and hazardous wastes, within the meaning of the New York State Environmental Conservation Law ("ECL") § 27-1301, generated by Honeywell's industrial facilities. The State has also determined that there have been releases and there are threats of additional releases of hazardous substances and hazardous wastes from the Lake Bottom subsite.

9. Pursuant to ECL § 27-1305, the Onondaga Lake Bottom, referred to herein as a subsite, is listed as a Class 2 site on the New York State Registry of Inactive Hazardous Waste Disposal Sites as site number 7-34-030. A Class 2 site is one that poses a significant threat to the environment.

10. On November 29, 2004, in accordance with the schedule set by this Court, the State released the "Proposed Plan" for remedial action at the Lake Bottom subsite for the purpose of soliciting and considering public comment. The Proposed Plan described the remedial alternatives considered for the Onondaga Lake Bottom subsite, identified the preferred remedy and set forth the rationale for this preference. The public comment period closed on March 1, 2005. A subsequent public comment period commenced on April 1, 2005 and concluded on April 30, 2005.

11. As part of the review procedure, the Proposed Plan was also submitted to EPA's National Remedy Review Board.

12. On July 1, 2005, in accordance with the schedule set by this Court, and after duly considering the public's comments, Denise M. Sheehan, acting Commissioner of Environmental Conservation, and Kathleen C. Callahan, acting Regional Administrator for EPA Region 2,

jointly selected a remedy in a ROD for the Lake Bottom subsite and released their responses to the comments received from the public on the Proposed Plan. A copy of the July 1, 2005 ROD without appendices is attached hereto as Appendix A. On December 14, 2006, the State and EPA jointly issued an Explanation of Significant Differences ("ESD") documenting certain modifications to the remedy. A copy of the ESD is attached hereto as Appendix B. The July 1, 2005 ROD as modified by the December 14, 2006 ESD is hereinafter referred to as the "ROD."

13.  In order to address the threat to public health, welfare and the environment posed by the contamination of the Lake Bottom subsite, the selected remedy, broadly described, provides for: (i) dredging and proper disposal of as much as approximately 2,653,000 cubic yards of contaminated sediments and wastes; (ii) construction of an isolation cap over an estimated 425 acres in the shallower areas (littoral zone); (iii) construction of a thin-layer cap over an estimated 154 acres in the deeper areas (profundal zone); (iv) performance of a pilot study which involves the introduction of oxygen into the profundal zone; (v) re-establishment of habitat injured by implementation of the remedy and enhancement of habitat in certain near-shore areas; (vi) monitored natural recovery in areas of the profundal zone; (vii) implementation of institutional controls; and (viii) long-term operation, maintenance and monitoring.

14.  Pursuant to ECL Article 27, Title 13; ECL Article 71, Title 27; and ECL § 3-0301, the State has the responsibility and authority to establish the terms and conditions under which Honeywell will design and implement the remedy selected in the ROD for the Onondaga Lake Bottom subsite, and Honeywell would be obligated pursuant to ECL § 27-1313 to design and implement the selected remedy in compliance with the terms and conditions established by the State.

15. Pursuant to ECL article 27, the State can implement the selected remedy for the Lake Bottom subsite and, pursuant to CERCLA, 42 U.S.C. §§ 9607(a), 9613(g)(2), can recover all related response costs incurred or to be incurred by the State from Honeywell, or, alternatively, the State and Honeywell can resolve the State's claims for response costs incurred and to be incurred in designing and implementing the selected remedy pursuant to a settlement agreement which obligates Honeywell to design and implement the selected remedy for the Onondaga Lake Bottom subsite under agreed upon terms and conditions.

16. The State and Honeywell are desirous of avoiding potentially costly and time-consuming litigation, and therefore have agreed to the terms and conditions pursuant to which Honeywell will design, subject to State approval, and implement, under State oversight, the remedy selected in the ROD for the Onondaga Lake Bottom subsite, which terms and conditions are set forth below. The State and Honeywell have further agreed to the entry of this agreement as an order of the Court.

17. The State has determined that the settlement agreement embodied in this Consent Decree is in the public interest.

**NOW, THEREFORE**, it is **ORDERED, ADJUDGED and DECREED** as follows:

### JURISDICTION

18. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367(a) and 42 U.S.C. § 9613(b), and has jurisdiction over the parties to this Consent Decree. The Court does not have jurisdiction pursuant to this Consent Decree over any claims of the United States pursuant to Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607.

5

**19.** The undersigned representative of each party certifies that he or she is fully authorized to enter into this Consent Decree and to execute and bind the party to its terms. Honeywell hereby waives any right it may have to a hearing under the ECL for Matters Addressed by this Consent Decree as that term is defined in paragraph 90, below.

## HONEYWELL'S OBLIGATIONS

**20.** Honeywell is permanently enjoined and directed to comply with the terms and conditions set forth herein.

**21.** Honeywell shall:

**A.** Develop and implement, in accordance with the ROD for the Onondaga Lake Bottom subsite (hereinafter, alternatively, the "Site") and this Consent Decree, including in all respects the Statement of Work ("SOW") attached hereto as Appendix C, pursuant to the ECL, CERCLA, and the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. Part 300 ("NCP"), an inactive hazardous waste disposal site remedial program that shall consist of the design, implementation, operation, maintenance and monitoring of the remedy selected by DEC and EPA and documented in the ROD ("Remedial Program" or "Remedial Design/Remedial Action program" or "RD/RA program"), as set forth below; and

**B.** Reimburse all costs incurred by the State as and to the extent set forth below.

**Remedial Design Work Plan**

**22.** Within 150 days after the entry of this Consent Decree, Honeywell shall prepare and submit to the State for review and approval a Remedial Design Work Plan ("RDWP") concerning the implementation of the remedy that is selected and documented in the ROD.

6

**23.** The RDWP shall, *inter alia*, propose activities that are to precede remedial design including, but not limited to, sampling and pilot testing. The RDWP shall be prepared in accordance with relevant EPA and DEC guidance documents and the attached SOW.

**24.** The RDWP shall include, but not be limited to, the following elements:

**A.** A Site-specific description of Remedial Design ("RD") activities, which activities may be broken down into one or more distinct projects or modules, together with a schedule for the performance of these activities;

**B.** A summary of the field activities that were performed as part of the Fall 2005 and 2006 Pre-design Investigation pursuant to DEC Administrative Consent Order Index No. D7-0002-05-08, which became effective August 19, 2005;

**C.** A discussion of the need to perform further Pre-design Investigative activities. This shall state the need to submit a Pre-design Investigation Work Plan and a schedule for doing so. The Work Plan shall include a Sampling and Analysis Plan ("SAP"), which shall include:

**i.** A quality assurance project plan that describes the quality assurance and quality control protocols necessary to achieve the initial data quality objectives. This plan shall designate a data validation expert and must describe such individual's qualifications and experience;

**ii.** A field sampling plan that defines sampling and data gathering methods in a manner consistent with the *Compendium of Superfund Field Operations Method* (EPA/540/P-87/001, OSWER Directive 9355.0-14, December 1987) as amended, and supplemented by DEC;

**D.** A plan to secure physical security and posting of the Site;

7

**E.** A health and safety plan ("HASP") to protect persons at and in the vicinity of the Site during the RD described herein, during implementation of the RDWP, and during and after completion of remedial construction. The updated HASP shall be prepared in accordance with 29 CFR § 1910 by a certified health and safety professional. Honeywell shall provide supplements to the HASP as necessary to ensure the health and safety of all persons at and in the vicinity of the Site;

**F.** A narrative description of the RD, including a description of the remedial goals for the Site, as stated in the ROD, and the means by which each element of the selected remedial alternative will be implemented to achieve those goals; and

**G.** A schedule for the submission of each of the RD documents that together with the pre-design documents will form the RD Contents pursuant to paragraph 28. The submission due dates for certain RD documents, as determined by the State, will be triggered by State approval of prior submissions.

