UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                                                 :

STATE OF NEW YORK and PETER M. IWANOWICZ,
As Trustee of the Natural Resources,         :

                               89-CV-815

                    Plaintiffs,    :

        - against-               :     Senior Judge Scullin

HONEYWELL INTERNATIONAL INC.,      :

                  Defendant.    :

-----------------------------------------------------------------------X

## CONSENT DECREE BETWEEN THE STATE OF NEW YORK AND HONEYWELL INTERNATIONAL INC. CONCERNING REMEDIATION OF THE GEDDES BROOK/NINEMILE CREEK SUBSITE

**DATED: DECEMBER 30, 2010**

## CONTENTS

Page

REPRESENTATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

JURISDICTION (¶¶ 32-33) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

HONEYWELL'S OBLIGATIONS (¶¶ 34-35) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    Remedial Design Workplan (¶¶ 36-41) . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    Remedial Design Contents (¶¶ 42-43) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

    Remedial Action ("Construction") and Reporting (¶¶ 44-49) . . . . . . . . . . 17

    Modification of the Remedial Program (¶¶ 50-51) . . . . . . . . . . . . . . . . . . . 19

    Progress Reports (¶¶ 52-53) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

    Review of Submittals (¶¶ 54-57) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

DISPUTE RESOLUTION (¶¶ 58-66). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VIOLATIONS OF THE CONSENT DECREE (¶¶ 67-68). . . . . . . . . . . . . . . . . . 26

    Stipulated Penalties (¶¶ 69-70). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    Force Majeure (¶¶ 71-72). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    Upland Sources (¶ 73). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

ENTRY UPON SITE (¶ 74). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

PAYMENT OF COSTS INCURRED BY THE STATE (¶¶ 75-81). . . . . . . . . . . 30

FINANCIAL ASSURANCE (¶¶ 82-87). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

RESERVATION OF RIGHTS (¶¶ 88-93). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

INDEMNIFICATION (¶ 94). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

COMMUNICATIONS (¶¶ 95-100). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

ii

ENVIRONMENTAL EASEMENTS (¶ 101). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

COMPLIANCE WITH LEGAL REQUIREMENTS (¶¶ 102-103). . . . . . . . . . . .. 43

CONTRIBUTION PROTECTION (¶ 104). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

COVENANT NOT TO SUE (¶¶ 105-106). . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CITIZEN PARTICIPATION (¶ 107). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .46

LODGING AND OPPORTUNITY FOR PUBLIC COMMENT (¶ 108) . . . . . . . 46

MISCELLANEOUS (¶¶ 109-118) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .46

GEDDES BROOK/NINEMILE CREEK CONSENT
DECREE CONTROLS (¶ 118-119) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .48

TERMINATION OF GEDDES BROOK/NINEMILE CREEK
CONSENT DECREE (¶ 120). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 49

THE COURT'S CONTINUING JURISDICTION (¶ 121). . . . . . . . . . . . . . .. .. 49

The State of New York, Peter M. Iwanowicz, as Acting Commissioner of Environmental Conservation, the Department of Environmental Conservation ("DEC") (collectively, the "State") and Honeywell International Inc. ("Honeywell"), a corporation organized and existing under the laws of the State of Delaware, represent as follows:

A.     **Background: This Action and the 2007 Consent Decree Concerning Remediation of the Lake Bottom Subsite**

1.     On June 27, 1989, the State filed this lawsuit against Allied-Signal Inc., pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and state law, *inter alia*, to compel a cleanup of Onondaga Lake, its tributaries and related upland areas, to recover all response costs incurred and to be incurred by the State in responding to the contamination, and to recover natural resource damages. Honeywell is the successor to Allied-Signal Inc.

2.     The complaint alleges, *inter alia*, that there have been releases and that there is a threat of further releases of hazardous substances, as that term is defined by section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and other waste substances from Honeywell's industrial facilities which have contaminated the sediments and surface water of Onondaga Lake and its tributaries and upland areas.

3.     On March 16, 1992, this Court entered an interim consent decree ("RI/FS Consent Decree") which provided, *inter alia*, for the performance of a Remedial Investigation and Feasibility Study ("RI/FS"), performed in accordance with federal and state laws and regulations, to address contamination and the threat of further contamination of Onondaga Lake, its tributaries and related upland areas . The RI/FS Consent Decree specified the various investigations, studies and reports that were required, and established a schedule for their

1

completion.

4.      The RI/FS Consent Decree, as subsequently amended, provided that, based on the studies and reports generated by the RI/FS process, as well as other information available to it, the State would develop and make available for public comment proposed plans for remedial actions at subsites related to Onondaga Lake, *e.g.*, the Onondaga Lake Bottom Subsite (alternatively, "Lake Bottom Subsite") and the Geddes Brook/Ninemile Creek Subsite, and that after considering the public comments on the proposed plans, the Commissioner of Environmental Conservation would adopt a final remedy for each subsite in a Record of Decision ("ROD").

5.      On September 30, 1993, the United States Environmental Protection Agency ("EPA") and DEC entered into a cooperative agreement ("Cooperative Agreement") pursuant to section 104(d) of CERCLA, 42 U.S.C. § 9604(d).  The agreement provided, in relevant part, that DEC will be the lead agency with respect to the Onondaga Lake NPL Site and will prepare draft RODs for subsites, subject to EPA approval, and take actions to ensure that responsible parties commit to undertake necessary work to investigate and remediate subsites.

6.      On December 16, 1994, EPA listed Onondaga Lake, its tributaries, and those upland sites which have contributed or are contributing hazardous substances to the Lake and its tributaries on the National Priorities List ("Onondaga Lake NPL Site") pursuant to section 105(a)(8)(B) of CERCLA, 42 U.S.C. § 9605(a)(8)(B).  59 Fed. Reg. 65209 (December 16, 1994).

7.      The RI/FS for the Lake Bottom Subsite (a discrete portion of the Onondaga Lake NPL Site) was completed in November 2004 in accordance with the schedule set by this Court.

8.      Based on information obtained during the RI/FS process, the State determined

2

that the Lake Bottom Subsite is contaminated with hazardous substances, within the meaning of

section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and hazardous wastes, within the meaning

of the New York State Environmental Conservation Law ("ECL") § 27-1301, generated by

Honeywell's industrial facilities.  The State also determined that there have been releases and

there are threats of additional releases of hazardous substances and hazardous wastes from the

Lake Bottom Subsite.

      9.     Pursuant to ECL § 27- 1305, the Onondaga Lake Bottom, referred to herein as a

subsite, is listed as a Class 2 site on the New York State Registry of Inactive Hazardous Waste

Disposal Sites as site number 7-34-030.  A Class 2 site is one that poses a significant threat to

public health or the environment.

      10.    On November 29, 2004, in accordance with the schedule set by this Court, the

State released the proposed plan for remedial action at the Lake Bottom Subsite (the "Lake

Bottom Proposed Plan") for the purpose of soliciting and considering public comment.  The

Lake Bottom Proposed Plan described the remedial alternatives considered for the Lake Bottom

Subsite, identified the preferred remedy and set forth the rationale for this preference.  The

public comment period closed on March 1, 2005.  A subsequent public comment period

commenced on April 1, 2005 and concluded on April 30, 2005.

      11.    As part of the review procedure, the Lake Bottom Proposed Plan was also

submitted to EPA's National Remedy Review Board.

      12.    On July 1, 2005, in accordance with the schedule set by this Court, and after duly

considering the public's comments, Denise M. Sheehan, then acting Commissioner of

Environmental Conservation, and Kathleen C. Callahan, then acting Regional Administrator for

EPA Region 2, jointly selected a remedy in a ROD for the Lake Bottom Subsite and released

3

their responses to the comments received from the public on the Lake Bottom Proposed Plan.

On December 14, 2006, the State and EPA jointly issued an Explanation of Significant

Differences ("Lake Bottom ESD") documenting certain modifications to the remedy.  The July

1, 2005 ROD as modified by the December 14, 2006 Lake Bottom ESD is hereinafter referred to

as the "Lake Bottom ROD."

      13.     In order to address the threat to public health, welfare, and the environment posed

by the contamination of the Lake Bottom Subsite, the selected remedy, broadly described,

provides for: (i) dredging and proper disposal of as much as approximately 2,653,000 cubic

yards of contaminated sediments and wastes; (ii) construction of an isolation cap over an

estimated 425 acres in the shallower areas (littoral zone); (iii) construction of a thin-layer cap

over an estimated 154 acres in the deeper areas (profundal zone); (iv) performance of a pilot

study which involves the introduction of oxygen into the profundal zone; (v) re-establishment of

habitat injured by implementation of the remedy and enhancement of habitat in certain near-

shore areas; (vi) monitored natural recovery in areas of the profundal zone; (vii) implementation

of institutional controls; and (viii) long-term operation, maintenance, and monitoring.

      14.     Pursuant to ECL Article 27, Title 13; ECL Article 71, Title 27; and ECL §

3-0301, the State has the responsibility and authority to establish the terms and conditions under

which Honeywell will design and implement the remedy selected in the Lake Bottom ROD for

the Lake Bottom Subsite, and Honeywell would be obligated pursuant to ECL § 27-1313 to

design and implement the selected remedy in compliance with the terms and conditions

established by the State.

      15.     Pursuant to ECL Article 27, the State can implement the selected remedy for the

Lake Bottom Subsite and, pursuant to CERCLA, 42 U.S.C. §§ 9607(a), 9613(g)(2), can recover

all related response costs incurred or to be incurred by the State from Honeywell, or, alternatively, the State and Honeywell can resolve the State's claims for response costs incurred and to be incurred in designing and implementing the selected remedy pursuant to a settlement agreement which obligates Honeywell to design and implement the selected remedy for the Lake Bottom Subsite under agreed upon terms and conditions.