**25.** Within 30 days after the State approves the RDWP, Honeywell shall commence the activities authorized therein.

**26.** Honeywell shall perform the RDWP activities in accordance with the State-approved RDWP.

**27.** During the performance of field activities pursuant to the RDWP, Honeywell shall have on-site a full-time representative who is qualified to supervise the work done.

**Remedial Design Contents**

**28.** In accordance with the schedule for RD submissions contained in the approved RDWP, Honeywell shall prepare and submit to the State for review and approval remedial design

8

document(s) for the implementation of the remedy that was selected by DEC and EPA in the ROD for the Site, in accordance with this Consent Decree and the attached SOW.  The RD shall be prepared by and have the signature and seal of a professional engineer who shall certify that the RD was prepared in accordance with this Consent Decree.  The RD may consist of a series of documents in accordance with the approved RDWP, in which case each design document shall be so certified.

**29.** The RD shall include the following:

**A.** A detailed description of the remedial goals for the Site, as set forth in the ROD;

**B.** A detailed description of each element of the remedy and the means by which each element will be implemented to achieve the remedial goals for the Site, including, but not limited to:

**i.** A summary of findings concerning each pre-design project identified and completed pursuant to the RDWP of this Consent Decree.  Each such summary of findings shall:

**a.** include all data generated and all other information obtained during the performance of the RDWP activities;

**b.** identify any additional data that must be collected in order to design the relevant aspect of the remedy pursuant to the ROD and this Consent Decree;

**c.** include a certification by the individual or firm with primary responsibility for the day-to-day performance of the

9

RDWP that all activities that comprised the RDWP were performed in full accordance with the State-approved RDWP; and

**d.** include a reference to the geographic location of the sample point for all sample data supplied.  Such location information must be referenced to either the New York Transverse Mercator or New York State Plane Coordinate System.  All vertical data shall be referenced to the National Geodetic Vertical Datum, 1929 adjustment;

**ii.** The construction and operation of any structures;

**iii.** The containment, collection, destruction, treatment, and/or disposal of hazardous substances and wastes, their constituents, and any related degradation products, and of any soil, sediments or other materials contaminated thereby;

**iv.** The containment, collection, destruction, treatment, and/or disposal of contaminated water, dredge effluent, porewater, groundwater, leachate, and air;

**v.** The quality control and quality assurance procedures and protocols to be applied during implementation of the RD; and

**vi.** Monitoring which integrates needs that are present on-site and off-site during and subsequent to the implementation of the selected remedial alternative;

**C.** "Biddable Quality" documents for the RD including, but not limited to,

10

documents and specifications prepared, signed, and sealed by a professional engineer. These plans shall be consistent with all applicable local, state and federal laws, rules and regulations;

      **D.** A detailed time schedule to implement the RD;

      **E.** The parameters, conditions, procedures, and protocols to determine the effectiveness of the RD, including a schedule for periodic sampling of all relevant environmental media, on-site and off-site;

      **F.** A description of operation, maintenance, and monitoring ("OM&M") activities to be undertaken at and in the vicinity of the Site, which details the operation and maintenance procedures to be employed during system startup as well as on a long-term basis, and which describes the long-term OM&M strategy and schedule;

      **G.** A contingency plan to be implemented if any element of the RD, when implemented, fails to achieve any of its objectives or otherwise fails to protect human health or the environment, to ensure that such objectives and protections are achieved ("Remedial Program Contingency Plans"); and

      **H.** A citizen participation plan which incorporates appropriate activities outlined in the DEC's publication, *Citizen Participation in New York's Hazardous Waste Site Remediation Program -- A Guidebook*, dated June, 1998, and any subsequent revisions thereto, and 6 NYCRR Part 375.

**Remedial Action ("Construction") and Reporting**

    **30.** Honeywell shall commence construction of the State-approved RD in accordance with the schedule set forth therein.

    **31.** Honeywell shall implement remedial construction activities ("Remedial Action" or

11

"Remedial Construction") in accordance with the approved RD.

32. During implementation of all Remedial Construction activities, Honeywell shall have available a full-time representative who is qualified to supervise the work done. A representative shall be physically on-site during normal business hours and otherwise shall be easily accessible by telephone.

33. Upon completion of Remedial Construction or any State-approved module, Honeywell shall accompany State personnel or their representatives on a pre-final inspection to ensure compliance with the ROD and approved RD. Following the pre-final inspection, the State will, in writing, either specify the corrective measures necessary to comply with the approved RD, as appropriate, or will determine that construction is complete. If the State requires corrective measures, Honeywell shall undertake the corrective measures according to a schedule approved by the State, subject to the dispute resolution provisions of this Consent Decree.

34. Within 90 days after the State determines in writing that the Remedial Construction for the Site, or any approved module thereof, is complete, Honeywell shall submit to the State "as-built" drawings and a final engineering report (each including any changes made to the RD during construction), and a certification by a professional engineer that the RD was implemented and all construction activities were completed in accordance with the State-approved RD. The "as built" drawings, final engineering report, and certification shall be hereinafter referred to as the Remedial Construction Certification Report. The Remedial Construction Certification Report(s) shall be prepared, signed, and sealed by a professional engineer and shall fulfill the requirements of a Remedial Action Report in accordance with *Closeout Procedures for National Priority List Sites*, EPA 540-R-98-016, OSWER Directive 9320.2-09A-P, January 2000 and any

12

revisions thereto. After receipt of the Remedial Construction Certification Report(s), the State

will notify Honeywell in writing whether all related construction activities have been completed

in compliance with the approved RD.

35.    In accordance with the schedule submitted in the State-approved RD, Honeywell

shall submit a detailed post-remedial OM&M plan to the State for review and approval. The

OM&M Plan shall conform with EPA guidelines contained in *Considerations for Preparation of

Operation and Maintenance Manuals*, EPA 68-01-0341 and any revisions thereto. Upon the

State's approval of the OM&M Plan, Honeywell shall implement the approved OM&M Plan in

accordance with its requirements.

**Modification of the Remedial Program**

36.    The State may in writing request Honeywell to modify any element of the

Remedial Program, including any submittal, and to perform any corresponding additional work if

the State determines, as a result of reviewing data generated by an activity required under this

Consent Decree or as a result of reviewing any other data or facts, that such modification is

necessary in order to implement the remedy or meet the goals established in the ROD.

Honeywell shall be obligated to take such action as the State determines necessary pursuant to

this paragraph, subject to the dispute resolution provisions of paragraphs 44-52, and provided

that the State's requirements are consistent with the scope of the remedy selected in the ROD, do

not materially expand the scope of the remedy selected in the ROD, and are consistent with the

SOW. For purposes of this paragraph, the term "materially expand" shall mean a modification

that results in: (1) a fundamentally new technical approach to the remedy; or (2) the addition of a

significant component to the scope of the remedy. A modification which Honeywell is obligated

13

to implement pursuant to this paragraph is hereinafter referred to as an "Included Modification."
Included Modification shall also include within its meaning any modification that the parties
have agreed to in writing.  Nothing in this Consent Decree shall affect the State's right, in
conjunction with EPA, to modify or amend the ROD.  However, references to the ROD in this
Consent Decree are to the ROD adopted by the State and EPA in July 2005 as modified by the
December 14, 2006 ESD.