16.     The State and Honeywell, desirous of avoiding potentially costly and time-consuming litigation, agreed to the terms and conditions pursuant to which Honeywell would design, subject to State approval, and implement, under State oversight, the remedy selected in the Lake Bottom ROD for the Lake Bottom Subsite. The terms and conditions were set forth in a consent decree to be submitted to the Court for review and entry as an order of the Court (the "Lake Bottom Consent Decree").

17.     On October 11, 2006, the State and Honeywell submitted the proposed Lake Bottom Consent Decree to the Court. After a 30-day public comment period and public meeting, the State confirmed to the Court its belief that the Lake Bottom Consent Decree was in the public interest. On January 4, 2007, the Court signed, and put into effect, the Lake Bottom Consent Decree.

**B. Remediation of the Geddes Brook/Ninemile Creek Subsite**

18.     The Geddes Brook/Ninemile Creek Subsite is a discrete portion of the Onondaga Lake NPL Site. Pursuant to ECL § 27-1305, the Geddes Brook/Ninemile Creek Subsite is listed as a Class 2 site on the New York State Registry of Inactive Hazardous Waste Disposal Sites as site number 7-34-030. The Geddes Brook/Ninemile Creek Subsite is comprised of two geographic units known as "operable units": Operable Unit 1 and Operable Unit 2.

19.     By stipulation and order dated July 12, 2000, the RI/FS process for the Geddes

5

Brook/Ninemile Creek Subsite was split off from the process for the Lake Bottom Subsite, with separate schedules of milestones governing the RI/FS process for each. By stipulation and order dated January 10, 2007, the RI/FS process for the Geddes Brook/Ninemile Creek Subsite was bifurcated, with separate tracks for Operable Units 1 and 2. Under that 2007 amendment to the 1992 RI/FS Consent Decree, the parties agreed to, and the Court approved, new deadlines for the State to: (a) (i) issue a proposed plan for remediation and (ii) approve the revised Geddes Brook/Ninemile Creek Feasible Study Report and issue a ROD with respect to Operable Unit 1; and (b) (i) issue a proposed plan for remediation for Operable Unit 2 and (ii) approve the revised Geddes Brook/Ninemile Creek Feasible Study Report and issue a ROD with respect to Operable Unit 2.

20.     On November 19, 2008, in accordance with the schedule set by this Court, the State released the proposed plan for remedial action at Operable Unit 1 of the Geddes Brook/Ninemile Creek Subsite (the "Operable Unit 1 Proposed Plan") for the purpose of soliciting and considering public comment. The Operable Unit 1 Proposed Plan described the remedial alternatives considered for the Operable Unit 1 of the site, identified the preferred remedy and set forth the rationale for this preference. The public comment period closed on January 2, 2009.

21.     On April 29, 2009, in accordance with the schedule set by this Court, and after duly considering the public's comments, Dale A. Desnoyers, Director of the Division of Environmental Remediation, on behalf of the DEC, and Walter E. Mugdan, Director of Emergency and Remedial Response Division, on behalf of EPA Region 2, jointly selected a remedy in a ROD for Operable Unit 1 of the Geddes Brook/Ninemile Creek Subsite ("Operable Unit 1 ROD") and released their responses to the comments received from the public on the

6

Operable Unit 1 Proposed Plan. A copy of the Operable Unit 1 ROD without appendices is attached hereto as Appendix A.

22.     As described in the Operable Unit 1 ROD, the remedy selected for Operable Unit 1 requires that Honeywell complete the remedial work required under a 2002 administrative order on consent with DEC (Order on Consent  Index #D7-0003-01-09, the "Geddes Brook Order on Consent"), which applies to a portion of the Geddes Brook/Ninemile Creek Subsite. The Geddes Brook Order on Consent requires Honeywell to implement an interim remedial measure (the "Geddes Brook IRM") to reduce or eliminate any threat of direct contact, ingestion, or inhalation posed by contaminated sediments in Geddes Brook and sediment/soil in the floodplain and to minimize the potential for migration of contaminants from Geddes Brook and its associated floodplain.  The Geddes Brook IRM mandates full bank-to-bank removal of channel sediments and the underlying clay from the confluence of Geddes Brook with the West Flume to its confluence with Ninemile Creek, including any sediment within the Geddes Brook culverts.  Floodplain soil/sediment will be excavated vertically to the underlying clay layer that is typically 2 to 4 feet below ground surface, and horizontally to a break in grade that bounds the floodplain.  The remediation of the floodplain pursuant to the Geddes Brook IRM will result in the removal of 100% of mercury above the sediment toxicity targets (0.15, 0.5, 1.3, and 2 mg/kg) in the sediment/soil located above the clay layer in the Geddes Brook floodplain.  Following removal, approximately 1 foot of vegetated cover will be placed in areas where soil/sediment had been excavated, resulting in a lower overall elevation with the intent to establish an emergent wetland.  In addition, the Geddes Brook channel will be relocated westward downstream of the culverts to provide improved sinuosity, increased length, better connectivity with the floodplain, ability for channel migration, and an increased buffer from the State Fair landfill.  Furthermore,

7

the downstream portion of the Outfall 019 Drainage Ditch (which discharges to Geddes Brook) and its associated floodplain (between the access road along the ditch and the adjacent railroad tracks) is being incorporated into the Geddes Brook IRM. Remediation of the Outfall 019 Drainage Ditch will be consistent with the rest of the Geddes Brook IRM (drainage ditch sediments and floodplain soils being excavated vertically to the underlying clay layer and approximately 1 foot of vegetated cover placed in excavated areas). The excavated channel sediment and floodplain soil/sediment will be placed within the Linden Chemicals and Plastics ("LCP") Bridge Street subsite containment system.[1]

     23.     To date, Honeywell has performed pre-design sampling pursuant to the Geddes Brook IRM and submitted the following to DEC: an IRM work plan; a 50% design report; a pre-design investigation ("PDI"); data summary reports; a draft 95% design report; a preliminary habitat restoration design; a 95% design report addendum on habitat restoration; and a 100% design report. It is the intent and desire of the parties that Honeywell continue to implement the Geddes Brook IRM work plan in accordance with the Geddes Brook Order On Consent, and that completion of the requirements of the Geddes Brook Order On Consent shall fulfill Honeywell's remedial obligations with respect to that portion of the Geddes Brook/Ninemile Creek Subsite.

     24.     In order to address the threat to public health, welfare and the environment posed by the contamination of Operable Unit 1 of the Geddes Brook/Ninemile Creek Subsite, the

---

[1] The LCP Bridge Street subsite is a subsite of the Onondaga Lake NPL Site. In 2000 DEC issued a ROD for this subsite, and in March 2002, Honeywell entered into an administrative consent order with DEC whereby Honeywell committed to implement the remedy selected in the ROD. The remediation of the LCP Bridge Street subsite was substantially completed in 2007. Remedial construction included removal of contaminated sediments from the West Flume, on-site ditches, and wetlands; restoration of wetlands; installation of a low-permeability cutoff wall around the site; installation of an interim low-permeability cap; and capture of contaminated groundwater inside the cutoff wall.

selected remedy, broadly described, provides for: (i) removal and proper disposal of an estimated 59,000 cubic yards of contaminated channel sediments and floodplain soil/sediments over approximately 15 acres of lower Ninemile Creek; (ii) placement of clean materials throughout the entire Site; (iii) installation of an isolation cap, where needed, consisting of clean sand or other suitable material designed to isolate the habitat layer from underlying residual contamination; (iv) implementation of institutional controls; and (v) long-term operation, maintenance and monitoring.

25.     On May 18, 2009, in accordance with the schedule set by this Court, the State released the proposed plan for remedial action at Operable Unit 2 of the Geddes Brook/Ninemile Creek Subsite (the "Operable Unit 2 Proposed Plan") for the purpose of soliciting and considering public comment. The Operable Unit 2 Proposed Plan described the remedial alternatives considered for the Operable Unit 2 of the site, identified the preferred remedy and set forth the rationale for this preference. The public comment period closed on July 3, 2009.

26.     On October 1, 2009, in accordance with the schedule set by this Court, and after duly considering the public's comments, Dale A. Desnoyers, Director of the Division of Environmental Remediation, on behalf of DEC, and Walter E. Mugdan, Director of Emergency and Remedial Response Division, on behalf of EPA Region 2, jointly selected a remedy in a ROD for Operable Unit 2 of the Geddes Brook/Ninemile Creek Subsite and released their responses to the comments received from the public on the Operable Unit 2 Proposed Plan. A copy of the October 1, 2009 Operable Unit 2 ROD without appendices is attached hereto as Appendix B. The October 1, 2009 Operable Unit 2 ROD is hereinafter referred to as the "Operable Unit 2 ROD."

27.     In order to address the threat to public health, welfare and the environment posed

9

by the contamination of Operable Unit 2 of the Geddes Brook/Ninemile Creek Subsite, the selected remedy, broadly described, provides for: (i) removal and proper disposal of an estimated 58,000 cubic yards of contaminated channel sediments and floodplain soil/sediments over approximately 15.5 acres of lower Ninemile Creek; (ii) installation of an isolation cap if needed, based on the results of a PDI; (iii) placement of clean materials in the dredged/excavated areas throughout the entire Site; (iv) implementation of institutional controls; and (v) long-term operation, maintenance and monitoring.

28.     Issuance of the Operable Unit 2 ROD completed the RI/FS process for the Geddes Brook/Ninemile Creek Subsite, in accordance with the schedule set by this Court. Based on information obtained during the RI/FS process, the State determined that the Geddes Brook/Ninemile Creek Subsite is contaminated with hazardous substances, within the meaning of section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and hazardous wastes, within the meaning of ECL § 27-1301, generated by Honeywell's industrial facilities. The State also determined that there have been releases and there are threats of additional releases of hazardous substances and hazardous wastes from the Geddes Brook/Ninemile Creek Subsite.