     **37.**     In the event that the State requires a modification pursuant to paragraph 36 and
Honeywell believes that the proposed modification is not an Included Modification, then
Honeywell may invoke the Dispute Resolution procedures set forth in paragraphs 44-52.  If the
modification is determined either by agreement in writing of the parties or pursuant to the
Dispute Resolution procedures set forth in paragraphs 44-52 not to be an Included Modification,
then, as regards such modification, the parties reserve all claims, rights and defenses as provided
in paragraph 78.

**Progress Reports**

     **38.**  Honeywell shall submit to the State (see paragraphs 81-83 for recipients and number
of copies to be distributed) written monthly progress reports that:

     **A.**  Describe the actions which have been taken toward achieving compliance with
this Consent Decree during the previous month;

     **B.**  Include the raw data received by Honeywell during the previous month
concerning sampling undertaken and test results generated pursuant to this Consent Decree, and
all other raw data and/or validated data received or generated by Honeywell or Honeywell's
contractors, laboratories or other agents during the previous month, including quality

assurance/quality control information that has become available during the previous month, whether conducted pursuant to this Consent Decree or conducted independently by Honeywell;

**C.** Identify all work plans, reports, and other deliverables required by this Consent Decree that were completed and submitted during the previous month;

**D.** Describe all actions, including, but not limited to, data collection and implementation of work plans, that are scheduled for the next month and provide other information relating to the progress at the Site;

**E.** Include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Honeywell's obligations under the Consent Decree, and efforts made to mitigate those delays or anticipated delays;

**F.** Include any modifications to any work plans that Honeywell has proposed to the State or that the State has approved; and

**G.** Describe all activities undertaken in support of the Citizen Participation Plan during the previous month and those to be undertaken in the next month.

**H.** Honeywell shall submit these progress reports to the State by the tenth day of every month following the effective date of this Consent Decree; provided, however, that the State may allow a reduced schedule (such as quarterly) after completion of remedial construction.

**39.** Honeywell shall allow State and EPA representatives to attend, and shall provide the State at least 14 days advance written notice of the following: pre-bid meetings; pre- construction meetings; job progress meetings; substantial completion meeting(s); substantial completion inspection(s); final inspection and meeting(s); and OM&M meetings.

15

**Review of Submittals**

**40.** The State will review each of the submittals Honeywell makes pursuant to this Consent Decree to determine whether it was prepared, and whether the work done to generate the data and other information in the submittal was done, in accordance with this Consent Decree and generally accepted technical and scientific principles. The State shall notify Honeywell in writing of its approval or disapproval of each submittal, except for the Health and Safety Plan submittals discussed in paragraph 24.E. All State-approved submittals shall be incorporated into and become an enforceable part of this Consent Decree.

**41.** Because the Site has been designated as a subsite of the Onondaga Lake NPL site, the State shall provide EPA with a reasonable opportunity for review and shall seek EPA's written comments on all submittals required under this Consent Decree.

**42.** If the State disapproves a submittal, it shall so notify Honeywell in writing and shall specify the reasons for its disapproval. Within 60 days after receiving written notice that Honeywell's submittal has been disapproved, Honeywell shall make a revised submittal to the State that addresses and resolves all of the State's stated reasons for disapproving the first submittal; provided, however, that this time frame may be extended by the State if the parties agree that additional time is necessary and appropriate in order to resolve any issues related to the submittal. All remedial design submissions by Honeywell, including revised submittals, shall be consistent with this Consent Decree, including the appendices thereto including the SOW.

**43.** After receipt of the revised submittal, the State shall notify Honeywell in writing of its approval or disapproval. If the State approves the revised submittal, it shall be incorporated into and become an enforceable part of this Consent Decree. If the State disapproves the revised

16

submittal, unless Honeywell invokes Dispute Resolution as provided in paragraph 44, Honeywell

shall be in violation of this Consent Decree and the State may take any action or pursue whatever

rights it has pursuant to this Consent Decree; provided, however, that the State may allow

Honeywell to submit an additional revised document if the State determines that an additional

submission by Honeywell will likely resolve its concerns.

## DISPUTE RESOLUTION

**44.** The State's disapproval of a submittal or a final revised submittal under paragraphs

40, 42- 43, and determinations made by the State under paragraphs 33 (completion of

construction and corrective measures), 34 ( construction complete certification), 35 (OM&M

Plan), 36-37 (Remedial Program modifications), 43 (modification, amplification and expansion

of a submittal and performance of corresponding additional work), 54 (takeover), 57 (force

majeure), 59 (upland sources) and 69, 71-73 (financial assurance) of this Consent Decree are

subject to dispute resolution pursuant to this paragraph, provided that (i) within 10 business days

of receipt of the State's notice of disapproval of a submittal or a revised submittal or notice of an

above-listed determination, Honeywell requests in writing that the matter in dispute be resolved

by the DEC's Deputy Commissioner for Air/Waste Management ("Deputy Commissioner") and,

(ii) within 30 business days of receipt of the State's notice of disapproval of a submittal or a

revised submittal or notice of an above-listed determination, Honeywell submits a written

statement of the issues in dispute, which shall include the facts upon which the dispute is based,

the factual data, analysis or opinion supporting Honeywell's position, and all supporting

documentation on which it relies, including, if applicable, affidavits and/or declarations

(hereinafter, "Statement of Position"). The State shall serve its Statement of Position, and all

17

supporting documentation, including, if applicable, affidavits and/or declarations no later than 30

business days after receipt of Honeywell's Statement of Position.  Honeywell shall have 10

business days after receipt of the State's Statement of Position within which to serve  a reply to

the State's Statement of Position, and in the event Honeywell serves such a reply, the State shall

have 10 business days after receipt of Honeywell's reply within which to serve the State's sur-

reply.  In the event that Honeywell does not timely comply with the requirements of this

paragraph, then the State's disapproval or determination at issue shall be deemed final and

binding on Honeywell.  The time periods for the exchange of Statements of Position and replies

may be modified upon agreement in writing of the parties.  An administrative record of any

dispute under this paragraph shall be maintained by the State.  The record shall include the

Statement of Position served by each party and any relevant information submitted by a party to

the dispute.  The record shall be available for review by Honeywell and the public, consistent

with the Freedom of Information Law (New York Public Officers Law Article 6).

**45.**  Upon review of the administrative record as developed pursuant to paragraph 44, the

Deputy Commissioner shall issue a final decision resolving the dispute.

**46.**  If the subject of the dispute was a written submittal, except as provided in paragraph

51, Honeywell shall submit a revised submittal in accordance with the Deputy Commissioner's

decision within 15 business days of such decision, unless the decision provides for a longer

period.

**47.**  After receipt of the revised submittal, the State shall notify Honeywell in writing of

its approval or disapproval of the revised submittal.

**48.**  If the revised submittal fails to comply with the Deputy Commissioner's decision, and

18

the State disapproves the revised submittal for this reason, Honeywell shall be in violation of this Consent Decree.

**49.** If the subject of the dispute is a determination made by the State, except as provided in paragraph 51, and Honeywell fails to abide by the final decision of the Deputy Commissioner within 15 business days of such decision or such longer period as the Deputy Commissioner may prescribe in the final decision, Honeywell shall be in violation of this Consent Decree.