29.     As noted above with respect to the Lake Bottom Subsite (see ¶¶ 14 and 15 above), pursuant to ECL Article 27, Title 13; ECL Article 71, Title 27; and ECL § 3-0301, the State has the responsibility and authority to establish the terms and conditions under which Honeywell will design and implement the remedy selected in the Operable Units 1 and 2 RODs for the Geddes Brook/Ninemile Creek Subsite (hereinafter referred to collectively as the "Geddes Brook/Ninemile Creek ROD"), and Honeywell would be obligated pursuant to ECL § 27-1313 to design and implement the selected remedies in compliance with the terms and conditions established by the State. Pursuant to ECL Article 27, the State can implement the selected

10

remedy for the Geddes Brook/Ninemile Creek Subsite and, pursuant to Sections 107(a) and 113(g)(2) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(g)(2), can recover all related response costs incurred or to be incurred by the State from Honeywell, or, alternatively, the State and Honeywell can resolve the State's claims for response costs incurred and to be incurred in designing and implementing the selected remedy pursuant to a settlement agreement which obligates Honeywell to design and implement the selected remedy for the Geddes Brook/Ninemile Creek Subsite under agreed upon terms and conditions.

30.     The State and Honeywell are desirous of avoiding potentially costly and time-consuming litigation, and therefore have agreed to the terms and conditions pursuant to which Honeywell will design, subject to State approval, and implement, under State oversight, the remedy selected in the Geddes Brook/Ninemile Creek ROD for the Geddes Brook/Ninemile Creek Subsite, which terms and conditions are set forth below. The State and Honeywell are additionally desirous of integrating the remedial work required under the Geddes Brook IRM (including the Outfall 019 Drainage Ditch) into the work required hereunder. The State and Honeywell have further agreed to the entry of this agreement as an order of the Court.

31.     The State has determined that the settlement agreement embodied in this Consent Decree (the "Geddes Brook/Ninemile Creek Consent Decree") is in the public interest.

**NOW, THEREFORE, it is ORDERED, ADJUDGED, and DECREED** as follows:

<u>**JURISDICTION**</u>

32.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367(a), and 42 U.S.C. § 9613(b), and has jurisdiction over the parties to this Geddes Brook/Ninemile Creek Consent Decree. The parties do not allege that the Court has jurisdiction pursuant to this Geddes Brook/Ninemile Creek Consent Decree over any claims of

the United States pursuant to Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607.

33.     The undersigned representative of each party certifies that he or she is fully authorized to enter into this Consent Decree and to execute and bind the party to its terms. Honeywell hereby waives any right it may have to a hearing under the ECL for Matters Addressed by this Consent Decree, as that term is defined in paragraph 104, below.

## HONEYWELL'S OBLIGATIONS

34.     Honeywell is permanently enjoined and directed to comply with the terms and conditions set forth herein.

35.     Honeywell shall:

A.  Develop and implement, in accordance with the ROD for the Geddes Brook/Ninemile Creek Subsite and this Consent Decree, including in all respects the Geddes Brook/Ninemile Creek Statement of Work (the "Geddes Brook/Ninemile Creek SOW") attached hereto as Appendix C, pursuant to the ECL, CERCLA, and the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. Part 300 ("NCP"), an inactive hazardous waste disposal site remedial program that shall consist of the design, implementation, operation, maintenance, and monitoring of the remedy selected by DEC and EPA and documented in the Geddes Brook/Ninemile Creek ROD ("Remedial Program" or "Remedial Design/Remedial Action program" or "RD/RA program"), as set forth below; and

B.  Reimburse all costs incurred by the State as and to the extent set forth below.

**Remedial Design Work Plan**

36.     Within 30 days after the entry of this Consent Decree, Honeywell shall prepare and submit to the State for review and approval a final Remedial Design Work Plan ("RDWP")

12

concerning the implementation of the remedy that is selected and documented in the Geddes Brook/Ninemile Creek ROD.

37.    The RDWP shall be prepared in accordance with relevant EPA and DEC guidance documents and the attached SOW.

38.    The RDWP shall include, but not be limited to, the following elements:

A.  A Site-specific description of Remedial Design ("RD") activities, which activities may be broken down into one or more distinct projects or modules, together with a schedule for the performance of these activities;

B.  A summary of the design-related field/investigative activities that were performed during 2009;

C.  A discussion of the need to perform further field/investigative activities as part of the remedial design work.  This shall state the need to submit a Design Investigation Work Plan and a schedule for doing so.  The Design Investigation Work Plan shall include a Sampling and Analysis Plan ("SAP"), which shall include:

i.  A quality assurance project plan that describes the quality assurance and quality control protocols necessary to achieve the initial data quality objectives.  This plan shall designate a data validation expert and must describe such individual's qualifications and experience;

ii.  A field sampling plan that defines sampling and data gathering methods in a manner consistent with the *Compendium of Superfund Field Operations Method* (EPA/540/P-87/001, OSWER Directive 9355.0-14, December 1987) as amended, and supplemented by DEC;

D.  A plan to secure physical security and posting of the Site;

13

**E.** A health and safety plan ("HASP") to protect persons at and in the vicinity of the Site during the RD work described herein. The HASP shall be prepared in accordance with 29 C.F.R. § 1910 by a certified health and safety professional. Honeywell shall provide supplements to the HASP as necessary to ensure the health and safety of all persons at and in the vicinity of the Site;

**F.** A narrative description of the RD, including a description of the remedial goals for the Site, as stated in the Geddes Brook/Ninemile Creek ROD, and the means by which each element of the selected remedial alternative will be implemented to achieve those goals; and

**G.** A schedule for the submission of each of the RD documents that together with the design documents will form the RD Contents pursuant to paragraph 42. The submission due dates for certain RD documents, as determined by the State, will be triggered by State's approval or final comments on prior submissions.

39.     No later than 30 days after the State approves the RDWP, Honeywell shall commence the activities authorized therein.

40.     Honeywell shall perform the RDWP activities in accordance with the State-approved RDWP.

41.     During the performance of field activities pursuant to the RDWP, Honeywell shall have on-site a full-time representative who is qualified to supervise the work done.

**Remedial Design Contents**

42.     In accordance with the schedule for RD submissions contained in the approved RDWP, Honeywell shall prepare and submit to the State for review and approval remedial design document(s) for the implementation of the remedy that was selected by DEC and EPA in the ROD for the Subsite, in accordance with this Consent Decree and the attached Geddes

14

Brook/Ninemile Creek SOW. The RD shall be prepared by and have the signature and seal of a professional engineer who shall certify that the RD was prepared in accordance with this Consent Decree and the RDWP. The RD may consist of a series of documents in accordance with the approved RDWP, in which case each final design document shall be so certified.

43.    The RD shall include the following:

A. A detailed description of the remedial goals for the Site, as set forth in the Geddes Brook/Ninemile Creek ROD;

B. A detailed description of each element of the remedy and the means by which each element will be implemented to achieve the remedial goals for the Geddes Brook/Ninemile Creek Subsite, including, but not limited to:

i. A summary of findings concerning each design project identified and completed pursuant to the RDWP of this Consent Decree. Each such summary of findings shall:

a. include all data generated and all other information obtained during the performance of the RDWP activities;

b. identify any additional data that must be collected in order to design the relevant aspect of the remedy pursuant to the ROD and this Consent Decree;

c. include a certification by the individual or firm with primary responsibility for the day-to-day performance of the RDWP that all activities that comprised the RDWP were performed in full accordance with the State-approved RDWP; and

d. include a reference to the geographic location of the sample

15

point for all sample data supplied.  Such location information must be referenced to either the New York Transverse Mercator or New York State Plane Coordinate System.  All vertical data shall be referenced to the North American Vertical Datum of 1988;

ii.  The construction and operation of any structures;

iii.  The containment, collection, destruction, treatment, and/or disposal of hazardous substances and wastes, their constituents, and any related degradation products, and of any soil, sediments or other materials contaminated thereby;

iv.  The containment, collection, destruction, treatment, and/or disposal of contaminated water, dredge effluent, porewater, groundwater, leachate, and air;

v.  The quality control and quality assurance procedures and protocols to be applied during implementation of the RD; and

vi.  Monitoring which integrates needs that are present on-site and off-site during and subsequent to the implementation of the selected remedial alternative;

C.  "Biddable Quality" documents for the RD including, but not limited to, documents and specifications prepared, signed, and sealed by a professional engineer. These plans shall be consistent with all applicable local, state and federal laws, rules and regulations;

D.  A detailed time schedule to implement the remedy as designed;

E.  The parameters, conditions, procedures, and protocols to determine the effectiveness of the remedy as designed, including a schedule for periodic sampling of all

16

relevant environmental media, on-site and off-site;

      **F.** A description of operation, maintenance, and monitoring ("OM&M") activities to be undertaken at and in the vicinity of the Geddes Brook/Ninemile Creek Subsite, which details the operation and maintenance procedures to be employed during system startup as well as on a long-term basis, and which describes the long-term OM&M strategy and schedule;

      **G.** A contingency plan to be implemented if any element of the remedy as designed when implemented, fails to achieve any of its objectives or otherwise fails to protect human health or the environment, to ensure that such objectives and protections are achieved ("Remedial Program Contingency Plans"); and

      **H.** A citizen participation plan which incorporates appropriate activities outlined in the DEC publication, *Citizen Participation in New York's Hazardous Waste Site Remediation Program -- A Guidebook*, dated June, 1998, and any subsequent revisions thereto, and 6 NYCRR Part 375.