**50.** The invocation of formal dispute resolution procedures under paragraph 44 shall not stay or excuse the performance of work required pursuant to the disputed State determination, or the transmission of a revised submittal required by the disputed State disapproval, except by written agreement of the State or by the Deputy Commissioner upon written application from Honeywell. Honeywell shall have the burden of establishing the necessity and appropriateness of such a stay or excuse based on the likelihood of success on the merits with respect to the matter in dispute and a balancing of the equities. The Deputy Commissioner's decision to not grant an extension is subject to judicial review pursuant to paragraph 51.

**51.** The decision of the Deputy Commissioner shall be final and binding upon Honeywell unless within 30 days of receipt of the Deputy Commissioner's decision, Honeywell petitions this Court for review by motion filed pursuant to the Federal Rules of Civil Procedure and the rules of this Court. The filing of a motion by Honeywell pursuant to this paragraph shall not stay or excuse the performance of work or the transmission of submittals required by the Deputy Commissioner's decision with respect to the disputed matter, except by written agreement of the State or by order of the Court upon Honeywell's application. Honeywell shall have the burden of establishing, before the Court, the necessity and appropriateness of such a stay or excuse based

19

on the likelihood of success on the merits with respect to the matter in dispute and a balancing of the equities.

**52.** In the event that Honeywell invokes the dispute resolution provisions of paragraph 51, the State's position shall not be set aside or revised by the Court unless Honeywell proves that the State's position is arbitrary, capricious or not in accordance with law.

## VIOLATIONS OF THE CONSENT DECREE

**53.** In the event that Honeywell violates any provision of this Consent Decree, in addition to the payment of stipulated penalties as provided in paragraphs 55-56, the State may also seek an enforcement order from this Court to compel Honeywell to comply with its obligations.

**54.** In addition to the provisions in paragraph 53, in the event the State determines Honeywell has failed to perform any substantial portion of its obligations pursuant to this Consent Decree, the State retains its rights under CERCLA, 42 U.S.C. § 9614(a) and the ECL § 27-1313(5)(a) to conduct the complete RD/RA program at the Onondaga Lake Bottom subsite and Honeywell shall be liable to the State for all costs incurred or to be incurred by the State including any costs previously incurred by the State while overseeing Honeywell's RD/RA efforts. The State will provide Honeywell 60 days written notice, where reasonable under the circumstances, of its intent to conduct the RD/RA program. If the State conducts such work, Honeywell shall preserve any records pertaining to site work and/or RD/RA work already conducted. Honeywell may invoke the Dispute Resolution procedures set forth in paragraphs 44-52 to dispute DEC's determination that takeover of the RD/RA program is warranted under this paragraph.

20

**Stipulated Penalties**

**55.** Honeywell's failure to comply with any term of this Consent Decree that is not
otherwise subject to dispute resolution under paragraph 44 of this Consent Decree, or
Honeywell's failure to comply with any provision of this Consent Decree that is subject to
dispute resolution, but as to which Honeywell has not timely invoked dispute resolution or has
failed to abide by the final decision of the Deputy Commissioner or an order of the Court
concerning a submittal or a determination, shall constitute a violation of this Consent Decree.
Notwithstanding the preceding sentence, any failure of any element of the Remedial Program
shall not constitute a violation of this Consent Decree to the extent that Honeywell is complying
with the Remedial Action Contingency Plan and any modification required by the State pursuant
to paragraph 36, provided that such modification is an Included Modification within the meaning
of that term as set forth in paragraph 36.

**56.** Unless Honeywell has invoked dispute resolution pursuant to paragraph 44,
Honeywell shall be liable for payment to the State of the sums set forth below as stipulated
penalties for each day or part thereof that Honeywell is in violation of any term of this Consent
Decree. For each violation, penalties begin to accrue on the first day Honeywell is in violation of
the terms of this Consent Decree and continue to accrue through the final day of correction of
such violation. Violations which are determined on a rolling four-week average basis shall
constitute a violation on each day of such four week period provided, however, that no penalty
shall be assessed for any day for which a penalty has already been assessed as part of a prior four
week period. Such sums shall be due and payable within 15 days after receipt of notification
from the State assessing the penalties. If such payment is not received within 15 days after

21

Honeywell receives such notification from the State, interest shall be payable at the annual rate of 9% on the overdue amount from the day on which it was due through, and including, date of payment. Penalties shall be paid by certified check or money order, made payable to the "New York State Department of Environmental Conservation" and shall be delivered personally or by certified mail, return receipt requested, to the Director, Division of Environmental Enforcement, NYSDEC, 625 Broadway, Albany, New York 12233-5500 with a copy to the Attorney of Record at the Office of the Attorney General, Environmental Protection Bureau, 120 Broadway, New York, NY, 10271. Payment of the penalties shall not in any way alter Honeywell's obligation to complete performance under the terms of this Consent Decree. Stipulated penalties shall be due and payable under this paragraph pursuant to the following schedule:

| Period of Non-Compliance | Penalty Per Day |
| --- | --- |
| First through 15th day | $ 1,000 |
| 16th through 30th day | $ 5,000 |
| 31st day and thereafter | $ 10,000 |

**Force Majeure**

**57.** Except as otherwise provided, Honeywell's failure to comply with any term of this Consent Decree constitutes a violation of this Consent Decree. Notwithstanding the foregoing, Honeywell shall not suffer any penalty if it cannot comply with any requirement hereof because of an act of God, war, riot, or an event (including prohibitively severe or extraordinary weather conditions which materially interfere with implementation of the Remedial Program) beyond the control of Honeywell or its agents in carrying out Honeywell's obligations under this Consent Decree which cannot be overcome by their due diligence ("Force Majeure Event"). A Force

22

Majeure Event specifically excludes a lack of sufficient financial resources. In the event of a

Force Majeure, Honeywell shall be obligated to perform the affected activities within a time

period which shall not exceed the time period of the delay reasonably attributed to the Force

Majeure. In the event of a dispute, Honeywell shall bear the burden of proving that any delay

results from circumstances which constitute a Force Majeure, that the delay could not have been

overcome by due diligence, and that the proposed length of the delay is reasonably attributed to

the Force Majeure.

 **58.** Honeywell shall notify the State in writing within five days of when it obtains

knowledge of any condition which may delay performance of its obligations under this Consent

Decree. Honeywell shall include in such notice the measures taken and to be taken by

Honeywell to prevent or minimize any delays and shall request an appropriate extension or

modification of this Consent Decree. Failure to give such notice within such five-day period

constitutes a waiver of any claim that a delay is attributable to a Force Majeure event.

**Upland Sources**

 **59.** Honeywell's failure to achieve a Remedial Action Objective ("RAO") or, if

applicable, Preliminary Remediation Goal ("PRG") set forth in the ROD in any area of the Lake

shall not constitute a violation of this Consent Decree provided that Honeywell demonstrates that

the failure is caused solely by hazardous substance(s) that migrated into Onondaga Lake from an

upland source ("upland hazardous substance") after the State approved the Remedial Action

portion of the Remedial Program for that area of the Lake. As used in this paragraph, the term

"caused solely" shall mean that Honeywell would have achieved the RAO(s) or PRG(s) in the

area of the Lake in issue but for the presence of the upland hazardous substance(s) in that area;

23

and the term "upland source" shall mean a source of hazardous substances which is outside the boundaries of Onondaga Lake, *e.g.*, upstream from the mouth of Ley Creek, that is not owned or controlled by Honeywell and where hazardous substances generated by Honeywell were not disposed. Any dispute arising under this paragraph shall be subject to the dispute resolution provisions in paragraphs 44-52.