**Remedial Action ("Construction") and Reporting**

    44.    Honeywell shall commence construction of the State-approved RD in accordance with the schedule set forth therein.

    45.    Honeywell shall implement remedial construction activities ("Remedial Action" or "Remedial Construction") in accordance with the approved RD.

    46.    During implementation of all Remedial Construction activities, Honeywell shall have available a full-time representative who is qualified to supervise the work done. A representative shall be physically on-site during normal business hours and otherwise shall be easily accessible by telephone.

    47.    Upon completion of Remedial Construction or any State-approved module,

17

Honeywell shall accompany State personnel or their representatives on a pre-final inspection to ensure compliance with the ROD and approved RD.  Following the pre-final inspection, the State will, in writing, either specify the corrective measures necessary to comply with the approved RD, as appropriate, or will determine that construction is complete.  If the State requires corrective measures, Honeywell shall undertake the corrective measures according to a schedule approved by the State, subject to the dispute resolution provisions of this Consent Decree.

48.      Within 90 days after the State determines in writing that the Remedial Construction for the Site, or any approved module thereof, is complete, Honeywell shall submit to the State "as-built" drawings and a final engineering report (each including any changes made to the RD during construction), and a certification by a professional engineer that the RD was implemented and all construction activities were completed in accordance with the State-approved RD.  The "as built" drawings, final engineering report, and certification shall be hereinafter referred to as the Remedial Construction Certification Report.  The Remedial Construction Certification Report(s) shall be prepared, signed, and sealed by a professional engineer and shall fulfill the requirements of a Remedial Action Report in accordance with *Closeout Procedures for National Priority List Sites*, EPA 540-R-98-016, OSWER Directive 9320.2-09A-P, January 2000 and any revisions thereto.  After receipt of the Remedial Construction Certification Report(s), the State will notify Honeywell in writing whether all related construction activities have been completed in compliance with the approved RD.

49.      In accordance with the schedule submitted in the State-approved RD, Honeywell shall submit a detailed post-remedial OM&M plan to the State for review and approval.  The OM&M Plan shall conform with EPA guidelines contained in *Considerations for Preparation of Operation and Maintenance Manuals*, EPA 68-01-0341 and any revisions thereto.  Upon the

18

State's approval of the OM&M Plan, Honeywell shall implement the approved OM&M Plan in accordance with its requirements.

**Modification of the Remedial Program**

50.     The State may in writing request Honeywell to modify any element of the Remedial Program, including any submittal, and to perform any corresponding additional work if the State determines, as a result of reviewing data generated by an activity required under this Consent Decree or as a result of reviewing any other data or facts, that such modification is necessary in order to implement the remedy or meet the goals established in the ROD. Honeywell shall be obligated to take such action as the State determines necessary pursuant to this paragraph, subject to the dispute resolution provisions of paragraphs 58-66, and provided that the State's requirements are consistent with the scope of the remedy selected in the Geddes Brook/Ninemile Creek ROD, do not materially expand the scope of the remedy selected in the Geddes Brook/Ninemile Creek ROD, and are consistent with the Geddes Brook/Ninemile Creek SOW. For purposes of this paragraph, the term "materially expand" shall mean a modification that results in: (1) a fundamentally new technical approach to the remedy; or (2) the addition of a significant component to the scope of the remedy. A modification which Honeywell is obligated to implement pursuant to this paragraph is hereinafter referred to as an "Included Modification." Included Modification shall also include within its meaning any modification that the parties have agreed to in writing. Nothing in this Consent Decree shall affect the State's right, in conjunction with EPA, to modify or amend the Geddes Brook/Ninemile Creek ROD. However, references to the Geddes Brook/Ninemile Creek ROD in this Consent Decree are to the Operable Units 1 and 2 RODs adopted by the State and EPA in April 29, 2009 and October 1, 2009.

51.     In the event that the State requires a modification pursuant to paragraph 50 and

19

Honeywell believes that the proposed modification is not an Included Modification, then

Honeywell may invoke the Dispute Resolution procedures set forth in paragraphs 58-66. If the

modification is determined either by agreement in writing of the parties or pursuant to the

Dispute Resolution procedures set forth in paragraphs 58-66 not to be an Included Modification,

then, as regards such modification, the parties reserve all claims, rights and defenses as provided

in paragraph 92.

**Progress Reports**

52.    Honeywell shall submit to the State (see paragraphs 95-97 for recipients and

number of copies to be distributed) electronic monthly progress reports that:

**A.** Describe the actions which have been taken toward achieving compliance

with this Consent Decree during the previous month;

**B.** Include the raw data received by Honeywell during the previous month

concerning sampling undertaken and test results generated pursuant to this Consent Decree, and

all other raw data and/or validated data received or generated by Honeywell or Honeywell's

contractors, laboratories, or other agents during the previous month, including quality

assurance/quality control information that has become available during the previous month,

whether conducted pursuant to this Consent Decree or conducted independently by Honeywell;

**C.** Identify all work plans, reports, and other deliverables required by this

Consent Decree that were completed and submitted during the previous month;

**D.** Describe all actions, including, but not limited to, data collection and

implementation of work plans, that are scheduled for the next month and provide other

information relating to the progress at the Geddes Brook/Ninemile Creek Subsite;

**E.** Include information regarding percentage of completion, unresolved delays

20

encountered or anticipated that may affect the future schedule for implementation of Honeywell's obligations under this Consent Decree, and efforts made to mitigate those delays or anticipated delays;

**F.** Include any modifications to any work plans that Honeywell has proposed to the State or that the State has approved; and

**G.** Describe all activities undertaken in support of the Citizen Participation Plan during the previous month and those to be undertaken in the next month.

**H.** Honeywell shall submit these progress reports to the State by the tenth day of every month following the effective date of this Consent Decree; provided, however, that the State may allow a reduced schedule (such as quarterly) after completion of remedial construction. The specific format of the progress report will be subject to review and approval by the DEC.

53.    Honeywell shall allow State and EPA representatives to attend, and shall provide the State at least 14 days advance written notice of the following: pre-bid meetings; pre-construction meetings; job progress meetings; substantial completion meeting(s); substantial completion inspection(s); final inspection and meeting(s); and OM&M meetings.

**Review of Submittals**

54.    The State will review each of the submittals Honeywell makes pursuant to this Consent Decree to determine whether it was prepared, and whether the work done to generate the data and other information in the submittal was done, in accordance with this Consent Decree and generally accepted technical and scientific principles. The State shall notify Honeywell in writing of its approval or disapproval of each submittal, except for the Health and Safety Plan submittals discussed in paragraph 38.E. All State-approved submittals shall be incorporated into

21

and become an enforceable part of this Consent Decree.

55.     Because the Geddes Brook/Ninemile Creek Subsite has been designated as a subsite of the Onondaga Lake NPL Site, the State shall provide EPA with a reasonable opportunity for review and shall seek EPA's written comments on all submittals required under this Consent Decree.

56.     If the State disapproves a submittal, it shall so notify Honeywell in writing and shall specify the reasons for its disapproval. Within 60 days after receiving written notice that Honeywell's submittal has been disapproved, Honeywell shall make a revised submittal to the State that addresses and resolves all of the State's stated reasons for disapproving the first submittal; provided, however, that this time frame may be extended by the State if the parties agree that additional time is necessary and appropriate in order to resolve any issues related to the submittal. All remedial design submissions by Honeywell, including revised submittals, shall be consistent with this Consent Decree, including the appendices thereto including the Geddes Brook/Ninemile Creek SOW.

57.     After receipt of the revised submittal, the State shall notify Honeywell in writing of its approval or disapproval. If the State approves the revised submittal, it shall be incorporated into and become an enforceable part of this Consent Decree. If the State disapproves the revised submittal, unless Honeywell invokes Dispute Resolution as provided in paragraph 58, Honeywell shall be in violation of this Consent Decree, and the State may take any action or pursue whatever rights it has hereunder; provided, however, that the State may allow Honeywell to submit an additional revised document if the State determines that an additional submission by Honeywell will likely resolve its concerns.

## DISPUTE RESOLUTION

58.     The State's disapproval of a submittal or a final revised submittal under

paragraphs 54, 56 and 57, and determinations made by the State under paragraphs 47

(completion of construction and corrective measures), 48 ( construction complete certification),

49 (OM&M Plan), 50, 51 (Remedial Program modifications), 56 (modification, amplification

and expansion of a submittal and performance of corresponding additional work), 68 (takeover),

71 (force majeure), 73 (upland sources) and 83, 85 (financial assurance) of this Consent Decree

are subject to dispute resolution pursuant to this paragraph, provided that (i) within 10 business

days of receipt of the State's notice of disapproval of a submittal or a revised submittal or notice

of an above-listed determination, Honeywell requests in writing that the matter in dispute be

resolved by the DEC's Deputy Commissioner for Air/Waste Management ("Deputy

Commissioner") and, (ii) within 30 business days of receipt of the State's notice of disapproval

of a submittal or a revised submittal or notice of an above-listed determination, Honeywell

submits a written statement of the issues in dispute, which shall include the facts upon which the

dispute is based, the factual data, analysis or opinion supporting Honeywell's position, and all

supporting documentation on which it relies, including, if applicable, affidavits and/or

declarations (hereinafter, "Statement of Position"). The State shall serve its Statement of

Position, and all supporting documentation, including, if applicable, affidavits and/or

declarations no later than 30 business days after receipt of Honeywell's Statement of Position.

Honeywell shall have 10 business days after receipt of the State's Statement of Position within

which to serve a reply to the State's Statement of Position, and in the event Honeywell serves

such a reply, the State shall have 10 business days after receipt of Honeywell's reply within

which to serve the State's sur-reply.  In the event that Honeywell does not timely comply with

23

the requirements of this paragraph, then the State's disapproval or determination at issue shall be deemed final and binding on Honeywell. The time periods for the exchange of Statements of Position and replies may be modified upon agreement in writing of the parties. An administrative record of any dispute under this paragraph shall be maintained by the State. The record shall include the Statement of Position served by each party and any relevant information submitted by a party to the dispute. The record shall be available for review by Honeywell and the public, consistent with the Freedom of Information Law (New York Public Officers Law Article 6).