## ENTRY UPON SITE

**60.** Honeywell hereby consents to the entry at all reasonable times upon the Site or areas in the vicinity of the Site which may be under the control of Honeywell, upon notice which is reasonable under the circumstances, presented by any duly designated employee, consultant, contractor, or agent of the State or EPA for purposes of oversight, including but not limited to inspection, sampling, and testing activities and otherwise ensuring Honeywell's compliance with this Consent Decree. Honeywell shall provide the State with suitable office space at the Site, including a telephone and high-speed internet cable access, and shall permit the State full access to all Site-related data including Site-related data contained in privileged records and non-privileged records relating to matters addressed by this Consent Decree, and job meetings.

## PAYMENT OF COSTS INCURRED BY THE STATE

**61.** Honeywell shall reimburse the State for all response costs incurred by the State related to the Site within 30 days of receipt of an invoice itemizing such costs. Such costs shall include response costs incurred by the State prior to the entry of this Consent Decree that have not been reimbursed by Honeywell, including without limitation, costs incurred by the State related to the remedial investigation/feasibility study ("RI/FS") for the Site, as well as costs to be incurred subsequent to the entry of this Consent Decree.

**62.** Honeywell shall reimburse the State in accordance with itemized invoices for all response costs incurred by the State, including, but not limited to, direct labor, fringe benefits, indirect costs, travel, analytical costs, and contractor costs incurred by the State for work related to the Site, including, without limitation, all costs related to reviewing and revising submittals made pursuant to this Consent Decree, overseeing activities conducted pursuant to this Consent Decree, collecting and analyzing samples, enforcement and dispute resolution (including attorney's time), and administrative costs associated with this Consent Decree. The State's response costs do not include response costs incurred by EPA in overseeing response actions with respect to the Site.

**63.** Personal service costs shall be documented by reports of Direct Personal Service, which shall identify the employee name, title, bi-weekly salary, and time spent (in hours) on the project during the billing period, as identified by an assigned time and activity code. Approved agency fringe benefit and indirect cost rates shall be applied. Non-personal service costs shall be summarized by category of expense (*e.g.*, supplies, materials, travel, contractual) and shall be documented by expenditure reports.

**64.** Invoices shall be sent to Honeywell at the following address:

> Honeywell International Inc.
> 5000 Brittonfield Parkway, Suite 700
> East Syracuse, NY 13057
> Attn: John P. McAuliffe

**65.** Payments to the State shall be made by certified check payable to the "New York State Department of Environmental Conservation" and shall be sent to:

> Bureau of Program Management

Attn:  Bureau Director
Division of Environmental Remediation
New York State DEC of Environmental Conservation
625 Broadway, 12th Floor
Albany, NY 12233-7016

A copy of all correspondence including any certified checks shall be sent to:

Norman Spiegel
Andrew J. Gershon
Assistant Attorneys General
Environmental Protection Bureau
120 Broadway
New York, NY 10271-0332

**66.** Each party shall notify the other in writing within 90 days of any change in the foregoing addresses.

**67.** Honeywell may contest, in writing, invoiced costs if it believes (i) the cost documentation contains clerical, mathematical, or accounting errors; (ii) the costs are not related to the State's activities with respect to the Remedial Program for the Site; or (iii) the State is not entitled to recover such costs from Honeywell under the ECL, the New York State Finance Law, CERCLA, the Cooperative Agreement or any other statutory, regulatory or common law provision.  If Honeywell objects to an invoiced cost, Honeywell shall pay all costs not objected to within the time frame set forth above, and shall, within 30 days after its receipt of an invoice, identify in writing all costs objected to and state the basis of the objection.  The objection shall be submitted to the Director of the Bureau of Program Management of the Division of Environmental Remediation ("BPM Director").  The BPM Director or the BPM Director's designee shall have the authority to relieve Honeywell of the obligation to pay invalid costs.  The State's determination resolving the objection shall be final and binding upon Honeywell and

26

Honeywell shall pay the amount which the BPM Director or the BPM Director's designee determines Honeywell is obligated to pay within 45 days of Honeywell's receipt of the State's determination unless Honeywell petitions this Court for review within the above-described 45-day period. The State's determination shall not be set aside or revised by the Court unless Honeywell proves that the State's position is arbitrary, capricious or not in accordance with law.

## FINANCIAL ASSURANCE

68. Based upon financial representations and assurances made by Honeywell to the State, the State has no reason to believe that Honeywell presently does not have the financial ability to complete the Remedial Program. On the first anniversary of the entry of this Consent Decree, Honeywell shall demonstrate its financial ability to complete the Remedial Program, by submitting to the State a copy of Honeywell's most recent Annual Report. Each year thereafter, until the termination of the Consent Decree as provided in paragraph 106, Honeywell shall submit its most recent Annual Report to the State within 30 days of publication of such report.

69. In the event that the State determines that the financial representations and assurances provided by the Annual Report and/or other information available to the State do not demonstrate Honeywell's ability to complete the Remedial Program, then Honeywell shall establish and maintain financial security in the amount then needed to complete the Remedial Program, in one or more of the following forms:

A. A surety bond guaranteeing performance of RD/Remedial Construction and post-implementation OM&M;

B. One or more irrevocable letters of credit, payable to or at the direction of the State, equaling the total estimated cost of the RD/Remedial Construction and OM&M;

27

**C.** A trust fund established for the benefit of the State;

**D.** A guarantee to perform the RD/Remedial Construction and OM&M by one or more parent corporations or subsidiaries, or by one or more unrelated corporations that have a substantial business relationship with Honeywell;

**E.** A policy of insurance that provides the State with acceptable rights as a beneficiary thereof and that is issued by an insurance carrier whose operations are subject to regulation and examination by a State agency; or

**F.** A demonstration that Honeywell satisfies the requirements of 40 CFR § 264.143(f).

**70.** Honeywell may invoke the dispute resolution procedures in paragraphs 44-52, to dispute a State determination under paragraph 69 that Honeywell's Annual Report or other information available to the State does not demonstrate the company's financial ability to complete the Remedial Program.

**71.** If Honeywell seeks to demonstrate the ability to complete the work through a guarantee by a third party pursuant to subparagraph 69.D. of this Consent Decree, Honeywell shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. Part 264.143(f). If Honeywell seeks to demonstrate its ability to complete the work by means of the financial test or the corporate guarantee pursuant to subparagraph 69.D. or 69.E., it shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f) annually, on the anniversary of the entry date of this Consent Decree. In the event that the State determines at any time that the financial assurances provided pursuant to this section are inadequate, Honeywell shall, within 30 days of receipt of notice of the State's determination, obtain and present to the

28

State for approval one of the other forms of financial assurance listed in paragraph 69 of this Consent Decree. Honeywell  may invoke the dispute resolution procedures in paragraphs 44 - 52, to dispute a State determination under this paragraph that Honeywell's financial assurances provided pursuant to this Section are inadequate.  Honeywell's inability to demonstrate financial ability to complete the RD/Remedial Construction and post-implementation OM&M shall not excuse performance of any activities required under this Consent Decree.

 **72.**  In the event that Honeywell demonstrates that the estimated cost to complete the remaining RD/Remedial Construction and post-implementation OM&M has diminished below the amounts that may be established pursuant to paragraph 69 above (if applicable), Honeywell may, with State approval, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the State, reduce the amount of the financial security provided under this Consent Decree to the estimated cost of the remaining RD/Remedial Construction and post-implementation OM&M to be performed.  Honeywell shall submit a proposal for such reduction to the State in accordance with the requirements of this Consent Decree, and may reduce the amount of the security upon the State's written approval.  In the event that Honeywell disputes the State's determination and invokes the dispute resolution provisions of paragraphs 44-52, then Honeywell shall maintain the amount of financial security as provided in the final administrative or judicial decision resolving the dispute.