59.    Upon review of the administrative record as developed pursuant to paragraph 58, the Deputy Commissioner shall issue a final decision resolving the dispute.

60.    If the subject of the dispute was a written submittal, except as provided in paragraph 65, Honeywell shall submit a revised submittal in accordance with the Deputy Commissioner's decision within 15 business days of such decision, unless the decision provides for a longer period.

61.    After receipt of the revised submittal, the State shall notify Honeywell in writing of its approval or disapproval of the revised submittal.

62.    If the revised submittal fails to comply with the Deputy Commissioner's decision, and the State disapproves the revised submittal for this reason, Honeywell shall be in violation of this Consent Decree.

63.    If the subject of the dispute is a determination made by the State, except as provided in paragraph 65, and Honeywell fails to abide by the final decision of the Deputy Commissioner within 15 business days of such decision or such longer period as the Deputy Commissioner may prescribe in the final decision, Honeywell shall be in violation of this

24

Consent Decree.

64.     The invocation of formal dispute resolution procedures under paragraph 58 shall not stay or excuse the performance of work required pursuant to the disputed State determination, or the transmission of a revised submittal required by the disputed State disapproval, except by written agreement of the State or by the Deputy Commissioner upon written application from Honeywell.  Honeywell shall have the burden of establishing the necessity and appropriateness of such a stay or excuse based on the likelihood of success on the merits with respect to the matter in dispute and a balancing of the equities.  The Deputy Commissioner's decision to not grant an extension is subject to judicial review pursuant to paragraph 65.

65.     The decision of the Deputy Commissioner shall be final and binding upon Honeywell unless within 30 days of receipt of the Deputy Commissioner's decision, Honeywell petitions this Court for review by motion filed pursuant to the Federal Rules of Civil Procedure and the rules of this Court.  The filing of a motion by Honeywell pursuant to this paragraph shall not stay or excuse the performance of work or the transmission of submittals required by the Deputy Commissioner's decision with respect to the disputed matter, except by written agreement of the State or by order of the Court upon Honeywell's application.  Honeywell shall have the burden of establishing, before the Court, the necessity and appropriateness of such a stay or excuse based on the likelihood of success on the merits with respect to the matter in dispute and a balancing of the equities.

66.     In the event that Honeywell invokes the dispute resolution provisions of paragraph 65, the State's position shall not be set aside or revised by the Court unless Honeywell proves that the State's position is arbitrary, capricious or not in accordance with law.

25

## VIOLATIONS OF THE GEDDES BROOK/NINEMILE CREEK CONSENT DECREE

67.     In the event that Honeywell violates any provision of this Consent Decree, in addition to the payment of stipulated penalties as provided in paragraphs 69, 70, the State may also seek an enforcement order from this Court to compel Honeywell to comply with its obligations.

68.     In addition to the provisions in paragraph 67, in the event the State determines Honeywell has failed to perform any substantial portion of its obligations pursuant to this Consent Decree, the State retains its rights under CERCLA, 42 U.S.C. § 9614(a) and the ECL § 27-1313(5)(a) to conduct the complete RD/RA program at the Geddes Brook/Ninemile Creek Subsite and Honeywell shall be liable to the State for all costs incurred or to be incurred by the State including any costs previously incurred by the State while overseeing Honeywell's RD/RA efforts.  The State will provide Honeywell 60 days written notice, where reasonable under the circumstances, of its intent to conduct the RD/RA program.  If the State conducts such work, Honeywell shall preserve any records pertaining to site work and/or RD/RA work already conducted.  Honeywell may invoke the Dispute Resolution procedures set forth in paragraphs 58-66 to dispute DEC's determination that takeover of the RD/RA program is warranted under this paragraph.

**Stipulated Penalties**

69.     Honeywell's failure to comply with any term of this Consent Decree that is not otherwise subject to dispute resolution under paragraph 58 of this Consent Decree, or Honeywell's failure to comply with any provision of this Consent Decree that is subject to dispute resolution, but as to which Honeywell has not timely invoked dispute resolution or has failed to abide by the final decision of the Deputy Commissioner or an order of the Court

concerning a submittal or a determination, shall constitute a violation of this Consent Decree.

Notwithstanding the preceding sentence, any failure of any element of the Remedial Program

shall not constitute a violation of this Consent Decree to the extent that Honeywell is complying

with the Remedial Action Contingency Plan and any modification required by the State pursuant

to paragraph 50, provided that such modification is an Included Modification within the meaning

of that term as set forth in paragraph 50.

      70.    Unless Honeywell has invoked dispute resolution pursuant to paragraph 58,

Honeywell shall be liable for payment to the State of the sums set forth below as stipulated

penalties for each day or part thereof that Honeywell is in violation of any term of this Consent

Decree.  For each violation, penalties begin to accrue on the first day Honeywell is in violation

of the terms of this Consent Decree and continue to accrue through the final day of correction of

such violation.  Violations which are determined on a rolling four-week average basis shall

constitute a violation on each day of such four week period provided, however, that no penalty

shall be assessed for any day for which a penalty has already been assessed as part of a prior four

week period.  Such sums shall be due and payable within 15 days after receipt of notification

from the State assessing the penalties.  If such payment is not received within 15 days after

Honeywell receives such notification from the State, interest shall be payable at the annual rate

of 9% on the overdue amount from the day on which it was due through, and including, date of

payment.  Penalties shall be paid by certified check or money order, made payable to the "New

York State Department of Environmental Conservation" and shall be delivered personally or by

certified mail, return receipt requested, to the Director, Division of Environmental Enforcement,

NYSDEC, 625 Broadway, Albany, New York 12233-5500 with a copy to the Attorney of

Record at the Office of the Attorney General, Environmental Protection Bureau, 120 Broadway,

New York, NY, 10271.  Payment of the penalties shall not in any way alter Honeywell's

obligation to complete performance under the terms of this Consent Decree.  Stipulated penalties

shall be due and payable under this paragraph pursuant to the following schedule:

| Period of Non-Compliance | Penalty Per Day |
|---|---|
| First through 15th day | $ 1,000 |
| 16th through 30th day | $ 5,000 |
| 31st day and thereafter | $ 10,000 |

**Force Majeure**

71.    Except as otherwise provided, Honeywell's failure to comply with any term of

this Consent Decree constitutes a violation of this Consent Decree.  Notwithstanding the

foregoing, Honeywell shall not suffer any penalty if it cannot comply with any requirement

hereof because of an act of God, war, riot, or an event (including prohibitively severe or

extraordinary weather conditions which materially interfere with implementation of the

Remedial Program) beyond the control of Honeywell or its agents in carrying out Honeywell's

obligations under this Consent Decree which cannot be overcome by their due diligence ("Force

Majeure Event").  A Force Majeure Event specifically excludes a lack of sufficient financial

resources.  In the event of a Force Majeure, Honeywell shall be obligated to perform the affected

activities within a time period which shall not exceed the time period of the delay reasonably

attributed to the Force Majeure.  In the event of a dispute, Honeywell shall bear the burden of

proving that any delay results from circumstances which constitute a Force Majeure, that the

delay could not have been overcome by due diligence, and that the proposed length of the delay

is reasonably attributed to the Force Majeure.

72.    Honeywell shall notify the State in writing within five days of when it obtains

28

knowledge of any condition which may delay performance of its obligations under this Consent Decree. Honeywell shall include in such notice the measures taken and to be taken by Honeywell to prevent or minimize any delays and shall request an appropriate extension or modification of this Consent Decree. Failure to give such notice within such five-day period constitutes a waiver of any claim that a delay is attributable to a Force Majeure event.

**Upland Sources**

73. Honeywell's failure to achieve a Remedial Action Objective ("RAO") or, if applicable, Preliminary Remediation Goal ("PRG") set forth in the ROD in any area of the Geddes Brook/Ninemile Creek Subsite shall not constitute a violation of this Consent Decree provided that Honeywell demonstrates that the failure is caused solely by hazardous substance(s) that migrated into the Geddes Brook/Ninemile Creek Subsite from an upland source ("upland hazardous substance") after the State approved the Remedial Action portion of the Remedial Program for that area of the Geddes Brook/Ninemile Creek Subsite. As used in this paragraph, the term "caused solely" shall mean that Honeywell would have achieved the RAO(s) or PRG(s) in the area of the Geddes Brook/Ninemile Creek Subsite in issue but for the presence of the upland hazardous substance(s) in that area; and the term "upland source" shall mean a source of hazardous substances which is outside the boundaries of the Geddes Brook/Ninemile Creek Subsite that is not owned or controlled by Honeywell and where hazardous substances generated by Honeywell were not disposed. Any dispute arising under this paragraph shall be subject to the dispute resolution provisions in paragraphs 58-66.

## ENTRY UPON SITE

74. Honeywell hereby consents to the entry at all reasonable times upon the Geddes Brook/Ninemile Creek Subsite or areas in the vicinity of the Geddes Brook/Ninemile Creek

29

Subsite which may be under the control of Honeywell, upon notice which is reasonable under the circumstances, presented by any duly designated employee, consultant, contractor, or agent of the State or EPA for purposes of oversight, including but not limited to inspection, sampling, and testing activities and otherwise ensuring Honeywell's compliance with this Consent Decree. Honeywell shall provide the State with suitable office space at the Geddes Brook/Ninemile Creek Subsite, including a telephone and high-speed internet cable access, and shall permit the State full access to all Geddes Brook/Ninemile Creek Subsite-related data including Geddes Brook/Ninemile Creek Subsite-related data contained in privileged records and non-privileged records relating to matters addressed by this Consent Decree, and job meetings.