 **73.**  Honeywell may change the form of the financial assurance provided herein at any time, with the written approval of the State, provided that the new form of assurance meets the requirements of this Consent Decree.  In the event of a dispute, Honeywell may change the form of the financial assurance only in accordance with the final administrative or judicial decision

29

resolving the dispute pursuant to paragraphs 44-52.

## **RESERVATIONS OF RIGHTS**

**74.** This Consent Decree resolves only the State's claims against Honeywell for the

"Matters Addressed" by this Consent Decree as defined in paragraph 90, below.  All other claims

raised in this action including without limitation the State's claims for natural resource damages

pursuant to CERCLA, 42 U.S.C. § 9607(a)(4)(C), for restitution and damages for the loss of or

injury to the State's natural resources pursuant to the State's common law of public nuisance, for

the remediation of other sites and subsites, and for the reimbursement of all response costs

incurred or to be incurred by the State with respect to activities, not addressed by this Decree,

conducted or to be conducted at, or concerning, the Onondaga Lake NPL site, and any defenses

that Honeywell may have thereto, are reserved  for later resolution in this action.

**75.** Nothing in this Consent Decree or the ROD including, without limitation, provisions

for the design and implementation of habitat reestablishment or habitat enhancement projects,

shall be construed as barring, adjudicating, or in any way resolving any claim, cause of action, or

right that the State may have under CERCLA or the State's common law arising from injuries to

or loss of natural resources.  In the event that Honeywell asserts any defense to, or entitlement to

an offset or other credit against, any such claim, cause of action, or right based upon the

provisions of this Consent Decree or the ROD or upon work performed pursuant to such

provisions, then, with respect to such defense or claim of entitlement, the provisions of the

Consent Decree and ROD and the fact that the work was performed pursuant to such provisions

shall not create any presumptions including any presumption that the work constitutes or does

not constitute: (a) a restoration of natural resources that may be damaged or destroyed at the Site;

30

(b) an enhancement of natural resources at the Site; or (c) mitigation for the loss of natural resources caused by the implementation of the remedy selected in the ROD.

76. Nothing contained in this Consent Decree shall be construed as barring, adjudicating, or in any way resolving any other claim, cause of action, right or defense that the parties may have under state or federal law as against each other or as against any third party, including, but not limited to: (a) the State's right to bring criminal charges against any person or entity, and (b) the State's right to gather information and enter and inspect property and premises.  Nothing contained in this Consent Decree shall be construed as an intention to resolve any claims of the United States.

77. Honeywell is entering into this Consent Decree as a compromise of disputed claims and in doing so Honeywell does not admit, accept, or intend to acknowledge any liability, wrongdoing or fault.

78. The State reserves all claims and rights to institute proceedings in this action, or in a new action filed under federal or state law, or to issue an Administrative Order pursuant to state law, *e.g.*, ECL § 27-1301 *et seq.*, seeking to compel Honeywell to implement a modification to the Remedial Program which is not an Included Modification within the meaning of paragraph 36 and/or to reimburse the State for additional response costs incurred by the State in implementing such modifications.  Honeywell reserves all defenses to such claims.

79. The State reserves all powers and rights it may have against Honeywell or any other person or entity to protect public health and the environment from an imminent hazard, nor shall this Consent Decree be construed so as to prohibit the commissioners of Environmental Conservation and Health and their duly authorized representatives from exercising any summary

31

abatement powers against Honeywell or any other person or entity, either at common law or as granted by statute or from requiring Honeywell or other person or entity to take further response actions at the Site upon a determination by one of said commissioners or their duly authorized representatives that the Remedial Program is not protective of human health and the environment. Honeywell reserves all defenses to any such efforts by the State and this Consent Decree shall not be construed to require Honeywell to perform any action in response to such a proceeding instituted by the State.

## INDEMNIFICATION

**80.** Honeywell shall indemnify and hold the State and its representatives and employees harmless for all claims, suits, actions, damages, and costs of every name and description arising out of or resulting from the fulfillment or attempted fulfillment of this Consent Decree by Honeywell and/or any of Honeywell's directors, officers, employees, servants, contractors, agents, successors, and assigns, provided, however, that Honeywell shall not be required to indemnify and hold the State, its representatives, and employees harmless regarding any liability arising as a result of the gross negligence or recklessness, wanton or intentional misconduct or any criminal act by the State and its representatives and employees during the course of any activities conducted pursuant to this Consent Decree.

## COMMUNICATIONS

**81.** All written communications required by this Consent Decree shall be transmitted by United States Postal Service or by private courier service, or shall be hand delivered.

**82.** Written communication from Honeywell including progress reports, communications containing or pertaining to data, engineering or technical reports or other engineering or technical

32

deliverables or pertaining to field work shall be sent as follows:

Seven copies to:      Mr. Timothy Larson, Project Manager
Division of Environmental Remediation
New York State Department of Environmental Conservation
625 Broadway, 12th Floor
Albany, New York 12233-7016

Of the seven copies one shall be an unbound hard copy with associated figures, and one shall be

an electronic copy on compact disk(s) or DVD(s) and five shall be bound hard copies.  The

electronic copy shall contain all text, tables, figures and appendices both in the Honeywell's

original format and in Portable Document Format (PDF).  In the event a DEC-approved RDWP

or RD developed pursuant to this Consent Decree allows for the use of computer software that is

not in the possession of the State, two such original software packages shall be provided by

Honeywell upon request by the State.

All analytical data shall be provided in both a hard copy format, as specified in the DEC-

approved Sampling and Analysis Plan, as well as an electronic format.  The electronic format

shall be consistent with the latest version of the DEC's Electronic Data Deliverable ("EDD")

format.

Five bound copies and one electronic copy (PDF) shall be sent to:

Mr. Robert Nunes, Project Manager
United States Environmental Protection Agency
Region II
290 Broadway, 20th Floor
New York, NY 10007-1866

Two bound copies and two electronic copies (original format and PDF) to each of the

following:

Mr. Michael Spera
Earth Tech Inc.
1 World Financial Center
200 Liberty Street, 25th Floor
New York, NY 10281

Mr. Robert Montione
Earth Tech Inc.
40 British American Boulevard
Latham, NY 12110

One bound copy and one electronic copy (PDF) to:

Ms. Henriette M. Hamel
New York State Department of Health
217 South Salina Street, 3rd Floor
Syracuse, NY 13202

Mr. James Burke, Regional Hazardous Waste Engineer
New York State Department of Environmental Conservation
Region 7
615 Erie Blvd. West
Syracuse, NY 13204-2400

One bound copy to:    Mr. Kenneth Lynch, Regional Director
New York State Department of Environmental Conservation
Region 7
615 Erie Blvd. West
Syracuse, NY 13204-2400

Copy of cover letters only to:

Norman Spiegel
Assistant Attorney General
Environmental Protection Bureau
120 Broadway
New York, NY 10271-0332

Andrew J. Gershon
Assistant Attorney General
Environmental Protection Bureau
120 Broadway
New York, NY 10271-0332

34

Carol Conyers, Esq.
New York State Dept. of Environmental Conservation
625 Broadway, 14th Floor
Albany, NY 12233-5500

George A. Shanahan, Assistant Regional Counsel
United States Environmental Protection Agency
Region II
290 Broadway, 17th Floor
New York, NY 10007-1866

**83.** While an electronic copy of all correspondence is to be provided to Mr. Larson at the above address, unless otherwise directed in this Consent Decree, only one copy of written communications from Honeywell is to be sent to the individuals listed above in paragraph 82 where such communications do not enclose or pertain to data, technical or engineering reports or deliverables and/or do not pertain to field work.