## PAYMENT OF COSTS INCURRED BY THE STATE

75.     Honeywell shall reimburse the State for all response costs incurred by the State related to the Geddes Brook/Ninemile Creek Subsite within 30 days of receipt of an invoice itemizing such costs.  Such costs shall include response costs incurred by the State prior to the entry of this Consent Decree that have not been reimbursed by Honeywell, including without limitation, costs incurred by the State related to the remedial investigation/feasibility study ("RI/FS") for the Geddes Brook/Ninemile Creek Subsite, costs incurred by the State in connection with the Geddes Brook IRM, as well as costs to be incurred subsequent to the entry of this Consent Decree.

76.     Honeywell shall reimburse the State in accordance with itemized invoices for all response costs incurred by the State, including, but not limited to, direct labor, fringe benefits, indirect costs, travel, analytical costs, and contractor costs incurred by the State for work related to the Site, including, without limitation, all costs related to reviewing and revising submittals made pursuant to this Consent Decree, overseeing activities conducted pursuant to this Consent

30

Decree, collecting and analyzing samples, enforcement and dispute resolution (including attorney's time), and administrative costs associated with this Consent Decree. The State's response costs do not include response costs incurred by EPA in overseeing response actions with respect to the Site.

77.     Personal service costs shall be documented by reports of Direct Personal Service, which shall identify the employee name, title, bi-weekly salary, and time spent (in hours) on the project during the billing period, as identified by an assigned time and activity code. Approved agency fringe benefit and indirect cost rates shall be applied. Non-personal service costs shall be summarized by category of expense (e.g., supplies, materials, travel, contractual) and shall be documented by expenditure reports.

78.     Invoices shall be sent to Honeywell at the following address:

> Honeywell International Inc.
> 301 Plainfield Road, Suite 330
> Syracuse, NY 13212
> Attn: John P. McAuliffe

79.     Payments to the State shall be made by certified check payable to the "New York State Department of Environmental Conservation" and shall be sent to:

> Bureau of Program Management
> Attn: Bureau Director
> Division of Environmental Remediation
> New York State DEC
> 625 Broadway, 12th Floor
> Albany, NY 12233-7016

A copy of all correspondence including any certified checks shall be sent to:

> Norman Spiegel and Andrew J. Gershon
> Assistant Attorneys General
> Environmental Protection Bureau
> 120 Broadway
> New York, NY 10271-0332

31

80.     Each party shall notify the other in writing within 90 days of any change in the foregoing addresses.

81.     Honeywell may contest, in writing, invoiced costs if it believes (i) the cost documentation contains clerical, mathematical, or accounting errors; (ii) the costs are not related to the State's activities with respect to the Remedial Program for the Site; or (iii) the State is not entitled to recover such costs from Honeywell under the ECL, the New York State Finance Law, CERCLA, the Cooperative Agreement or any other statutory, regulatory or common law provision.  If Honeywell objects to an invoiced cost, Honeywell shall pay all costs not objected to within the time frame set forth above, and shall, within 30 days after its receipt of an invoice, identify in writing all costs objected to and state the basis of the objection.  The objection shall be submitted to the Director of the Bureau of Program Management of the Division of Environmental Remediation ("BPM Director").  The BPM Director or the BPM Director's designee shall have the authority to relieve Honeywell of the obligation to pay invalid costs.  The State's determination resolving the objection shall be final and binding upon Honeywell and Honeywell shall pay the amount which the BPM Director or the BPM Director's designee determines Honeywell is obligated to pay within 45 days of Honeywell's receipt of the State's determination unless Honeywell petitions this Court for review within the above-described 45-day period.  The State's determination shall not be set aside or revised by the Court unless Honeywell proves that the State's position is arbitrary, capricious or not in accordance with law.

## FINANCIAL ASSURANCE

82.     Based upon financial representations and assurances made by Honeywell to the State, the State has no reason to believe that Honeywell presently does not have the financial

32

ability to complete the Remedial Program.  On the first anniversary of the entry of this Consent

Decree, Honeywell shall demonstrate its financial ability to complete the Remedial Program, by

submitting to the State a copy of Honeywell's most recent Annual Report.  Each year thereafter,

until the termination of the Geddes Brook/Ninemile Creek Consent Decree as provided in

paragraph 120, Honeywell shall submit its most recent Annual Report to the State within 30 days

of publication of such report.

83.     In the event that the State determines that the financial representations and

assurances provided by the Annual Report and/or other information available to the State do not

demonstrate Honeywell's ability to complete the Remedial Program, then Honeywell shall

establish and maintain financial security in the amount then needed to complete the Remedial

Program, in one or more of the following forms:

A. A surety bond guaranteeing performance of RD/Remedial Construction and

post-implementation OM&M;

B. One or more irrevocable letters of credit, payable to or at the direction of the

State, equaling the total estimated cost of the RD/Remedial Construction and OM&M;

C. A trust fund established for the benefit of the State;

D. A guarantee to perform the RD/Remedial Construction and OM&M by one or

more parent corporations or subsidiaries, or by one or more unrelated corporations that have a

substantial business relationship with Honeywell;

E. A policy of insurance that provides the State with acceptable rights as a

beneficiary thereof and that is issued by an insurance carrier whose operations are subject to

regulation and examination by a State agency; or

F. A demonstration that Honeywell satisfies the requirements of 40 C.F.R. §

33

264.143(f).

84.     Honeywell may invoke the dispute resolution procedures in paragraphs 58 - 66 to dispute a State determination under paragraph 83 that Honeywell's Annual Report or other information available to the State does not demonstrate the company's financial ability to complete the Remedial Program.

85.     If Honeywell seeks to demonstrate the ability to complete the work through a guarantee by a third party pursuant to subparagraph 83.D. of this Consent Decree, Honeywell shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. Part 264.143(f). If Honeywell seeks to demonstrate its ability to complete the work by means of the financial test or the corporate guarantee pursuant to subparagraph 83.D. or E., it shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f) annually, on the anniversary of the entry date of this Consent Decree. In the event that the State determines at any time that the financial assurances provided pursuant to this section are inadequate, Honeywell shall, within 30 days of receipt of notice of the State's determination, obtain and present to the State for approval one of the other forms of financial assurance listed in paragraph 83 of this Consent Decree. Honeywell may invoke the dispute resolution procedures in paragraphs 58 - 66, to dispute a State determination under this paragraph that Honeywell's financial assurances provided pursuant to this Section are inadequate. Honeywell's inability to demonstrate financial ability to complete the RD/Remedial Construction and post-implementation OM&M shall not excuse performance of any activities required under this Consent Decree.

86.     In the event that Honeywell demonstrates that the estimated cost to complete the remaining RD/Remedial Construction and post-implementation OM&M has diminished below the amounts that may be established pursuant to paragraph 83 above (if applicable), Honeywell

34

may, with State approval, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the State, reduce the amount of the financial security provided under this Consent Decree to the estimated cost of the remaining RD/Remedial Construction and post-implementation OM&M to be performed. Honeywell shall submit a proposal for such reduction to the State in accordance with the requirements of this Consent Decree, and may reduce the amount of the security upon the State's written approval. In the event that Honeywell disputes the State's determination and invokes the dispute resolution provisions of paragraphs 58-66, then Honeywell shall maintain the amount of financial security as provided in the final administrative or judicial decision resolving the dispute.

87.     Honeywell may change the form of the financial assurance provided herein at any time, with the written approval of the State, provided that the new form of assurance meets the requirements of this Consent Decree. In the event of a dispute, Honeywell may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute pursuant to paragraphs 58-66.

## RESERVATIONS OF RIGHTS

88.     This Consent Decree resolves only the State's claims against Honeywell for the "Matters Addressed" by this Consent Decree as defined in paragraph 104, below. All other claims raised in this action including without limitation the State's claims for natural resource damages pursuant to CERCLA, 42 U.S.C. § 9607(a)(4)(C), for restitution and damages for the loss of or injury to the State's natural resources pursuant to New York common law, for the remediation of other sites and subsites, and for the reimbursement of all response costs incurred or to be incurred by the State with respect to activities, not addressed by this Consent Decree, conducted or to be conducted at, or concerning, the Onondaga Lake NPL Site, and any defenses

35

that Honeywell may have thereto, are reserved for later resolution in this action.

89.    Nothing in this Consent Decree or the Geddes Brook/Ninemile Creek ROD, including, without limitation, provisions for the design and implementation of habitat reestablishment or habitat enhancement projects, shall be construed as barring, adjudicating, or in any way resolving any claim, cause of action, or right that the State may have under CERCLA or the State's common law arising from injuries to or loss of natural resources.  In the event that Honeywell asserts any defense to, or entitlement to an offset or other credit against, any such claim, cause of action, or right based upon the provisions of this Consent Decree or the Geddes Brook/Ninemile Creek ROD, or upon work performed pursuant to such provisions, then, with respect to such defense or claim of entitlement, the provisions of this Consent Decree and Geddes Brook/Ninemile Creek ROD, and the fact that the work was performed pursuant to such provisions, shall not create any presumptions including any presumption that the work constitutes or does not constitute: (a) a restoration of natural resources that may be damaged or destroyed at the Site; (b) an enhancement of natural resources at the Site; or (c) mitigation for the loss of natural resources caused by the implementation of the remedy selected in the Geddes Brook/Ninemile Creek ROD.

90.    Nothing contained in this Consent Decree shall be construed as barring, adjudicating, or in any way resolving any other claim, cause of action, right or defense that the parties may have under state or federal law as against each other or as against any third party, including, but not limited to: (a) the State's right to bring criminal charges against any person or entity, and (b) the State's right to gather information and enter and inspect property and premises.  Nothing contained in this Consent Decree shall be construed as an intention to resolve any claims of the United States.