**84.** Honeywell shall transmit each document that is subject to State approval, within 14 days of its final approval, to the six public repositories and the representative of the Onondaga Nation listed below. Each approved document, delivered to the public repositories, shall contain the State's approval letter relating to the respective document.

NYSDEC, Region 7
Attn: James Burke, P.E.,
Regional Hazardous Waste Remediation Engineer
615 Erie Blvd. West
Syracuse, NY 13204
(315) 426-7551

Onondaga County Public Library
Syracuse Branch at the Galleries
Attn: Jean Palmer, Head of Local History Department
447 South Salina St.
Syracuse, NY 13204
(315) 435-1840

Atlantic States Legal Foundation
Attn: Samuel Sage, Director
658 West Onondaga St.
Syracuse, NY 13204
(315) 475-1170

Liverpool Public Library
Attn: Judy Rossoff, Coordinator of Local History
310 Tulip Street
Liverpool, NY 13088
(315) 457-0310

Camillus Town Hall
Attn: Town Supervisor
4600 West Genesee Street, Room 100
Syracuse, NY 13219
(315) 488-1335

Moon Library
SUNY ESF
Attn: Director
1 Forestry Drive
Syracuse, NY 13210
(315) 470-6712

Joseph Heath, Esq.
716 East Washington Street, Suite 104
Syracuse, NY 13210-1502
(315) 475-2559

**85.** Communication to be made from the State to Honeywell shall be sent to:

Thomas Milch, Esq.
Arnold & Porter, LLP
555 Twelfth Street, NW
Washington, DC 20004-1202

Honeywell International Inc.
5000 Brittonfield Parkway, Suite 700
East Syracuse, NY 13057
Attn: Mr. John P. McAuliffe, Project Manager

**86.** The State and Honeywell reserve the right to designate additional or different

36

addressees for communication upon providing written notice to the other.

## ENVIRONMENTAL EASEMENTS

**87.** Because the ROD for the Site relies upon one or more institutional and/or engineering controls, Honeywell shall execute one or more environmental easements for those portions of the Site which Honeywell owns pursuant to the requirements and processes set forth in ECL Article 71, Title 36, which easement(s) shall be substantially similar in format to Appendix D. Honeywell shall execute one or more appropriate environmental easements within 45 days of Honeywell's receipt of a notification from the State under paragraph 34 herein that all Remedial Construction for the Site or for any State-approved module thereof has been completed in compliance with the approved RD, or no fewer than 45 days before Honeywell may convey any portion of the Site which it currently owns. Honeywell shall then cause such instrument(s) to be recorded with the recording officer of the county(ies) wherein the Site is located within 30 days of the State's approval of such instrument. Honeywell shall provide the State with a copy of such instrument(s) certified by the recording officer to be a true and faithful copy(ies) within 60 days after such recording. Concerning those portions of the Site that are not owned by Honeywell and whereon institutional and/or engineering controls are relied upon, Honeywell shall obtain one or more appropriate Environmental Easement(s) from all such owners within the 45-day time frame specified above, whether through purchase or otherwise, in accordance with law. All such environmental easement(s) addressed in this paragraph shall run with the land; grant access for the purposes set forth in paragraph 60, above; and grant the State the right to enforce any use restrictions on subject properties necessary to implement, ensure non-interference with, or ensure the protectiveness of remedial measures to be performed pursuant to this Consent Decree. If

37

Honeywell does not cause all such environmental easement(s) addressed in this paragraph to be timely recorded, Honeywell shall be in violation of this Consent Decree.

## COMPLIANCE WITH LEGAL REQUIREMENTS

**88.** **(a)** Honeywell shall conduct all activities under this Consent Decree in compliance with all applicable federal, state and local laws and regulations.

**(b)** Honeywell shall obtain all permits, easements, rights-of-way, rights-of-entry, approvals, or other authorizations necessary to perform Honeywell's obligations under this Consent Decree. If Honeywell fails to obtain any access required to perform its obligations under this Consent Decree, despite all reasonable efforts to do so, Honeywell shall promptly notify the State, and shall include in that notification a summary of the steps Honeywell has taken to attempt to obtain access, within 45 days after (i) the submission of any draft work plan pursuant to this Consent Decree which is reasonably expected to require such access, and (ii) the date, if any, upon which the scope of the RD/RA changes with the State's approval, where such change causes Honeywell to require access from one or more additional owners. The State may, as it deems appropriate, assist Honeywell in obtaining access. Honeywell shall reimburse the State, in accordance with the procedures in paragraphs 61-67, for all costs incurred by the State in obtaining access, including, but not limited to, attorneys fees.

**(c)** The activities conducted pursuant to this Consent Decree, if approved by the State, are deemed and shall be considered by the State to be consistent with the NCP and ROD.

**89.** Notwithstanding the provisions of paragraph 88.(b), DEC may exempt Honeywell from the requirement to obtain a permit issued by DEC for any activity that is conducted on the Site and that DEC determines satisfies all substantive technical requirements applicable to a like

38

activity conducted pursuant to a permit.   In addition, DEC may exempt Honeywell from the

requirement to obtain any other State permit or local permit where there is a demonstration that

obtaining such a permit will substantially delay the project or present a hardship, provided:

> **A.** the remedial program or activity is conducted on the Site or on premises that
>
> are under common control or are contiguous to or physically connected with
>
> the Site and the activity exclusively relates to contamination which DEC
>
> or Honeywell is handling as part of the site remedial program; and
>
> **B.** all substantive technical requirements applicable to a like activity conducted
>
> pursuant to a permit are complied with, as determined by DEC; and
>
> **C.** the activity is a component of a program selected by a process complying with
>
> the public participation requirements of section 6 N.Y.C.R.R. Part 375-1, to the
>
> extent applicable.

## <u>CONTRIBUTION PROTECTION</u>

**90.**  To the extent authorized under 42 U.S.C. § 9613, New York General Obligations

Law § 15-108, and any other applicable law, Honeywell shall be deemed to have resolved its

liability to the State for purposes of contribution protection provided by CERCLA Section

ll3(f)(2) for "Matters Addressed" pursuant to and in accordance with this Consent Decree.

"Matters Addressed" in this Consent Decree shall mean all response actions, within the meaning

of CERCLA, 42 U.S.C. § 9601(25), taken by Honeywell to implement this Consent Decree

including the investigation, design, implementation, and post-implementation OM&M of the

Remedial Program for the Lake Bottom subsite and all response costs within the meaning of

CERCLA, 42 U.S.C. § 9607(a), incurred and to be incurred by the State in connection with the

work performed under this Consent Decree, which costs have been reimbursed by Honeywell, including reimbursement of the State's costs pursuant to this Consent Decree. Furthermore, to the extent authorized under 42 U.S.C. § 9613 (f)(3)(B) or other provisions of CERCLA, by entering into this judicial settlement of liability for the Matters Addressed herein, Honeywell may seek contribution from any person except those who are entitled to contribution protection under 42 U.S.C. § 9613 (f)(2).