91.    Honeywell is entering into this Consent Decree as a compromise of disputed claims. Nothing in this document shall be construed as either an admission or denial of liability or fact.

92.    The State reserves all claims and rights to institute proceedings in this action, or in a new action filed under federal or state law, or to issue an Administrative Order pursuant to state law, *e.g.*, ECL § 27-1301 *et seq.*, seeking to compel Honeywell to implement a modification to the Remedial Program which is not an Included Modification within the meaning of paragraph 50 and/or to reimburse the State for additional response costs incurred by the State in implementing such modifications. Honeywell reserves all defenses to such claims.

93.    The State reserves all powers and rights it may have against Honeywell or any other person or entity to protect public health and the environment from an imminent hazard, nor shall this Consent Decree be construed so as to prohibit the commissioners of Environmental Conservation and Health and their duly authorized representatives from exercising any summary abatement powers against Honeywell or any other person or entity, either at common law or as granted by statute or from requiring Honeywell or other person or entity to take further response actions at the Geddes Brook/Ninemile Creek Subsite upon a determination by one of said commissioners or their duly authorized representatives that the Remedial Program is not protective of human health and the environment. Honeywell reserves all defenses to any such efforts by the State and this Consent Decree shall not be construed to require Honeywell to perform any action in response to such a proceeding instituted by the State.

## INDEMNIFICATION

94.    Honeywell shall indemnify and hold the State and its representatives and employees harmless for all claims, suits, actions, damages, and costs of every name and

description arising out of or resulting from the fulfillment or attempted fulfillment of this Consent Decree by Honeywell and/or any of Honeywell's directors, officers, employees, servants, contractors, agents, successors, and assigns, provided, however, that Honeywell shall not be required to indemnify and hold the State, its representatives, and employees harmless regarding any liability arising as a result of the gross negligence or recklessness, wanton or intentional misconduct or any criminal act by the State and its representatives and employees during the course of any activities conducted pursuant to this Consent Decree.

## COMMUNICATIONS

95.    All written communications required by this Consent Decree shall be transmitted by United States Postal Service or by private courier service, or shall be hand delivered.

96.    Written communication from Honeywell including progress reports, communications containing or pertaining to data, engineering or technical reports or other engineering or technical deliverables or pertaining to field work shall be sent as follows:

> Four copies to:     Mr. Timothy Larson, P.E., Project Manager
> Division of Environmental Remediation
> New York State Department of Environmental Conservation
> 625 Broadway, 12th Floor
> Albany, New York 12233-7013

Of the four copies one shall be an electronic copy on compact disk(s) or DVD(s) and three shall be bound hard copies. The electronic copy shall contain all text, tables, figures and appendices both in the Honeywell's original format and in one Portable Document Format (PDF) file. In the event a DEC-approved RDWP or RD developed pursuant to this Consent Decree allows for the use of computer software that is not in the possession of the State, two such original software packages shall be provided by Honeywell upon request by the State.

All analytical data shall be provided in both a hard copy format, as specified in the DEC-

38

approved Sampling and Analysis Plan, as well as an electronic format.  The electronic format

shall be consistent with the latest version of the DEC's Electronic Data Deliverable ("EDD")

format.

Two bound copies and three electronic copies (PDF) shall be sent to:

> Mr. Robert Nunes, Project Manager
> United States Environmental Protection Agency
> Region II
> 290 Broadway, 20th Floor
> New York, NY 10007-1866

One bound copy copies and one electronic copy (original format and PDF) to each of the
following:

> Mr. Michael Spera, P.E.
> AECOM Environmental
> One World Financial Center
> 200 Liberty Street, 25th Floor
> New York, NY 10281

> Mr. Robert Montione
> AECOM Environmental
> 40 British American Boulevard
> Latham, NY 12110

One bound copy and one electronic copy (PDF) to:

> Mr. Mark Sergott
> New York State Department of Health
> 547 River Street
> Troy, NY 12180-2216

> Mr. Greggory Townsend, Regional Hazardous Waste Engineer
> New York State Department of Environmental Conservation
> Region 7
> 615 Erie Blvd. West
> Syracuse, NY 13204-2400

One bound copy to:   Mr. Kenneth Lynch, Regional Director
New York State Department of Environmental Conservation
Region 7
615 Erie Blvd. West
Syracuse, NY 13204-2400

Copy of cover letters only to:

Norman Spiegel
Assistant Attorney General
Environmental Protection Bureau
120 Broadway
New York, NY 10271-0332

Andrew J. Gershon
Assistant Attorney General
Environmental Protection Bureau
120 Broadway
New York, NY 10271-0332

Margaret Sheen, Esq.
New York State Dept. of Environmental Conservation
615 Erie Boulevard West
Syracuse, NY 13204-2400

Argie Cirillo, Assistant Regional Counsel
United States Environmental Protection Agency
Region II
290 Broadway, 17th Floor
New York, NY 10007-1866

97.    While an electronic copy of all correspondence is to be provided to Mr. Larson at

the above address, unless otherwise directed in this Consent Decree, only one copy of written

communications from Honeywell is to be sent to the individuals listed above in paragraph 96

where such communications do not enclose or pertain to data, technical or engineering reports or

deliverables and/or do not pertain to field work.

98.    Honeywell shall transmit each document that is subject to State approval, within

14 days of its final approval, to the four public repositories and the representative of the

40

Onondaga Nation listed below. Each approved document, delivered to the public repositories, shall contain the State's approval letter relating to the respective document.

NYSDEC, Region 7
Attn: Greggory Townsend, P.E.,
Regional Hazardous Waste Remediation Engineer
615 Erie Blvd. West
Syracuse, NY 13204
(315) 426-7551

Onondaga County Public Library
Syracuse Branch at the Galleries
Attn: Jean Palmer, Head of Local History Department
447 South Salina St.
Syracuse, NY 13204
(315) 435-1840

Atlantic States Legal Foundation
Attn: Samuel Sage, Director
658 West Onondaga St.
Syracuse, NY 13204
(315) 475-1170

Solvay Public Library
Attn: Cara Burton, Director
615 Woods Road
Solvay, NY 13209

Joseph Heath, Esq.
716 East Washington Street, Suite 104
Syracuse, NY 13210-1502
(315) 475-2559

99. Communication to be made from the State to Honeywell shall be sent to:

Brian Israel, Esq.
Arnold & Porter, LLP
555 Twelfth Street, NW
Washington, DC 20004-1202

Honeywell International Inc.
301 Plainfield Road, Suite 330
Syracuse, NY 13212
Attn: Mr. John P. McAuliffe, Project Manager

41

100.    The State and Honeywell reserve the right to designate additional or different addressees for communication upon providing written notice to the other.

## ENVIRONMENTAL EASEMENTS

101.    Because the ROD for the Geddes Brook/Ninemile Creek Subsite relies upon one or more institutional and/or engineering controls, Honeywell shall execute one or more environmental easements for those portions of the Geddes Brook/Ninemile Creek Subsite which Honeywell owns pursuant to the requirements and processes set forth in ECL Article 71, Title 36, which easement(s) shall be substantially similar in format to Appendix D.  Honeywell shall execute one or more appropriate environmental easements within 45 days of Honeywell's receipt of a notification from the State under paragraph 48 herein that all Remedial Construction for the Geddes Brook/Ninemile Creek Subsite or for any State-approved module thereof has been completed in compliance with the approved RD, or no fewer than 45 days before Honeywell may convey any portion of the Geddes Brook/Ninemile Creek Subsite which it currently owns. Honeywell shall then cause such instrument(s) to be recorded with the recording officer of the county(ies) wherein the Geddes Brook/Ninemile Creek Subsite is located within 30 days of the State's approval of such instrument.  Honeywell shall provide the State with a copy of such instrument(s) certified by the recording officer to be a true and faithful copy(ies) within 60 days after such recording.  Concerning those portions of the Geddes Brook/Ninemile Creek Subsite that are not owned by Honeywell and whereon institutional and/or engineering controls are relied upon, Honeywell shall obtain one or more appropriate Environmental Easement(s) from all such owners within the 45-day time frame specified above, whether through purchase or otherwise, in accordance with law.  All such environmental easement(s) addressed in this paragraph shall run

42

with the land; grant access for the purposes set forth in paragraph 74, above; and grant the State

the right to enforce any use restrictions on subject properties necessary to implement, ensure

non-interference with, or ensure the protectiveness of remedial measures to be performed

pursuant to this Consent Decree.  If Honeywell does not cause all such environmental

easement(s) addressed in this paragraph to be timely recorded, Honeywell shall be in violation of

this Consent Decree.

## COMPLIANCE WITH LEGAL REQUIREMENTS

102.    (a) Honeywell shall conduct all activities under this Consent Decree in

compliance with all applicable federal, state and local laws and regulations.

(b) Honeywell shall obtain all permits, easements, rights-of-way, rights-of-entry,

approvals, or other authorizations necessary to perform Honeywell's obligations under this

Consent Decree.  If Honeywell fails to obtain any access required to perform its obligations

under this Consent Decree, despite all reasonable efforts to do so, Honeywell shall promptly

notify the State, and shall include in that notification a summary of the steps Honeywell has

taken to attempt to obtain access, within 45 days after (i) the submission of any draft work plan

pursuant to this Consent Decree which is reasonably expected to require such access, and (ii) the

date, if any, upon which the scope of the RD/RA changes with the State's approval, where such

change causes Honeywell to require access from one or more additional owners.  The State may,

as it deems appropriate, assist Honeywell in obtaining access.  Honeywell shall reimburse the

State, in accordance with the procedures in paragraphs 75-81, for all costs incurred by the State

in obtaining access, including, but not limited to, attorneys fees.