## COVENANT NOT TO SUE

91. In consideration of, and contingent upon Honeywell's compliance with the provisions of this Consent Decree, and subject to the reservation of claims and defenses set forth in paragraphs 74-79, the State covenants not to sue, execute judgment, or take any civil, judicial or administrative action under any federal, state, local or common law (other than enforcement of this Consent Decree) against Honeywell, or its affiliates, subsidiaries, related entities, predecessors, successors and assigns, and their past, present and future employees, officers and directors, for Matters Addressed by this Consent Decree, including without limitation, any claims or causes of action for costs, damages, enforcement costs, interest, contribution or attorneys' fees.

92. Subject to the reservation of claims and defenses set forth in paragraphs 74-79, Honeywell covenants not to assert any claims or causes of action under any federal, state, local or common law against the State, or its employees, agencies or departments, or to seek against the State any costs, damages, contribution or attorneys' fees arising out of or related to any Matters Addressed by this Consent Decree.

40

## CITIZEN PARTICIPATION

**93.** Honeywell shall assist the State in its implementation of a citizen participation program. Honeywell shall cooperate with the State in providing information regarding the Remedial Program to the public and preparing such information for dissemination to the public and in public meetings which may be held or sponsored by the State to explain activities at or relating to the Site.

## LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

**94.** This Consent Decree shall be lodged with the Court for a period of 30 days for public notice and comment. The State reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Honeywell consents to the entry of this Consent Decree without further notice. This Consent Decree shall not be entered if the State withdraws or withholds its consent from any portion of this Consent Decree as lodged, including the appendices.

## MISCELLANEOUS

**95.** Honeywell shall retain professional consultants, contractors, laboratories, quality assurance/quality control personnel, and data validators to perform the technical, engineering, and analytical obligations required by this Consent Decree. The experience, capabilities, and qualifications of the firms or individuals selected by Honeywell shall be submitted to the State within 30 days after the entry of this Consent Decree and within 30 days of any relevant change in personnel. The responsibility for the performance of the professionals retained by Honeywell shall rest solely with Honeywell.

41

**96.** All data gathered for utilization during the RDWP, RD and Remedial Construction and OM&M are to be provided in both a hard copy format, as specified in the State-approved Sampling and Analysis Plan, as well as in electronic format, consistent with the latest version of the DEC's Electronic Data Deliverable format.

**97.** The State shall have the right to obtain split samples, duplicate samples, co-located samples, or any combination of the three, of all substances and materials sampled by Honeywell, and the State shall have the right to take its own samples. Honeywell shall have the right to obtain split samples, duplicate samples, or co-located samples, or any combination of the three of all substances and materials sampled by the State. Honeywell shall make available to the State the results of all sampling and/or tests or other data generated by Honeywell with respect to implementation of this Consent Decree and shall submit these results with the scheduled monthly Progress Report which next follows receipt of the results by Honeywell from the relevant laboratory and otherwise in accordance with the Progress Report requirements in paragraph 38 of this Consent Decree.

**98.** Honeywell shall notify the State in writing at least 10 days in advance of any field activities to be conducted pursuant to this Consent Decree.

**99.** Honeywell and its officers, directors, agents, servants, employees, successors, and assigns shall be bound by this Consent Decree. Any change in ownership or corporate status of Honeywell including, but not limited to, any transfer of assets or real or personal property shall in no way alter Honeywell's responsibilities under this Consent Decree.

**100.** Honeywell shall provide written notice and a copy of this Consent Decree to each contractor and subcontractor hired to perform any portion of the work required by this Consent

42

Decree and to each person representing Honeywell with respect to the Site and shall condition all contracts entered into to carry out the obligations identified in this Consent Decree upon performance in conformity with the terms of this Consent Decree. Honeywell shall nonetheless be responsible for ensuring that Honeywell's contractors and subcontractors perform the work in satisfaction of the requirements of this Consent Decree.

**101.** All references to "professional engineer" in this Consent Decree are to an individual registered as a professional engineer in accordance with Article 145 of the New York State Education Law.

**102.** All references to "days" in this Consent Decree are to calendar days unless otherwise specified.

**103.** The section headings set forth in this Consent Decree are included for convenience of reference only and shall be disregarded in the construction and interpretation of any of the provisions of this Consent Decree.

**104.** With the exception of the administrative consent order entered into between DEC and Honeywell concerning certain specified pre-design work to be completed at the Site (Index No. D7-0002-05-08, effective August 19, 2005), the terms of this Consent Decree shall constitute the complete and entire Consent Decree between Honeywell and the State concerning the implementation of the remedy selected for the Lake Bottom subsite in the ROD. No term, condition, understanding, or agreement purporting to modify or vary any term of this Consent Decree shall be binding unless made in writing and subscribed by the party to be bound and, unless specifically otherwise provided for herein, approved by the Court. No informal advice, guidance, suggestion, or comment by the State regarding any report, proposal, plan, specification,

43

schedule, or any other submittal shall be construed as relieving Honeywell of Honeywell's obligation to obtain such formal approvals as may be required by this Consent Decree.

## CONSENT DECREE CONTROLS

105. In the event there is a conflict or inconsistency between the terms of this Consent Decree and the terms of the Statement of Work or any work plan required under this Consent Decree then the terms of the Consent Decree shall control.

## TERMINATION OF CONSENT DECREE

106. This Consent Decree shall terminate upon the State's written determination, transmitted by the attorney of record for the State to the attorney of record for Honeywell, that Honeywell has completed all phases of the Remedial Program, including OM&M. Notwithstanding the foregoing, the provisions contained in paragraphs 61-67 (costs), 80 (indemnification), and 90-92 (covenants not to sue and contribution protection) shall survive the termination of this Consent Decree and any violation of such surviving provisions shall be a violation of this Consent Decree subjecting Honeywell to injunctive relief and stipulated penalties as provided under paragraphs 53-56.

## THE COURT'S CONTINUING JURISDICTION

107. The Court retains continuing jurisdiction over this action for purposes of enforcing or interpreting this Consent Decree according to its terms and for resolving the other claims raised in this action which are not resolved by this Consent Decree.

44

**SO AGREED:**
**Dated: October** *11* **, 2006**

**FOR THE PLAINTIFFS:**

**ELIOT SPITZER**
**Attorney General**
**State of New York**

**PETER LEHNER**
**Chief, Environmental Protection Bureau**

_____
**NORMAN SPIEGEL**
**Assistant Attorney General**
**120 Broadway**
**New York, New York 10271**
**(212) 416-8454**
**Attorney of Record, Bar Roll Number 102652**

_____
**DENISE M. SHEEHAN**
**Commissioner**
**New York State Department of**
**Environmental Conservation**
**625 Broadway**
**Albany, New York 12233-5500**

45

FOR THE DEFENDANT:

**KATE ADAMS**
**Vice President & General Counsel - Specialty Materials**
**Honeywell International Inc.**
**101 Columbia Road**
**Morristown, New Jersey  07962**



**THOMAS H. MILCH**
**Arnold & Porter LLP**
**555 12th Street, NW**
**Washington, D.C. 20004**

46

**FOR THE DEFENDANT:**


_____

**KATE ADAMS**
**Vice President & General Counsel - Specialty Materials**
**Honeywell International Inc.**
**101 Columbia Road**
**Morristown, New Jersey  07962**


_____

**THOMAS H. MILCH**
**Arnold & Porter LLP**
**555 12th Street, NW**
**Washington, D.C. 20004**

46

**IT IS SO ORDERED.**

**January 4, 2007**
**Syracuse, New York**

Frederick J. Scullin, Jr.
Senior United States District Court Judge