(c) The activities conducted pursuant to this Consent Decree, if approved by the State,

are deemed and shall be considered by the State to be consistent with the NCP and ROD.

103.    Notwithstanding the provisions of paragraph 102(b), DEC may exempt Honeywell from the requirement to obtain a permit issued by DEC for any activity that is conducted on the Site and that DEC determines satisfies all substantive technical requirements applicable to a like activity conducted pursuant to a permit.  In addition, DEC may exempt Honeywell from the requirement to obtain any other State permit or local permit where there is a demonstration that obtaining such a permit will substantially delay the project or present a hardship, provided:

> A. the remedial program or activity is conducted on the Site or on premises that are under common control or are contiguous to or physically connected with the Site and the activity exclusively relates to contamination which DEC or Honeywell is handling as part of the site remedial program; and

> B. all substantive technical requirements applicable to a like activity conducted pursuant to a permit are complied with, as determined by DEC; and

> C. the activity is a component of a program selected by a process complying with the public participation requirements of section 6 N.Y.C.R.R. Part 375-1, to the extent applicable.

## CONTRIBUTION PROTECTION

104.    To the extent authorized under 42 U.S.C. § 9613, New York General Obligations Law § 15-108, and any other applicable law, Honeywell shall be deemed to have resolved its liability to the State for purposes of contribution protection provided by CERCLA Section ll3(f)(2) for "Matters Addressed" pursuant to and in accordance with this Consent Decree. "Matters Addressed" in this Consent Decree shall mean all response actions, within the meaning of CERCLA, 42 U.S.C. § 9601(25), taken by Honeywell to implement its requirements,

44

including the investigation, design, implementation, and post-implementation OM&M of the Remedial Program for the Geddes Brook/Ninemile Creek Subsite and all response costs within the meaning of CERCLA, 42 U.S.C. § 9607(a), incurred and to be incurred by the State in connection with the work performed under this Consent Decree, which costs have been reimbursed by Honeywell, including reimbursement of the State's costs pursuant to this Consent Decree.  Furthermore, to the extent authorized under 42 U.S.C. § 9613 (f)(3)(B) or other provisions of CERCLA, by entering into this judicial settlement of liability for the Matters Addressed herein, Honeywell may seek contribution from any person except those who are entitled to contribution protection under 42 U.S.C. § 9613 (f)(2).

## COVENANT NOT TO SUE

105.    In consideration of, and contingent upon Honeywell's compliance with the provisions of this Consent Decree, and subject to the reservation of claims and defenses set forth in paragraphs 88-93, the State covenants not to sue, execute judgment, or take any civil, judicial or administrative action under any federal, state, local or common law (other than enforcement of this Consent Decree) against Honeywell, or its affiliates, subsidiaries, related entities, predecessors, successors and assigns, and their past, present and future employees, officers and directors, for Matters Addressed herein, including without limitation, any claims or causes of action for costs, damages, enforcement costs, interest, contribution or attorneys' fees.

106.    Subject to the reservation of claims and defenses set forth in paragraphs 88-93, Honeywell covenants not to assert any claims or causes of action under any federal, state, local or common law against the State, or its employees, agencies or departments, or to seek against the State any costs, damages, contribution or attorneys' fees arising out of or related to any Matters Addressed by this Consent Decree.

45

## CITIZEN PARTICIPATION

107.   Honeywell shall assist the State in its implementation of a citizen participation program. Honeywell shall cooperate with the State in providing information regarding the Remedial Program to the public and preparing such information for dissemination to the public and in public meetings which may be held or sponsored by the State to explain activities at or relating to the Site.

## LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

108.   This Consent Decree shall be lodged with the Court for a period of 30 days for public notice and comment. The State reserves the right to withdraw or withhold its consent if the comments regarding this Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Honeywell consents to the entry of this Consent Decree without further notice. This Consent Decree shall not be entered if the State withdraws or withholds its consent from any portion of this Consent Decree as lodged, including the appendices.

## MISCELLANEOUS

109.   Honeywell shall retain professional consultants, contractors, laboratories, quality assurance/quality control personnel, and data validators to perform the technical, engineering, and analytical obligations required by this Consent Decree. The experience, capabilities, and qualifications of the firms or individuals selected by Honeywell shall be submitted to the State within 30 days after the entry of this Consent Decree and within 30 days of any relevant change in personnel. The responsibility for the performance of the professionals retained by Honeywell shall rest solely with Honeywell.

110.   All data gathered for utilization during the RDWP, RD and Remedial

46

Construction and OM&M are to be provided in both a hard copy format, as specified in the State-approved Sampling and Analysis Plan, as well as in electronic format, consistent with the latest version of the DEC's Electronic Data Deliverable format.

111.    The State shall have the right to obtain split samples, duplicate samples, co-located samples, or any combination of the three, of all substances and materials sampled by Honeywell, and the State shall have the right to take its own samples.  Honeywell shall have the right to obtain split samples, duplicate samples, or co-located samples, or any combination of the three of all substances and materials sampled by the State.  Honeywell shall make available to the State the results of all sampling and/or tests or other data generated by Honeywell with respect to implementation of this Consent Decree and shall submit these results with the scheduled monthly Progress Report which next follows receipt of the results by Honeywell from the relevant laboratory and otherwise in accordance with the Progress Report requirements in paragraph 52 above.

112.    Honeywell shall notify the State in writing at least 10 days in advance of any field activities to be conducted pursuant to this Consent Decree.

113.    Honeywell and its officers, directors, agents, servants, employees, successors, and assigns shall be bound by this Consent Decree.  Any change in ownership or corporate status of Honeywell including, but not limited to, any transfer of assets or real or personal property shall in no way alter Honeywell's responsibilities under this Consent Decree.  Honeywell shall provide written notice and a copy of this Consent Decree to each contractor and subcontractor hired to perform any portion of the work required hereunder, and to each person representing Honeywell with respect to the Site.  Honeywell shall condition all contracts entered into to carry out the obligations identified in this Consent Decree upon performance in conformity with its

47

terms. Honeywell shall nonetheless be responsible for ensuring that Honeywell's contractors and subcontractors perform the work in satisfaction of the requirements of this Consent Decree.

114.    All references to "professional engineer" in this Consent Decree are to an individual registered as a professional engineer in accordance with Article 145 of the New York State Education Law.

115.    All references to "days" in this Consent Decree are to calendar days unless otherwise specified.

116.    The section headings set forth in this Consent Decree are included for convenience of reference only and shall be disregarded in the construction and interpretation of any of the provisions hereof.

117.    This Consent Decree shall constitute the complete and entire Consent Decree between Honeywell and the State concerning the implementation of the remedy selected for the Geddes Brook/Ninemile Creek Subsite in the ROD.  No term, condition, understanding, or agreement purporting to modify or vary any term of this Consent Decree shall be binding unless made in writing and subscribed by the party to be bound and, unless specifically otherwise provided for herein, approved by the Court.  No informal advice, guidance, suggestion, or comment by the State regarding any report, proposal, plan, specification, schedule, or any other submittal shall be construed as relieving Honeywell of Honeywell's obligation to obtain such formal approvals as may be required by this Consent Decree.

## GEDDES BROOK/NINEMILE CREEK CONSENT DECREE CONTROLS

118.    In the event there is a conflict or inconsistency between the terms of this Consent Decree and the terms of the Geddes Brook/Ninemile Creek SOW, or any work plan required under this Consent Decree, then the terms of this Consent Decree shall control.    .

48

119.    The Geddes Brook Consent Order between DEC and Honeywell requiring Honeywell to implement the Geddes Brook IRM shall remain in effect.  However, to the extent there is any conflict or inconsistency between the terms of this Consent Decree and the terms of the Geddes Brook Consent Order, then the terms of this Consent Decree shall supersede and control.

## TERMINATION OF GEDDES BROOK/NINEMILE CREEK CONSENT DECREE

120.    This Consent Decree shall terminate upon the State's written determination, transmitted by the attorney of record for the State to the attorney of record for Honeywell, that Honeywell has completed all phases of the Remedial Program, including OM&M. Notwithstanding the foregoing, the provisions contained in paragraphs 75-81 (costs), 94 (indemnification), and 104-106 (covenants not to sue and contribution protection) shall survive the termination of this Consent Decree, and any violation of such surviving provisions shall be a violation of this Consent Decree subjecting Honeywell to injunctive relief and stipulated penalties as provided under paragraphs 67-70.

## THE COURT'S CONTINUING JURISDICTION

121.    The Court retains continuing jurisdiction over this action for purposes of enforcing or interpreting this Consent Decree according to its terms, and for resolving the other claims raised in this action which are not resolved by this Consent Decree.

**SO AGREED:**

**Dated: December 30, 2010**

                              **FOR THE PLAINTIFFS:**

                              **ANDREW M. CUOMO**
                              **Attorney General for the State of New York**

                              *Andrew J. Gershon*
                              **ANDREW J. GERSHON**
                              **Assistant Attorney General**
                              **120 Broadway**
                              **New York, New York 10271**
                              **(212) 416-8454**
                              **Attorney of Record, Bar Roll Number 511402**

                              *Alison H. Crocker*
                              **ALISON H. CROCKER**
                              **Deputy Commissioner and General Counsel**
                              **New York State Department of**
                              **Environmental Conservation**
                              **625 Broadway**
                              **Albany, New York 12233-5500**

50

**FOR THE DEFENDANT:**

_____
JOHN P. MCAULIFFE
Program Director, Syracuse
Honeywell International Inc.
301 Plainfield Road, Suite 330
Syracuse, New York 13212

_____
BRIAN ISRAEL
Arnold & Porter LLP
555 12th Street, NW
Washington, D.C. 20004

**IT IS SO ORDERED.**

Dated:  March 10, 2011
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge