UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

                                      Civil Action No. 5:17-cv-01364

HONEYWELL INTERNATIONAL INC.

                and

ONONDAGA COUNTY, NEW YORK

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
STATE OF NEW YORK and BASIL SEGGOS as
Trustee of the Natural Resources,

                Plaintiffs,

    v.                                    Civil Action No. 89-CV-815

HONEYWELL INTERNATIONAL INC.

                and

ONONDAGA COUNTY, NEW YORK

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CONSENT DECREE**

## TABLE OF CONTENTS

I. BACKGROUND ...................................................................................................... 1
II. JURISDICTION AND SUBSTITUTION OF PARTY ............................................. 2
III. PARTIES BOUND ................................................................................................. 2
IV. DEFINITIONS ...................................................................................................... 3
V. GENERAL PROVISIONS ..................................................................................... 6
VI. PAYMENTS BY HONEYWELL .......................................................................... 7
VII. TRUSTEE-SPONSORED RESTORATION PROJECTS......................................... 8
VIII. RESTORATION PROJECT OBLIGATIONS OF HONEYWELL ........................... 9
IX. RESTORATION OBLIGATIONS OF THE COUNTY ........................................... 19
X. STEWARDSHIP FUNDS...................................................................................... 21
XI. APPROVAL OF SUBMITTALS .......................................................................... 21
XII. PROJECT COORDINATORS ............................................................................... 22
XIII. FINANCIAL ASSURANCE ................................................................................. 22
XIV. INDEMNIFICATION AND INSURANCE ............................................................ 24
XV. FORCE MAJEURE .............................................................................................. 26
XVI. DISPUTE RESOLUTION ..................................................................................... 27
XVII. STIPULATED PENALTIES ................................................................................. 29
XVIII. COVENANTS AND RESERVATIONS OF RIGHTS BY PLAINTIFFS.................. 32
XIX. COVENANTS BY SETTLING PARTIES ............................................................. 35
XX. EFFECT OF SETTLEMENT; CONTRIBUTION .................................................. 35
XXI. ACCESS TO RESTORATION PROJECT PROPERTIES ....................................... 37
XXII. ACCESS TO INFORMATION .............................................................................. 37
XXIII. RETENTION OF RECORDS ................................................................................ 38
XXIV. NOTICES AND SUBMISSIONS .......................................................................... 39
XXV. CERTIFICATION ................................................................................................ 41
XXVI. RETENTION OF JURISDICTION ........................................................................ 42
XXVII. APPENDICES ..................................................................................................... 42
XXVIII. MODIFICATION ................................................................................................. 42
XXIX. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT............................. 42
XXX. SIGNATORIES/SERVICE.................................................................................... 43
XXXI. FINAL JUDGMENT ............................................................................................ 43

# I.   BACKGROUND

A.     The United States of America ("United States"), on behalf of the U.S. Department of the Interior ("DOI"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendants Honeywell International Inc. ("Honeywell") and Onondaga County, New York, are liable to the United States under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607, for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss, resulting from the release or threat of release of hazardous substances at or in connection with Defendants' facilities at the Onondaga Lake Superfund Site in Syracuse, New York.

B.     In June 1989, the State of New York and the Commissioner of Environmental Conservation as trustee of the natural resources (collectively, the "State") filed a complaint against Allied-Signal, Inc., now known as Honeywell International Inc., alleging, in part, that Honeywell is liable to the State of New York under Section 107 of CERCLA and other laws for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss, resulting from the release or threat of release of hazardous substances and Solvay Waste (including calcium chloride, sodium chloride, calcium sulfate, and calcium carbonate) at and in the environs of Onondaga Lake in Syracuse, New York. The area of release or threat of release of hazardous substances alleged in the State's 1989 complaint is congruent with the Onondaga Lake Superfund Site listed on the National Priorities List ("NPL") by the U.S. Environmental Protection Agency ("EPA") in 1994 (the "Site").  By this Consent Decree, the State's complaint is amended, in part, to name Onondaga County as a defendant and to assert a claim against it pursuant to CERCLA, 42 U.S.C. § 9607, for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss, resulting from the release or threat of release of hazardous substances at the Site.

C.     DOI and the Commissioner of Environmental Conservation acting through the New York State Department of Environmental Conservation ("NYSDEC") (collectively, the "Trustees" and, individually, a "Trustee"), under the authority of Section 107(f)(2) of CERCLA, 42 U.S.C. § 9607(f)(2), and 40 C.F.R. Part 300, serve as trustees for natural resources for the assessment and recovery of damages for injury to, destruction of, or loss of natural resources under their trusteeship.

D.     Investigations conducted by the Trustees and EPA have detected hazardous substances in the sediments, soils, groundwater, and waters of the Site, including, but not limited to, mercury, polychlorinated biphenyls, polycyclic aromatic hydrocarbons, dioxins/furans, chlorinated benzenes, heavy metals, and benzene, toluene, ethylbenzene, and xylenes.

E.     The Trustees have engaged in natural resource injury studies, damage assessments, and restoration planning relating to the Site since 1991.  In November 1996, NYSDEC published its Onondaga Lake Natural Resource Damage Assessment Plan.  In May 2009, the Trustees, the Onondaga Nation, and Honeywell entered into a Cooperative Assessment and Funding Agreement by which Honeywell agreed to participate and provide funding for the performance of a cooperative natural resource assessment.  In October 2012, the Trustees and the Onondaga Nation issued the Onondaga Lake Natural Resource Damage Assessment Plan Addendum.  In

1

2015, the Onondaga Nation withdrew from its participation in the Cooperative Assessment and Funding Agreement with Honeywell.  However, the Onondaga Nation continued its engagement in the natural resource damage assessment and restoration process with the Trustees.  Prior to the lodging of this Consent Decree, the Trustees issued the Onondaga Lake Natural Resource Damage Assessment Restoration Plan and Environmental Assessment ("RP/EA"), consistent with 43 C.F.R. § 11.93, which is attached to this Consent Decree as Appendix A.

F.      Honeywell and Onondaga County, which have entered into this Consent Decree, do not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the complaints, nor do they admit or endorse any fact and/or conclusion in the RP/EA.

G.      Certain entities (as listed in Appendix B) have made payments to Honeywell for natural resource damages at the Onondaga Lake Bottom Subsite under prior settlements with Honeywell; in exchange, Honeywell indemnified such parties for those NRD claims.

H.      The Plaintiffs, Honeywell, and Onondaga County ("Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite restoration of natural resources allegedly injured and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.      JURISDICTION AND SUBSTITUTION OF PARTY

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1367, and 42 U.S.C. §§ 9607 and 9613(b), and over the Parties. Solely for the purposes of this Consent Decree and the underlying complaints, Honeywell and Onondaga County (the "Settling Parties") waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Parties shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

2.      The State's complaint in this case, filed on June 27, 1989, shall be deemed amended to include and reflect the name change of Honeywell International Inc., formerly known as Allied-Signal, Inc., to add as a party defendant Onondaga County, to assert against Onondaga County a claim pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss, resulting from the release or threat of release of hazardous substances at the Site, and to substitute Basil Seggos as the Commissioner of Environmental Conservation and Trustee of the natural resources.

## III.     PARTIES BOUND

3.      This Consent Decree is binding upon the United States and the State, and upon the Settling Parties and their successors and assigns.  Any change in ownership or corporate or other legal status of a Settling Party including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Party's responsibilities under this Consent

Decree.  Except as provided in Section XVIII (Covenants and Reservations of Rights by Plaintiffs), this Consent Decree shall not release, alter, or nullify any of the terms and conditions set forth in the Consent Decree between the State of New York and Honeywell International Inc. (Scullin, S.J.), entered on January 4, 2007, 89-cv-815, and the Consent Decree between the State of New York and Honeywell International Inc. (Scullin, S.J.), entered on March 10, 2011, 89-cv-815, providing for the implementation of a remedial program for the Site and related obligations.

4.     Settling Parties shall provide a copy of this Consent Decree to each contractor hired to perform any work or other activities required by this Consent Decree, and to each officer, agent, or employee of any Settling Party who has supervisory authority with respect to any such work or activities.  Settling Parties or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the work.  Settling Parties shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the work in accordance with the terms of this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the respective Settling Party within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.   DEFINITIONS

5.     Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply solely for purposes of this Consent Decree:

(A) "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675.

(B) "Consent Decree" or "Decree" shall mean this consent decree and all appendices attached hereto (listed in Section XXVII) and any final approved plans required hereunder.  In the event of conflict between this Decree and any appendix or plan, this Decree shall control.

(C) "Conservation Easement" shall mean an easement that satisfies the requirements of the New York State Environmental Conservation Law, Article 49, Title 3.

(D) "County Access Projects" shall refer to the (i) Shoreline Enhancement component of the Maple Bay In-Lake Habitat Enhancement Project (Appendix C, Project 1); (ii) Maple Bay Onshore Habitat Enhancement Project (Appendix C, Project 2); (iii) Northwest Shoreline Onshore Enhancement Project (Appendix C, Project 3); (iv) County-owned property, easements, and right-of-ways required for the Erie Canal Trail Project (Appendix C, Project 11); and (v) County-owned property required for the Outlet Jetty Enhancement Project (Appendix C, Project 17), each of which projects require access to County-owned property in order to implement the identified Restoration Projects.

(E) "County Maintenance Projects" shall refer to the (i) that portion of the Erie Canal Trail Project that is located in the County West Lake Recreation Trail parking area, located in the New York State Fair Grounds Orange Parking Lot (Appendix C, Project 11); (ii) Southwest

Shore Recreation Trail Project (Appendix C, Project 12); (iii) Deep Water Fishing Pier Project (Appendix C, Project 13); (iv) Southwest Shore Angler Access Project (Appendix C, Project 14); and (v) Outlet Jetty Enhancement Project (excluding the underlying jetty structures) (Appendix C, Project 17), each of which projects or portions thereof as set forth in Appendix C shall require operation, maintenance, and repair by Onondaga County in accordance with this Consent Decree and the Scopes of Work (Appendix C).

(F) "Day" or "day" shall mean a calendar day.  In computing any period of time under this Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

(G) "DOI" shall mean the U.S. Department of the Interior and its successor departments, agencies, or instrumentalities.

(H) "DOJ" shall mean the U.S. Department of Justice and its successor departments, agencies, or instrumentalities.

(I) "Effective Date" shall mean the date upon which the approval of this Decree is recorded on the Court's docket.

(J) "Honeywell" shall mean Honeywell International Inc.

(K) "Honeywell Indemnified Parties" shall mean the entities listed on Appendix B that have made payments to Honeywell for, inter alia, claims for natural resource damages at the Onondaga Lake Bottom Subsite under prior settlements with Honeywell, and in exchange, Honeywell indemnified such parties for those NRD claims.

(L) "Interest" shall mean interest at the rate specified for interest on investments of the Hazardous Substance Superfund, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.  Rates are available online at http://www2.epa.gov/superfund/superfund-interest-rates.

(M) "Lake Bottom Subsite" or "Onondaga Lake Bottom Subsite" shall mean the sediment and waters of the Onondaga Lake, comprising the Onondaga Lake Bottom Subsite Operable Unit 2 as described in the Record of Decision for the Onondaga Lake Bottom Subsite, issued July 2005 by NYSDEC and EPA.

(N) "Lake Bottom Subsite Natural Resource Damages" shall mean any damages recoverable by the United States or the State pursuant to Sections 107(a)(4)(C) and 107(f) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(C) and 9607(f), and/or any other federal law, state law, local law, common law, or regulation for injury to, destruction of, loss of, loss of use of, or impairment of natural resources, including any services such natural resources provide, resulting from a release of oil or hazardous substances at the Lake Bottom Subsite.  Lake Bottom Subsite Natural Resource Damages include, without limitation:  (i) the costs of assessing injury to, destruction of, loss of, loss of use of, or impairment of natural resources and the resulting damage; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost natural resources and the services they provide, or of acquisition of equivalent resources; (iii) the costs of planning such restoration activities; (iv) compensation for injury, destruction, loss,

4

impairment, diminution in value, or loss of use of natural resources or natural resource services; and (v) each of the categories of recoverable damages described in 43 C.F.R. § 11.15 and applicable state law.

(O) "Natural Resource Damages" shall mean any damages recoverable by the United States or the State pursuant to Sections 107(a)(4)(C) and 107(f) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(C) and 9607(f), and/or any other federal law, state law, local law, common law, or regulation for injury to, destruction of, loss of, loss of use of, or impairment of natural resources, including any services such natural resources provide, resulting from a release of oil, Solvay Waste, or hazardous substances at or from the Site.  Natural Resource Damages include, without limitation:  (i) the costs of assessing injury to, destruction of, loss of, loss of use of, or impairment of natural resources and the resulting damage; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost natural resources and the services they provide, or of acquisition of equivalent resources; (iii) the costs of planning such restoration activities; (iv) compensation for injury, destruction, loss, impairment, diminution in value, or loss of use of natural resources or natural resource services; and (v) each of the categories of recoverable damages described in 43 C.F.R.  § 11.15 and applicable state law.

(P) "NRDAR Fund" shall mean DOI's Natural Resource Damage Assessment and Restoration Fund.

(Q) "Onondaga County" or "County" shall mean the County of Onondaga, New York, including the Onondaga County Department of Water Environment Protection.

(R) "Paragraph" or "¶" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

(S) "Parties" shall mean the Plaintiffs and the Settling Parties.

(T) "Performance Criteria" shall mean the performance criteria and other measures of achievement of the goals of the Restoration Projects, as set forth in Appendix C.

(U) "Plaintiffs" shall mean the United States and the State of New York.

(V) "Project Implementation" shall mean the completion of all construction, installation, or enhancement activities required for each Restoration Project (excluding monitoring and maintenance), pursuant to the respective Scope of Work (Appendix C) such that the project has been placed in operation, and is expected to both function and perform as designed.  Certain Restoration Projects required under this Consent Decree may consist of separate components. For those Restoration Projects consisting of separate components, Project Implementation shall not be achieved until the last component is constructed, installed, or enhanced as set forth in the applicable Scope of Work; provided, however, that the proposed transfer of fee title or a Conservation Easement in property pursuant to Paragraph 24 herein is not included as a project component for purposes of determining when Project Implementation has occurred.  Project monitoring and maintenance obligations commence on the date Project Implementation is achieved.

(W) "Project Completion" shall mean the completion of all monitoring and maintenance required for each Restoration Project, such that the project complies with the applicable

5

Performance Criteria.  The date of Project Completion is the date upon which the Trustees issue a Certification of Project Completion for a Restoration Project as set forth in Paragraph 29.

(X) "Restoration Projects" shall mean the restoration actions described in the Scopes of Work for Restoration Projects 1-19, attached at Appendix C, and implemented and completed in accordance with Section VIII (Restoration Project Obligations of Honeywell) and Section IX (Restoration Obligations of the County).  Where referring to an individual project, the singular term "Restoration Project" shall be used.

(Y) "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

(Z) "Settling Parties" shall mean Honeywell and Onondaga County.  Where distinctions need to be made between the Settling Parties, the terms "Honeywell" and "Onondaga County" shall be used.  Where referring to an individual member of "Settling Parties," the singular term "Settling Party" shall be used.

(AA) "Site" shall mean the Onondaga Lake Superfund Site in Syracuse, Onondaga County, New York, listed on the NPL, 59 Fed. Reg. 241 (December 16, 1994).

(BB) "State" shall mean the State of New York, including the Commissioner of Environmental Conservation as trustee of the natural resources acting through the New York State Department of Environmental Conservation.

(CC) "Trustees" shall mean DOI and the Commissioner of Environmental Conservation acting through the New York State Department of Environmental Conservation.

(DD) "United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including DOI.

## V.     GENERAL PROVISIONS

6.     **Compliance with Applicable Law**.  All activities undertaken by, on behalf of, or pursuant to contract with Settling Parties pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal, state, and local laws and regulations.

7.     **Permits**.  Where permits or approvals are required, Settling Parties shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Settling Parties may seek relief under the provisions of Section XV (Force Majeure) for any delay in the performance of the obligations of Section VIII and Section IX resulting from a failure to obtain, or a delay in obtaining, any permit or approval required for such performance, provided that it has submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

8.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.     The Onondaga Nation is not a party to this Consent Decree.

## VI.   PAYMENTS BY HONEYWELL

10.     **Payments for Assessment Costs**.  Within 30 days after the Effective Date, Honeywell shall pay a total of $166,934.00 for past assessment costs and a total of $750,000.00 for future restoration oversight costs (collectively, "assessment costs"), as described below.

      a.     <u>Payment for United States' Assessment Costs</u>.  Within 30 days after the Effective Date, Honeywell shall pay to the United States a total of $500,000.00 for future restoration oversight costs to be incurred by the United States.  Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Honeywell by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Northern District of New York after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Honeywell shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

> John P. McAuliffe, P.E.
> Program Director, Syracuse
> Honeywell International Inc.
> 301 Plainfield Road, Suite 330
> Syracuse, NY 13212
> (315) 552-9782
> john.mcauliffe@honeywell.com

on behalf of Honeywell.  Honeywell may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and DOI in accordance with Section XXIV (Notices and Submissions).  The total amount paid shall be deposited in the DOI NRDAR Fund to be applied toward natural resource damage assessment costs incurred by DOI.

      b.     <u>Payment for State's Assessment Costs</u>.  Within 30 days after the Effective Date, Honeywell shall pay to the State of New York a total of $416,934.00 consisting of $166,934.00 for past assessment costs incurred and $250,000.00 for future restoration oversight costs to be incurred by the State.  Payment shall be made by EFT to the New York Office of the Attorney General account in accordance with current EFT procedures and instructions provided to Honeywell by the State after the Effective Date.

11.     **Payment for Joint Trustee-Sponsored Natural Resource Restoration Projects**.  Within 30 days after the Effective Date, Honeywell shall pay a total of $5,000,000.00 for joint Trustee-sponsored natural resource restoration projects as provided in Section VII below.  Payment shall be made in accordance with Paragraph 10(a).  The total amount paid shall be deposited in a segregated sub-account within the NRDAR Fund ("Onondaga Lake sub-account"), to be managed by DOI for the joint benefit and use of the Trustees to pay for Trustee-sponsored natural resource restoration projects in accordance with Section VII.

12.     **Payment for Stewardship Funds**.  Within 30 days after the Effective Date, Honeywell shall pay a total of $500,000.00 for costs associated with the stewardship of certain

Restoration Projects as set forth below in Section X (Stewardship Funds).  Payment shall be made in accordance with Paragraph 10(a).  The total amount paid shall be deposited in the segregated Onondaga Lake sub-account to be used for stewardship activities in accordance with Section X (Stewardship Funds).

13.     **Payment for Invasive Species Control and Habitat Preservation Project**.  Within 18 months after the Effective Date and each year thereafter on or before December 7th for a period of 15 years, Honeywell shall pay to the Trustees a total of up to $200,000.00 each year for implementation of invasive species control and habitat preservation work in accordance with the Scope of Work for the Invasive Species Control and Habitat Preservation Project (Appendix C, Project 9).  Any funds paid by Honeywell pursuant to this Paragraph shall be used by the Trustees for invasive species control and habitat preservation work in the year paid or rolled over to the following or subsequent years; provided, however, that the existence of any unused funds paid pursuant to this Paragraph shall not affect the ability of the Trustees to request up to $200,000.00 in any particular year.  Payment shall be made in accordance with Paragraph 10(a).  The total amount paid shall be deposited in the segregated Onondaga Lake sub-account to be used for implementation of the Invasive Species Control and Habitat Preservation Project as set forth in the applicable Scope of Work (Appendix C, Project 9).

14.     **Payment for Public Fishing Rights**.  Within 30 days after the Effective Date, Honeywell shall pay a total of $86,172.00 for the State's use to acquire public fishing rights in the Onondaga Lake Watershed associated with non-Honeywell owned property.  Payment shall be made in accordance with Paragraph 10(b).

15.     **Notice of Payment**.  Upon making the payments required under Paragraphs 10-14, Honeywell shall send written notice to the United States and the State, in accordance with Section XXIV (Notices and Submissions), that payment has been made, and reference the relevant civil action number, CDCS Number, and DOJ case number 90-11-3-08348/1.

16.     **Interest**.  In the event that any payment required by this Section is not made by the date required, Honeywell shall pay Interest on the unpaid balance through the date of payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Honeywell's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 61.

## VII.   TRUSTEE-SPONSORED RESTORATION PROJECTS

17.     **Management and Application of Funds**.  All funds deposited in the segregated Onondaga Lake sub-account within the NRDAR Fund under Paragraphs 11-13 shall be managed by DOI for the joint benefit and use of the Trustees to pay for Trustee-sponsored natural resource restoration efforts in accordance with this Consent Decree and the RP/EA.  All such funds shall be applied toward the costs of restoration, rehabilitation, or replacement of injured natural resources, and/or acquisition of equivalent resources, including, but not limited to, any administrative, legal, oversight and maintenance costs, and expenses necessary for, and incidental to, restoration, rehabilitation, replacement, and/or acquisition of equivalent resources

planning, and any restoration, rehabilitation, replacement, and/or acquisition of equivalent resources undertaken.

18.     **Restoration Planning**.  After inviting and considering public comment, the Trustees issued the RP/EA prior to the lodging of this Consent Decree describing the projects and funds necessary to restore natural resources that have been injured, damaged, or destroyed at the Site in accordance with 43 C.F.R. § 11.93.  Reference to the RP/EA in and its inclusion as an appendix (Appendix A) to this Consent Decree shall not as a consequence of such reference and inclusion constitute an admission of fact or law by either Settling Party with respect to the contents of such RP/EA, and the Settling Parties reserve any rights they may have to object to any statements, data, findings, or methods in the RP/EA in any action brought against them by a third party.

19.     Decisions regarding any use or expenditure of funds from the segregated Onondaga Lake sub-account that are dedicated for Trustee-sponsored natural resource restoration efforts under this Section shall be made by unanimous agreement of the Trustees, acting through the Trustee Council, pursuant to the Memorandum of Agreement signed by the Trustees on January 17, 2017.  Settling Parties shall not be entitled to dispute, in any forum or proceeding, any decision relating to use of such funds for restoration efforts.  Nothing in this Paragraph is intended to alter or modify any right, obligation, or limitation on the Trustees' implementation of Trustee-sponsored natural resource restoration efforts under any applicable law, rule, or regulation, nor is it intended to alter or modify any proprietary right or regulatory authority that the County may have with respect to such restoration efforts.

## VIII.   RESTORATION PROJECT OBLIGATIONS OF HONEYWELL

20.     Except for the County's obligations as set forth in Section IX, Honeywell shall finance all Restoration Projects described in the Scopes of Work (Appendix C, Projects 1-19) and shall implement all Restoration Projects except the Invasive Species Control and Habitat Preservation Project (Appendix C, Project 9), which is to be paid for by Honeywell and implemented by the Trustees.

21.     **Restoration Work Plans**.

a.      Within 60 days after the Effective Date, Honeywell shall submit to the Trustees for their written approval, in accordance with the requirements of Section XI (Approval of Submittals), and provide to the County, a proposed Restoration Work Plan for each of the following Restoration Projects set forth in Appendix C: (i) Maple Bay In-Lake Habitat Enhancement Project (Project 1); (ii) Maple Bay Onshore Habitat Enhancement Project (Project 2); (iii) Northwest Shoreline Onshore Enhancement Project (Project 3); (iv) Additional In-Lake Habitat Creation Project (Project 4); (v) Wetland Conservation Project (Project 5); (vi) Native Grasslands Restoration Project (Project 6); (vii) Ninemile Creek Corridor Ecological Enhancement Project (Project 7); (viii) Hudson Farms Ecological Enhancement Project (Project 8); (ix) Tully Recreational Area and Nature Preserve Project (Project 10); (x) Ninemile Creek and Hudson Farms Fishing Access Project (Project 16); (xi) Outlet Jetty Enhancement Project (Project 17); (xii) Boat Launch Project (Project 18); and (xiii) Public Fishing Access Project (Project 19).

b.      Within 90 days after the Effective Date, Honeywell shall submit to the Trustees for their written approval, in accordance with the requirements of Section XI (Approval of Submittals), and provide to the County, a proposed Restoration Work Plan for each of the following Restoration Projects set forth in Appendix C: (i) Erie Canal Trail Project (Project 11); (ii) Southwest Shore Recreation Trail Project (Project 12); (iii) Deep Water Fishing Pier Project (Project 13); (iv) Southwest Shore Angler Access Project (Project 14); and (v) Visitor Center Transfer and Boat Launch Amenities Project (Project 15).

c.      Each proposed Restoration Work Plan shall provide detailed descriptions of activities proposed to be undertaken by Honeywell and a proposed schedule of critical milestones, including, at a minimum, the dates for submissions of final plans and specifications, Restoration Project start date, date for Project Implementation, date for Project Completion, and a schedule for post-Project Implementation monitoring and maintenance.  Each such Restoration Work Plan shall be consistent with the respective Project requirements in the Scope of Work and the Performance Criteria applicable to the Restoration Project, as set forth in Appendix C.

d.      For the County Access Projects and the County Maintenance Projects, Honeywell shall consult with Onondaga County prior to submitting the applicable Restoration Work Plan to the Trustees for their approval; provided, however, that such consultation shall not extend or delay the time frame by which Honeywell is required to submit such plans as set forth in Paragraphs 21 (a) and (b), above.

22.     Honeywell shall implement all Restoration Projects listed in Paragraphs 21(a) and (b), above, in accordance with the terms and schedule set forth in their approved Restoration Work Plans.  In no event shall the date of Project Implementation set forth in the proposed Restoration Work Plan be later than 5 years from the Effective Date.

23.     **Acquisition of Properties**.  Within 18 months after the Effective Date, or within such other time period if agreed to in writing by the Trustees, excluding any County-owned land, easements, and rights-of-way, Honeywell shall acquire fee title to the parcels of real property referenced in the Scopes of Work (Appendix C), for the (i) Maple Bay Onshore Habitat Enhancement Project (Project 2); (ii) Wetland Conservation Project (Project 5); (iii) Hudson Farms Ecological Enhancement Project (Project 8); (iv) Erie Canal Trail Project (Project 11); (v) Boat Launch Project (Project 18); and (vi) the Public Fishing Access Project (Project 19).  Prior to acquiring title, Honeywell shall conduct a due diligence inquiry as set forth in ASTM E1527-13 (Standard Practice for Environmental Site Assessments) for each such parcel and shall provide the results of such due diligence inquiry to the Trustees within 60 days of completion of the inquiry or the Effective Date, whichever is later.

24.     **Conveyance of Properties and/or Conservation Easements**.

a.      General Provisions.  For all properties that are the subject of Restoration Projects in Appendix C to which Honeywell holds title (including title to lands acquired pursuant to Paragraph 23 above), unless some other time is agreed to by the Trustees and Honeywell, within 4 years after the Effective Date, the Trustees shall notify Honeywell in writing with respect to each such property or part thereof whether to (i) retain fee title

subject to a Conservation Easement granted to the State in the name of the "People of the State of New York, acting by and through their Commissioner of Environmental Conservation", (ii) convey fee title to the State in the name of the "People of the State of New York" or (iii)  convey fee title to a third party jointly designated in writing by the Trustees, subject to a Conservation Easement granted to the State in the name of the "People of the State of New York, acting by and through their Commissioner of Environmental Conservation".  The Trustees' direction to Honeywell to convey fee title and/or grant a Conservation Easement, pursuant to their authority under this Paragraph 24 of the Decree, shall be at the Trustees' unreviewable discretion, provided, however, that title shall not be transferred by Honeywell to a third party unless such third party agrees, in writing, that the property is being conveyed "as is with all faults" without representations or warranties by Honeywell of any kind.  For each property subject to this Paragraph, unless some other time is agreed to by the Trustees and Honeywell, Honeywell shall convey fee title for and/or grant a Conservation Easement in the property within 5 years after the Effective Date, pursuant to the Trustees' written notification and the requirements set forth in subparagraphs (c)-(g), below, as applicable.  Honeywell shall conduct a due diligence inquiry as set forth in ASTM E1527-13 (Standard Practice for Environmental Site Assessments) for each parcel that is the subject of a Conservation Easement grant or conveyance of title prior to the grant or conveyance except for such parcels acquired by Honeywell pursuant to Paragraph 23, above, for which parcels such inquiry has been conducted pursuant to Paragraph 23, and shall provide the results of such due diligence inquiry prior to the grant or conveyance to the Trustees or third party and within 60 days of completion of the inquiry and, where appropriate, to the County.

   b.    Exceptions.  The provisions of this Paragraph 24 shall not apply to the lands that are subject of the Native Grasslands Restoration Project (Appendix C, Project 6), the Invasive Species Control and Habitat Preservation Project (Appendix C, Project 9) and the Southwest Shore Recreation Trail Project (Appendix C, Project 12).  With regard to the Southwest Shore Recreation Trail Project, prior to submitting the Restoration Project Implementation Report for this project, as provided in Paragraph 27, Honeywell shall grant to Onondaga County an easement which shall include a grant of enforcement authority to the State of New York, granting in perpetuity (i) a non-exclusive public right of access to use the Southwest Shore Recreation Trail Project (Appendix C, Project 12) and (ii) the County the right to enter and maintain /repair the subject trail.

   c.    Fee Title to the State of New York.  For interest in land that is conveyed to the People of the State of New York by fee title:

      (1)    Title.

         (A)    Title to the property shall be examined with all convenient speed and shall be subject to the approval of the Attorney General of the State of New York ("Attorney General") after the same has been made satisfactory to the Attorney General.  Honeywell shall deliver good

marketable title to the People of the State of New York free and clear of all liens and encumbrances except as otherwise agreed to by the Attorney General in the sole discretion of the Attorney General.

(B)     The Attorney General shall submit all closing requirements in writing to Honeywell.  Honeywell shall cooperate with the Attorney General by providing any existing abstract of title, copy of any existing title insurance policy, existing survey, and any or all related documentation within Honeywell's possession or reasonably obtained by Honeywell.  Honeywell shall secure and deliver (i) any affidavits, as deemed reasonably necessary by the Attorney General for the purpose of disposing of objections to title to the property and (ii) a release for any mortgage, trust deed, or monetary lien created by Honeywell that is security for payment of a sum of money (including, without limitation, tax liens, contractor's liens, and judgment liens) burdening or encumbering the property.

(2)     *Deed*.  Whenever notified by the Attorney General by letter or otherwise, Honeywell shall execute and deliver to the Attorney General, without unreasonable delay, a warranty deed with the covenant required by Subdivision 5 of Section 13 of the New York Lien Law, unless an alternative form of a deed is agreed to in writing by the Attorney General, conveying fee simple absolute title to the property free and clear of all liens and encumbrances other than the following:

(A)     Existing easements, if any, for the construction, operation and maintenance of public service electric, telephone, telegraph and pipe lines or railroads and other transportation corporations or the right of others in any public road, public street, public highway, or waterway, running through or along the property; and any other existing easements or encumbrances which the Trustees and the Attorney General determine, in their sole discretion, will not unreasonably interfere with the intended use of the parcel and which do not render title unmarketable.

(B)     Said deed shall be prepared by the Attorney General, in consultation with Honeywell, and shall be subject to the approval of the Attorney General with respect to form, manner of execution, and recordability.  Recording of the deed by the County Clerk shall constitute acceptance of fee title in property by the People of the State of New York and shall fix the time of vesting of title to the property in the People of the State of New York.

(C)     Said deed shall contain a restrictive covenant, subject to the approval of the Attorney General, providing that the property shall only be used in a manner consistent with its function and purpose as a Restoration Project pursuant to the applicable Scope of Work (Appendix C) and further that the property shall not be used for residential purposes.

d.    <u>Conservation Easement Granted to the State of New York</u>.  For an interest in land that is conveyed to the People of the State of New York, acting by and through their Commissioner of Environmental Conservation, by Conservation Easement:

(1)    *Title*.

(A)    Title to the property shall be examined with all convenient speed and shall be subject to the approval of the Attorney General after the same has been made satisfactory to the Attorney General.

(B)    The Attorney General shall submit all closing requirements in writing to Honeywell.  Honeywell shall cooperate with the Attorney General by providing any existing abstract of title, copy of any existing title insurance policy, existing survey, and any or all related documentation within Honeywell's possession or reasonably obtained by Honeywell.  Honeywell shall secure and deliver (i) any affidavits, as deemed reasonably necessary by the Attorney General for the purpose of disposing of objections to title to the property and (ii) a release for any mortgage, trust deed, or monetary lien created by Honeywell that is security for payment of a sum of money (including, without limitation, tax liens, contractor's liens, and judgment liens) burdening or encumbering the property.

(2)    *Easement Deed*.  Whenever notified by the Attorney General by letter or otherwise, Honeywell shall execute and deliver to the Attorney General, without unreasonable delay, a warranty deed with the covenant required by Subdivision 5 of Section 13 of the New York Lien Law, unless an alternative form of a deed is agreed to in writing by the Attorney General, conveying the Conservation Easement over the property free and clear of all liens and encumbrances other than the following:

(A)    Existing easements, if any, for the construction, operation and maintenance of public service electric, telephone, telegraph and pipe lines or railroads and other transportation corporations or the right of others in any public road, public street, public highway, or waterway, running through or along the property, and any other existing easements or encumbrances which the Trustees and the Attorney General determine, in their sole discretion, will not unreasonably interfere with the intended use of the parcel and which do not render title unmarketable.

(B)    Said Conservation Easement shall be prepared by the Attorney General, in consultation with Honeywell, and shall be subject to the approval of the Attorney General with respect to form, manner of execution, and recordability.  Recording of the Conservation Easement by the County Clerk shall constitute acceptance of the Conservation Easement by the People of the State of New York, acting by and through their Commissioner of Environmental Conservation, and shall fix the time of vesting of title to the Conservation Easement in the People of the State

13

of New York, acting by and through their Commissioner of Environmental Conservation.

> (C)    The Conservation Easement shall restrict the use of the land in perpetuity and in a manner consistent with its function and purpose as a Restoration Project pursuant to this Consent Decree and as set forth in the applicable Scope of Work (Appendix C).

e.    <u>Fee Title to a Third Party</u>.  For an interest in land that is conveyed by fee title to a third party jointly designated in writing by the Trustees:

> (1)    The title conveyed by Honeywell shall be free and clear of any liens and/or encumbrances, except for the encumbrances set forth above in Paragraph 24(c)(2)(A), which the Trustees have determined will not interfere with the compensatory purpose and intended use of the parcel.

> (2)    The parcels shall be subject to a Conservation Easement granted to the People of the State of New York and/or deed restrictions acceptable to the Trustees and subject to the approval of the Attorney General, providing that the property shall only be used in a manner consistent with its function and purpose as a Restoration Project pursuant to the applicable Scope of Work (Appendix C) and further that the property shall not be used for residential purposes.

f.    <u>Closing Costs</u>.  Honeywell shall be exclusively responsible for all Closing Costs related to the acquisition and transfer of fee title to the parcels, or the Conservation Easements.  "Closing Costs" consist of all title insurance, transfer fees, attorneys' fees, a boundary survey conducted by a licensed surveyor, broker fees, recording costs, and other costs customarily incurred by buyers of real property in New York, such that Honeywell shall deliver evidence of recorded, marketable title, in the name of the "People of the State of New York" or the "People of the State of New York, acting by and through their Commissioner of Environmental Conservation," as grantee, accompanied by a boundary survey.

g.    <u>Additional Provisions Related to Tully Property</u>.  In addition to the other requirements set forth in this Paragraph 24, this subparagraph shall apply to the approximately 1,023 acres that comprise the Tully Recreational Area and Nature Preserve Project (Appendix C, Project 10) ("Tully Property") or part thereof title that is conveyed to a third party.  Title to the Tully Property or part thereof shall not be conveyed to a third party unless such third party agrees, in writing, that (i) the property is being conveyed "as is with all faults" without representations or warranties by Honeywell of any kind, and (ii) such third party will not assert any claim against Honeywell or the other Parties based, in whole or in part, on such third party's ownership of the Tully Property, and any alleged actions or omissions by Honeywell related to Honeywell's solution mining activities at or in the environs of the Tully Property.  Any and all subsequent transfers of title, in whole or in part, of the Tully Property by a third party shall be on 30-days written notice to Honeywell and the State of New York transmitted by the transferor prior to any such transfer and any such instrument of transfer shall reference this provision of the Consent Decree and shall be conditioned on the proposed transferee agreeing in writing

14

to these same terms and conditions. By the terms of this subparagraph 24(g), it is the intention of the Parties that title, in whole or in part, to the Tully Property, whether obtained by a Third Party directly pursuant to the terms of this subparagraph or obtained remotely through one or more subsequent transfers of ownership from a third party, does not provide a legal predicate for any such third party owner to assert claims against Honeywell arising from or related to any alleged acts or omissions by Honeywell related to solution mining at or in the environs of the Tully Property, where title is a necessary element for such claim. Nothing in this subparagraph is intended to alter, diminish, support, or extinguish any claim that a third party owner of the Tully Property may have against Honeywell that is not predicated on ownership of the Tully Property.

      h.    <u>Treatment of Property During Intervening Time Period</u>. As of the date of lodging of this Consent Decree and pending the conveyance of a Conservation Easement or fee title as provided in this Paragraph 24, any land that will be subject to the implementation of a Restoration Project that is owned by Honeywell and any land acquired by Honeywell pursuant to Paragraph 23 shall be used and maintained by Honeywell in a manner that is consistent with the respective Restoration Project planned for that land and with the function and performance of the Restoration Project as designed. This will include provision for public access for recreational projects and restrictions for public access for ecological enhancement projects, the details of which will be contained in the applicable Restoration Work Plans pursuant to Paragraph 21, above.

      25.    **Acquisition of Rights of Access for Project Implementation and Maintenance**. Within 18 months after the Effective Date, or within such other time period if agreed to in writing by the Trustees, Honeywell shall obtain the requisite rights of access from the appropriate third party entity needed by Honeywell to implement, and by the County of Onondaga to maintain, the Erie Canal Trail Project (Appendix C, Project 11) and the Outlet Jetty Enhancement Project (Appendix C, Project 17).

      26.    **Contingency for Property Acquisition**. In the event that Honeywell fails to obtain the requisite title from a third party, as provided in Paragraph 23, above, necessary to implement a Restoration Project due to a force majeure event or an inability to acquire title at a commercially reasonable price, Honeywell shall propose for Trustees' approval an alternative location or property in order to achieve comparable ecological function, size, configuration, and location as the original Restoration Project. Following Trustees' approval of such alternative location or property, Honeywell shall implement the project at the approved alternative location or property within a mutually agreed upon timeframe. If the Trustees and Honeywell are unable to agree upon an alternative location or property, Honeywell, in lieu of implementing the project, shall pay to the Trustees $2,500 per acre at the Onondaga Lake Wetland Conservation Project (Appendix C, Project 5) and $6,000 per acre at the Maple Bay Onshore Habitat Enhancement Project (Appendix C, Project 2) and the Hudson Farms Ecological Enhancement Project (Appendix C, Project 8), plus Interest running from the date of Honeywell's notice to the Trustees of its inability to acquire property necessary to complete a given Restoration Project. These amounts shall be paid into the NRDAR Onondaga Lake sub-account, in accordance with Paragraph 10(a), for each Restoration Project that is not implemented, with the funds to be used by the Trustees for other restoration projects. Any approved alternative location or property or

payment in lieu of performance of Restoration Project shall be subject to Section XXVIII (Modification).  If Honeywell seeks to assert either a force majeure event or an inability to acquire title at a commercially reasonable price with respect to the properties addressed by this Paragraph, then Honeywell shall comply in the first instance with the notice and all other requirements set forth in the provisions of Section XV (Force Majeure).

27.     **Restoration Project Implementation Report**.  No later than 90 days after the date of Project Implementation, Honeywell shall submit to the Trustees for their approval, in accordance with Section XI (Approval of Submittals), and provide to Onondaga County a Restoration Project Implementation Report for each Restoration Project.  Each Restoration Project Implementation Report shall include: (i) date of Project Implementation; (ii) detailed description of all activities performed by Honeywell for the project, including, at a minimum, as applicable, acres treated/planted/excavated, species planted, acres acquired, number and type of structures, or any other habitat enhancement activities or indicia; (iii) as-built drawings, signed and stamped by a registered professional engineer and/or signed by a qualified biologist, for any construction or habitat restoration undertaken pursuant to the approved Restoration Work Plan; (iv) photographs and maps of the project and its components; (v) a description of any challenges encountered while implementing the project and the implemented solution(s); and (vi) detailed plan and schedule for future monitoring and maintenance of the project, consistent with the applicable Scope of Work (Appendix C) and the applicable Performance Criteria.  The report shall contain the certification set forth in Section XXV, signed by Honeywell's Project Coordinator, and a statement by a professional engineer and/or qualified biologist stating that the project has been implemented in full satisfaction of the requirements of this Decree.

28.     **Monitoring and Maintenance, and Restoration Project Completion Report**.  Commencing on the date of Project Implementation and continuing for a period of 5 years, Honeywell shall monitor and maintain each Restoration Project as set forth in the Scopes of Work (Appendix C) (except for the Native Grasslands Restoration Project (Appendix C, Project 6), for which project the applicable period of time for monitoring and maintenance by Honeywell shall be no less than 30 years from the date of Project Implementation).  Notwithstanding the preceding sentence, for each Project that is also a County Maintenance Project, Honeywell's monitoring and maintenance obligations will end, and the County's monitoring and maintenance obligations will begin upon the approval by the Trustees of Honeywell's Restoration Project Implementation Report for each such project.  No later than 30 days after the completion of the required 5 years of monitoring and maintenance by Honeywell, Honeywell shall submit to the Trustees and provide to Onondaga County a Restoration Project Completion Report for each Restoration Project that is not also a County Maintenance Project.  Each Restoration Project Completion Report shall include a description of the completed project, monitoring report(s), and any other documentation demonstrating project compliance with the Performance Criteria, photographs and maps of the completed project, any supporting information on land transactions (deeds, Conservation Easements, etc.), if applicable, and recommendations for future management, if needed.  If any applicable Performance Criteria are not met, Honeywell shall propose to Trustees for their written approval a proposed solution and schedule to be implemented to satisfy and maintain the Performance Criteria, in accordance with Appendix C (Scopes of Work) and, if applicable, Paragraph 30 (Contingency for Restoration Projects).  Any recommendations by Honeywell for future management or any proposed solution by Honeywell

regarding any unmet Performance Criteria for a Project located on County-owned land, easement, or rights-of-way shall be reviewed and consented to by the County before it can be approved by the Trustees, such consent not to be unreasonably withheld consistent with applicable law.  Review and consent by the County shall not alter Honeywell's time to submit the Project Completion Report.  The Report shall contain the certification set forth in Section XXV, signed by Honeywell's Project Coordinator, and a statement by a professional engineer and/or qualified biologist stating that the project has been completed in full satisfaction of the requirements of this Decree.

29.     **Certification of Project Completion**.  No later than 60 days after the date of the Trustees' receipt of each Honeywell Restoration Project Completion Report, the Trustees shall evaluate each report and the results of any inspection they may undertake, and if the Trustees agree that the Restoration Project has been completed in accordance with the requirements of this Consent Decree, then the Trustees shall issue a Certification of Project Completion for the particular Restoration Project and provide a copy to the County.  If the Trustees determine that the Restoration Project has not been completed in accordance with the requirements of this Consent Decree, the Trustees will arrange a meeting with Honeywell (and if the subject project is a County Access Project, the County) to discuss what additional activities need to be taken and the schedule for such activities.  If the Trustees and Honeywell are able to reach a written agreement of the additional activities and schedule, Honeywell shall implement such additional activities in accordance with the agreed upon schedule, pursuant to the written agreement.  If Honeywell and the Trustees (and if applicable, the County) are unable to reach an agreement, then the Trustees will notify Honeywell (and if applicable, the County) in writing of the activities that must be undertaken by Honeywell to complete the Restoration Project, provided, however, the Trustees may only require Honeywell to perform any activities to the extent they are consistent with the Scopes of Work (Appendix C).  The Trustees will set forth in the notice a schedule for performance of such activities consistent with this Decree.  Honeywell shall perform all activities described in the notice in accordance with the specifications and schedule established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XVI (Dispute Resolution).

30.     **Contingency for Restoration Projects**.  In the event (i) Honeywell fails to obtain the requisite title, as provided in Paragraph 23, above, necessary to implement the Erie Canal Trail Project (Appendix C, Project 11), the Boat Launch Project (Appendix C, Project 18), or the Public Fishing Access Project (Appendix C, Project 19) due to a force majeure event or an inability to acquire title at a reasonably commercial price, or (ii) Honeywell fails to obtain the requisite access rights from the appropriate third party entity or from Onondaga County in order to implement and/or maintain Maple Bay In-Lake Habitat Enhancement Project (Appendix C, Project 1), Maple Bay Onshore Habitat Enhancement Project (Appendix C, Project 2), Northwest Shoreline Onshore Enhancement Project (Appendix C, Project 3), the Erie Canal Trail Project (Appendix C, Project 11), or the Outlet Jetty Enhancement Project (Appendix C, Project 17) due to a force majeure event, or (iii) Honeywell is unable to meet the performance criteria for any Restoration Project, or (iv) Honeywell fails to satisfy its obligations to complete, implement, or maintain any Restoration Project due to a force majeure event, Honeywell shall propose for the Trustees' approval an Alternative Restoration Project Proposal ("ARPP") that will achieve comparable ecological function or recreational use, size, configuration, and location as the

17

original Restoration Project, taking into account any ecological or recreational benefits that have been or will be achieved from any portion(s) of the original Restoration Project that may have been completed.  In accordance with Section XI (Approval of Submittals), if the Trustees approve the ARPP, Honeywell shall implement the Alternate Restoration Project pursuant to the approved ARPP and schedule.  If the Trustees do not approve Honeywell's ARPP, the Trustees shall notify Honeywell in writing of a Trustee Alternative Restoration Project Plan ("TARPP"). Any ARPP or TARPP proposed to be located or implemented on County-owned land, easements, or right-of-ways shall be reviewed and are subject to approval of the County.  The County's review shall be conducted forthwith, and its approval shall not be unreasonably withheld consistent with applicable law.  Honeywell shall implement the approved TARPP unless Honeywell invokes the procedures set forth in Paragraph 58 (Formal Dispute Resolution) within 45 days after receiving the TARPP or such other mutually agreed upon time.  The Court shall conduct a de novo review of which proposed alternative restoration project (the Trustees' or Honeywell's) is necessary to achieve comparable ecological function or recreational use, size, configuration, and location as the original Restoration Project taking into account any ecological or recreational benefits that have been or will be achieved from any portion(s) of the original Restoration Project that may have been completed.  Upon the Court's determination of the appropriate alternative restoration project, Honeywell shall implement such project in accordance with the relevant alternative restoration project plan.  If Honeywell seeks to assert either a force majeure event or an inability to acquire title at a reasonably commercial price with respect to the properties addressed by this Paragraph, then Honeywell shall comply in the first instance with the notice and all other requirements set forth in the provisions of Section XV (Force Majeure).

31.    **Annual Reports**.  Excluding County Maintenance Projects as set forth in Paragraph 34(b) below, by December 31 of each year after the lodging of this Consent Decree until the date of the Trustees' issuance of their final Certification of Project Completion for all Restoration Projects, Honeywell shall submit an Annual Report to the United States and the State that shall include:

      a.    Activities that have been undertaken during the past year to implement, monitor, and maintain each Restoration Project;

      b.    Photographs and maps of each Restoration Project;

      c.    Description of the items listed in Paragraph 27(ii);

      d.    Demonstration of compliance with the applicable Performance Criteria for each Restoration Project as set forth in Appendix C (Scopes of Work), and, if any applicable Performance Criteria are not met, Honeywell shall propose to Trustees for their written approval a proposed solution and schedule to be implemented to satisfy and maintain the performance criteria, in accordance with Appendix C (Scopes of Work) and, if applicable, Paragraph 30 (Contingency for Restoration Projects);

      e.    Any changes or modification to activities expected to be undertaken during the next year to maintain each Restoration Project;

f.      Any problems encountered during the previous year or anticipated in the next year, together with implemented or proposed solutions;

g.      Status of any permit applications; and

h.      Proposed plans for implementation activities during the next year for each Restoration Project.

32.     All reports required to be submitted in this Section shall contain a certification signed by a responsible official of Honeywell in accordance with Section XXV (Certification).

33.     Any information provided pursuant to this Consent Decree may be admissible evidence in any proceeding to enforce the provisions of this Consent Decree as permitted by law.

## IX.     RESTORATION OBLIGATIONS OF THE COUNTY

34.     **County Maintenance Projects**.

a.      Upon approval by the Trustees of each applicable Honeywell Restoration Project Implementation Report for each Restoration Project that also is a County Maintenance Project (as defined in Paragraph 5(E)), Onondaga County shall operate, repair, monitor, and maintain each County Maintenance Project for 25 years in accordance with the applicable Scope of Work (Appendix C) and the applicable Restoration Project Implementation Report for each such project ("County Maintenance").  Onondaga County shall be responsible for all costs and expenses associated with such activities and shall maintain all trails in a manner consistent with their purpose.

b.      For each County Maintenance Project, the County shall submit four Annual Reports to the United States and the State describing all operation, repair, monitoring, and maintenance activities undertaken by Onondaga County for the County Maintenance Projects during the subject reporting period.  The reporting period for the first annual report shall be from the date County Maintenance started, as set forth in Paragraph 34(a), through the first full-calendar-year of County Maintenance (i.e., the first 12 to 23 months of maintenance).  The reporting period for the second, third, and fourth Annual Report shall be, respectively, the second, third, and fourth full-calendar-year of County Maintenance.  Each Annual Report shall include a description of items listed in Paragraph 31(a), (b), (e), and (f), and shall contain a certification signed by responsible official at Onondaga County in accordance with Section XXV (Certification).  Each Annual Report shall be submitted no later than February 1 of the year following the applicable reporting year.

c.      Following the completion of the five full-calendar-years of County Maintenance (i.e., 60 to 71 months of County Maintenance), the County shall submit a Restoration Project Completion Report for each County Maintenance Project. The Restoration Project Completion Report shall include a description of items listed in Paragraph 31(a), (b), (e), and (f), and shall contain a certification signed by responsible official at Onondaga County in accordance with Section XXV (Certification). The Restoration Project Completion Report shall be submitted by the County no later than

February 1 of the sixth full-calendar-year of County Maintenance.  Thereafter, at 5-year intervals, the County shall submit a series of three reports to the United States and the State detailing any operation, repair, monitoring, and maintenance activities undertaken by the County for each applicable County Maintenance Project during the preceding 5 calendar years.  The 5-year reports shall be submitted no later than February 1 of the year following the subject reporting period.  A final County Maintenance Report for each project, which likely will report on less than five full years of County Maintenance shall be submitted no later than 60 days after the County completes 25 years of County Maintenance for the subject Project.  Stipulated Penalties pursuant to Section XVII shall not be assessed against the County unless the County fails to submit the requisite report within 45 days after receiving written notice from the Trustees that a report has not been timely submitted.  If possible, individual Project reports may be combined into a single individual annual or 5-year reporting document.

35.     **County Access Projects**.

    a.     Onondaga County shall provide access to the Trustees and Honeywell, and their respective contractors, to implement, monitor, and maintain County Access Projects, in accordance with Section XXI (Access to Restoration Project Properties) and the applicable Scope of Work (Appendix C).

    b.     Commencing on the Effective Date and continuing through and including December 31, 2062, the County shall (i) take no action that would alter or modify the current use or condition of the subject County parkland and (ii) following the Certification of Project Completion issued by the Trustees for each of the (A) Maple Bay In-Lake Habitat Enhancement Project (Appendix C, Project 1), (B) Maple Bay Onshore Habitat Enhancement Project (Appendix C, Project 2), and (C) Northwest Shoreline Onshore Enhancement Project (Appendix C, Project 3) take no action that would destroy or degrade the ecological value and integrity of the subject Projects to the extent that these Projects or portions thereof are located on County parkland, subject to the public's right to enjoy the enhanced environment and benefits provided by each such Project.  The public's right of enjoyment may include trails, paths, viewing platforms, and trail amenities, such as trail-side benches/seating, lighting, and restroom facilities, constructed and maintained by the County in a manner consistent with the ecological value and integrity of these Projects and consistent with the function and performance of the Projects as designed.  The County shall manage and protect from damage or vandalism the subject Restoration Projects, to the extent that they or portions thereof are located on County parkland, in a manner consistent with its management and protection of other County parkland.

36.     **County's Obligation to Record Consent Decree with the Clerk of Onondaga County**.  Within 30 days after the Effective Date, Onondaga County shall cause to be recorded a certified copy of this Consent Decree and a cover letter/affidavit attached to the face of the Consent Decree stating that pursuant to Paragraphs 35 and 36, the County is required to file a certified copy of this Consent Decree on the land records of Onondaga County with respect to the affected County-owned parcels upon which Restoration Projects will be implemented (Appendix C of the Consent Decree, Projects 1, 2, 3, and 17), said parcels being identified in

Appendix D of this Decree, with the Clerk of Onondaga County against each parcel of real property identified in Appendix D said parcels being owned by the County and upon which a Restoration Project is to be implemented in whole or in part pursuant to this Consent Decree, specifically: (i) Shoreline Enhancement component of the Maple Bay In-Lake Habitat Enhancement Project (Appendix C, Project 1); (ii) Maple Bay Onshore Habitat Enhancement Project (Appendix C, Project 2); (iii) Northwest Shoreline Onshore Enhancement Project (Appendix C, Project 3); and (iv) County-owned property required for the Outlet Jetty Enhancement Project (Appendix C, Project 17). Within 180 days after the Effective Date, Onondaga County shall transmit proof of the requisite recording including relevant book and page numbers to the Trustees and Honeywell. The County's failure to fully comply with the requirements of this Paragraph 36 shall constitute a violation of this Decree and in addition to any other relief available to the Trustees, the County shall also be subject to stipulated penalties of $5,000.00 per calendar day that each such violation continues.

## X.   STEWARDSHIP FUNDS

37.   Stewardship funds shall be used by the Trustees, in the exercise of their sole discretion as to the proper allocation of such funds, to fund activities undertaken by the Trustees or by a third party acting with the written approval of the Trustees, for the protection and maintenance of the Restoration Projects set forth in Appendix C or any joint Trustee-sponsored natural resource restoration project undertaken in accordance with Section VII. Nothing in this Paragraph diminishes or modifies the obligations of the Settling Parties as set forth in this Decree.

## XI.   APPROVAL OF SUBMITTALS

38.   After review of any plan, report, or other document that is required to be submitted to the Trustees for approval pursuant to this Consent Decree, the Trustees shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

39.   If the submission is approved pursuant to Paragraph 38(a), the applicable Settling Party shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraph 38(b) or (c), the applicable Settling Party shall, upon written direction from Trustees, take all actions required by the approved plan, report, or other document that the Trustees determine are technically severable from any disapproved portion(s), subject to the applicable Settling Party's right to dispute only the specified conditions or the disapproved portion(s), under Section XVI (Dispute Resolution).

40.   If the submission is disapproved in whole or in part pursuant to Paragraph 38(c) or (d), the applicable Settling Party shall, within 30 days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other document, or disapproved portion(s) thereof, for approval, in accordance with preceding Paragraphs. If the resubmission is approved in whole or in part, the applicable Settling Party shall proceed in accordance with the preceding Paragraph.

41.     If a resubmitted plan, report, or other document, or portion thereof, is disapproved in whole or in part, the Trustees may again require the applicable Settling Party to correct any deficiencies, in accordance with the preceding Paragraph, or may themselves correct any deficiencies, subject to the applicable Settling Party's right to invoke Dispute Resolution and the right of the Trustees to seek stipulated penalties and other relief.  The Trustees shall not modify any Restoration Work Plan that materially changes the scope of any particular Restoration Project.

42.     Any stipulated penalties applicable to the original submission, as provided in Section XVII (Stipulated Penalties), shall accrue during the 30-day period or other specified period but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of the Settling Party's obligations under this Consent Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

43.     Upon approval, approval upon conditions, or modifications by the Trustees under this Section, of any plan, report, or other document, or any portion thereof, such plan, report, or other document, or portion thereof, shall be incorporated into and enforceable under this Consent Decree.

## XII.   PROJECT COORDINATORS

44.     Within 30 days after the Effective Date, Settling Parties and the Trustees shall notify each other, in writing, of the name, address, and telephone number of their respective designated project coordinator(s).  If a project coordinator initially designated is changed, the identity of the successor shall be provided at least 5 working days before the change occurs, unless impracticable.  In no event shall notification be given later than the actual day the change is made unless impracticable.  The Trustees' and Settling Parties' project coordinators shall have sufficient expertise to adequately oversee all aspects of the work that they are to coordinate.

## XIII.   FINANCIAL ASSURANCE

45.     Based upon financial representations and assurances made by Honeywell, the Trustees have no reason to believe that Honeywell presently does not have the financial ability to perform its obligations under this Consent Decree.  On the first anniversary of the Effective Date, Honeywell shall demonstrate its financial ability to discharge its obligations by submitting to the Trustees a copy of Honeywell's most recent Form 10-K Annual Report.  Each year thereafter until all Restoration Projects are completed (excluding required long-term monitoring and maintenance for the Restoration Projects, and excluding the Invasive Species Control and Habitat Preservation Project), Honeywell shall submit its most recent Form 10-K Annual Report to the Trustees within 30 days after filing of such report.

46.     In the event that the Trustees determine that the financial representations and assurances provided by the Form 10-K Annual Report and/or other information available to them do not demonstrate Honeywell's ability to fulfill its remaining obligations under this Decree, then Honeywell shall establish and maintain financial assurance in the amount then needed to fulfill its remaining obligations in one or more of the mechanisms listed below, and satisfactory

to the Trustees.  Honeywell may use multiple mechanisms if they are limited to surety bonds guaranteeing payment, letters of credit, trust funds, and/or insurance policies:

   a. A surety bond guaranteeing performance of all Restoration Projects that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

   b. An irrevocable letter of credit, payable to or at the direction of the Trustees, that is issued by an entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency;

   c. A trust fund established for the benefit of the Trustees that is administered by a trustee that has the authority to act a trustee and whose trust operations are regulated and examined by a federal or state agency;

   d. A policy of insurance that provides the Trustees with acceptable rights as beneficiaries thereof and that is issued by an insurance carrier that has the authority to issue insurance policies in the applicable jurisdiction and whose insurance operations are regulated and examined by a federal or state agency;

   e. A demonstration that Honeywell meets the relevant financial test criteria of 40 C.F.R. § 264.143(f); or

   f. A guarantee to perform all Restoration Projects executed in favor of the Trustees by one of the following: (1) a direct or indirect parent company of Honeywell; or (2) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.143(h)) with Honeywell; provided, however, that any company providing such a guarantee must demonstrate to the Trustees' satisfaction that it meets the relevant financial test criteria of 40 C.F.R. § 264.143(h).

  47. Honeywell shall diligently monitor the adequacy of any financial assurance secured by Honeywell pursuant to this Section.  If Honeywell becomes aware of any information indicating that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, Honeywell shall notify the Trustees of such information within 7 days.  If the Trustees determine that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, the Trustees will notify Honeywell of such determination.  Honeywell shall, within 30 days after notifying the Trustees or receiving notice from the Trustees under this Paragraph, secure and submit to the Trustees for approval a proposal for a revised or alternative financial assurance mechanism that satisfies the requirements of this Section.  Honeywell's inability to secure and submit to the Trustees financial assurance in accordance with this Section shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Honeywell to complete the Restoration Projects in accordance with the terms of this Consent Decree.

  48. Honeywell may invoke dispute resolution procedures set forth in Section XVI (Dispute Resolution) to dispute a Trustees' determination that (i) Honeywell's Annual Report or other information available to the Trustees does not demonstrate the company's financial ability

23

to complete its obligations of this Consent Decree, and (ii) Honeywell's financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section.

## XIV.  INDEMNIFICATION AND INSURANCE

49.  **Settling Parties' Indemnification of the United States and the State**.

a.     The United States and the State do not assume any liability by entering into this Consent Decree.

b.     Honeywell and Onondaga County shall indemnify, save, and hold harmless the United States and the State and their officials, agents, employees, contractors, subcontractors, and representatives, and each other for or from any and all claims or causes of action by any person or entity other than the United States or the State arising from, or on account of negligent or other wrongful acts or omissions of Honeywell and Onondaga County, respectively, and their respective officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Parties' behalf or under their control, in carrying out activities pursuant to this Consent Decree.  Further, Honeywell and Onondaga County agree to pay the United States and the State all costs they incur including, but not limited to, costs of litigation and settlement arising from, or on account of, claims by any person or entity other than the United States or the State made against the United States and/or the State based on negligent or other wrongful acts or omissions of Honeywell and Onondaga County, respectively, and their respective officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree.

c.     Honeywell shall indemnify, save, and hold harmless the United States and the State and their officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action by any person or entity other than the United States or the State to the extent that such claims are arising from, or on account of, conditions on or in the lands of the Tully Recreational Area and Nature Preserve Project (Appendix C, Project 10) for which solution mining activities are or were a substantial contributing factor.  Honeywell agrees to pay the United States and the State all necessary costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement to the extent that such costs are arising from, or on account of, claims by any person or entity other than the United States, the State, or Onondaga County made against the United States and/or the State based on conditions on or in the lands of the Tully Recreational Area and Nature Preserve Project (Appendix C, Project 10) for which solution mining activities are or were a substantial contributing factor.  The indemnity and duty to defend provisions in this subparagraph shall not extend to any liability arising as a result of the gross negligence or reckless, wanton or intentional misconduct or any criminal act by the United States or the State or any of their respective officials, agents, employees, contractors, subcontractors or representatives.

d.      By entering into this Consent Decree, Onondaga County does not assume any obligation or responsibility for the use, occupancy, or potential transfer of the Tully Recreational Area and Nature Preserve Project (Appendix C, Project 10).

e.      Except for those Restoration Projects where Honeywell is transferring title to the State, neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Parties in carrying out activities pursuant to this Consent Decree.  Neither Settling Parties nor any such contractor shall be considered an agent of the United States or the State.

f.      The United States and the State, respectively, shall give Settling Parties notice of any claim for which the United States or the State plans to seek indemnification pursuant to this Paragraph 49, and shall consult with Settling Parties prior to settling such claim.

50.     Settling Parties covenant not to sue and agree not to assert any claims or causes of action against the United States and the State, respectively, for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between Settling Parties and any person for performance of work on or relating to this Consent Decree, including, but not limited to, claims on account of construction delays.  In addition, Settling Parties shall indemnify, save, and hold harmless the United States and the State with respect to any and all claims by any person or entity other than the United States or the State for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Party and any person for performance of work on or relating to this Consent Decree, including, but not limited to, claims on account of construction delays.

51.     **Insurance**.  No later than 15 days before commencing any work, Honeywell shall secure, and shall maintain a comprehensive commercial general liability insurance with limits of $2,000,000.00, for any one occurrence, and automobile liability insurance with limits of $2,000,000.00, combined single limit, naming the United States and the State as additional insureds with respect to all liability arising out of the activities performed by or on behalf of Honeywell pursuant to this Consent Decree.  In addition, for the duration of this Consent Decree, Honeywell shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the work on behalf of Honeywell in furtherance of this Consent Decree. Prior to commencement of the work under this Consent Decree, Honeywell shall provide to the United States and the State certificates of such insurance and a copy of each insurance policy. Honeywell shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date until all maintenance and monitoring required by this Consent Decree is completed.  If Honeywell demonstrates by evidence satisfactory to the United States and the State that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Honeywell needs to provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XV.   FORCE MAJEURE

52.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Parties, of any entity controlled by Settling Parties, or of Settling Parties' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Settling Parties' best efforts to fulfill the obligation. The requirement that Settling Parties exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible.  Force majeure does not include financial inability to complete the work under this Consent Decree or comply with any obligation of this Consent Decree.

53.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Settling Parties intend or may intend to assert a claim of force majeure, Settling Parties shall notify the Trustee's project coordinator orally, within 3 days of when Settling Parties first knew that the event is reasonably likely to cause a delay.  Within 14 days thereafter, Settling Parties shall provide in writing to the Trustees an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Parties' rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Parties, such event may cause or contribute to an endangerment to public health or welfare, or the environment.  Settling Parties shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure.  Settling Parties shall be deemed to know of any circumstance of which Settling Parties, any entity controlled by Settling Parties, or Settling Parties' contractors or subcontractors knew or should have known.  Failure to comply with the above requirements regarding an event shall preclude Settling Parties from asserting any claim of force majeure regarding that event, provided, however, that if the Trustees, despite the late or incomplete notice, are able to assess to their satisfaction whether the event is a force majeure under Paragraph 52 and whether Settling Parties has exercised their best efforts under Paragraph 52, the Trustees may, in their unreviewable discretion, excuse in writing Settling Parties' failure to submit timely or complete notices under this Paragraph.

54.     If the Trustees agree that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by the Trustees for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation.  If the Trustees do not agree that the delay or anticipated delay has been or will be caused by a force majeure, the Trustees will notify Settling Parties in writing of their decision.  If the Trustees agree that the delay is attributable to a force majeure, the Trustees will notify Settling Parties in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

55.     If Settling Parties elect to invoke the dispute resolution procedures set forth in Section XVI (Dispute Resolution) regarding the Trustees' decision, it shall do so no later than 15 days after receipt of the Trustees' notice.  In any such proceeding, Settling Parties shall have the burden of proving that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Parties complied with the requirements of Paragraphs 52 and 53.  If Settling Parties carry this burden, the delay at issue shall be deemed not to be a violation by Settling Parties of the affected obligation of this Consent Decree.

## XVI.  DISPUTE RESOLUTION

56.     The Trustees' disapproval in whole or in part of a submission or revised submittal, or the approval upon specified conditions ("disapproval") under Section XI (Approval of Submittals), and determinations made by the Trustees under Sections VIII (Restoration Project Obligations of Honeywell), IX (Restoration Obligations of the County), XIII (Financial Assurance), XV (Force Majeure), and XVII (Stipulated Penalties), shall be final and binding unless within 15 days after receipt of the Trustees' written notice of disapproval of a submittal or revised submittal, or written notice of an above-listed determination, Settling Parties invoke dispute resolution procedures of this Section by sending the Trustees a written notice specifying the nature of the dispute and requested relief ("Notice of Dispute").

57.     **Informal Dispute Resolution.**  Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the Trustees and Settling Parties.  The period for informal negotiations shall not exceed 21 days from the time the dispute arises, unless it is modified by written agreement of the Parties.  A dispute shall be considered to have arisen when Settling Parties send the Trustees a written Notice of Dispute.

58.     **Formal Dispute Resolution.**

        a.      In the event that the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by the Trustees shall be considered final and binding unless, within 28 days after the conclusion of the informal negotiation period, Settling Parties invoke the formal dispute resolution procedures of this Section by serving on the Trustees a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Parties.

        b.      Within 28 days after receipt of Settling Party's Statement of Position, the Trustees will serve on the applicable Settling Parties their written Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by the Trustees.

        c.      An administrative record of the dispute shall be maintained by the Trustees and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Section.

27

d.      The Trustees and Settling Parties each shall identify Formal Dispute Resolution Representatives who shall meet to discuss the matter in dispute at the earliest available opportunity and will work in good faith to resolve the matter in dispute.  If the Parties fail to resolve the dispute within 28 days after the initial meeting of the Formal Dispute Resolution Representatives, then the position advanced by the Trustees in their Statement of Position shall be considered binding upon Settling Parties, subject to any agreements the Formal Dispute Resolution Representatives may have reached on one or more issues and further subject to Settling Parties' right to seek judicial review pursuant to the following subparagraph.  In such event, the Trustees shall, within 10 business days after the conclusion of the formal dispute resolution process, notify Settling Parties in writing that the formal dispute resolution process has concluded.  Settling Parties may seek judicial review of Trustees' Statement of Position (as modified by any agreements the Formal Dispute Resolution Representatives may have reached) pursuant to the following subparagraph.

e.      Any matter in dispute shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Parties with the Court and served on all Parties within 28 days after receipt of the Trustees' letter notifying Settling Parties of the conclusion of the formal dispute resolution process. The motion shall include a description of the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The Parties shall jointly move the Court to establish a schedule under which the Plaintiffs may file a response to Settling Parties' motion within 28 days after receipt of the motion, and Settling Parties may file a reply brief within 21 days after receipt of the response.  If the Court does not grant the motion for such a schedule, then the Parties shall file the response and reply in accordance with the schedule set forth in the Local Rules for the Northern District of New York.  Except as otherwise provided in Paragraph 30 (Contingency for Restoration Projects), in order to prevail, Settling Parties bear the burden of proving that the Trustees' position is arbitrary, capricious, contrary to law, or contrary to the provisions in this Consent Decree.

f.      The foregoing notwithstanding, the Parties acknowledge that disputes may arise that require resolution on an expedited basis.  In such cases, the Parties shall agree on an expedited schedule or, absent prompt agreement, either Settling Parties or the Trustees may petition the Court for imposition of an expedited schedule.

59.     The invocation of formal dispute resolution procedures under this Section does not extend, postpone, or affect in any way any obligation of Settling Parties under this Consent Decree, unless the Trustees agree or the Court determines otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue, but payment shall be stayed pending resolution of the dispute, as provided in Paragraph 67.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that Settling Parties do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XVII (Stipulated Penalties).

# XVII. STIPULATED PENALTIES

60.     Settling Parties shall be liable for stipulated penalties in the amounts set forth in Paragraphs 61, 62, and 63 to the Plaintiffs for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XV (Force Majeure). "Compliance" by Settling Parties shall include completion of all activities and obligations, including payments, required under this Consent Decree, or any plans or deliverables approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, and any plans or deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

61.     **Stipulated Penalty Amounts – Payments**.  The following stipulated penalties shall accrue per violation per day for each such failure to make any payment required pursuant to Section VI (Payments by Honeywell):

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1st through 14th day | $500 |
| 15th through 30th day | $1,000 |
| 31st day and beyond | $2,000 |

62.     **Stipulated Penalty Amounts – Restoration Project Work**.

a.     <u>Compliance Milestones</u>.  The following stipulated penalties shall accrue per violation per day for each failure to comply with a critical milestone set forth in this Consent Decree or an approved Restoration Work Plan:

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1st through 14th day | $1,000 |
| 15th through 30th day | $2,000 |
| 31st day and beyond | $3,000 |

b.     <u>Restoration Work Requirements</u>.  The following stipulated penalties shall accrue per day for each failure to satisfy any of the Restoration Project work requirements (excluding post-Project Implementation monitoring, maintenance, operation, and repair) set forth in Section VIII (Restoration Project Obligations of Honeywell), Section IX (Restoration Obligations of the County), an approved Restoration Work Plan, or the applicable Scopes of Work (Appendix C):

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1st through 14th day | $1,000 |
| 15th through 30th day | $2,000 |
| 31st day and beyond | $3,000 |

c.     <u>Post-Project Implementation Monitoring, Maintenance, Operation, and Repair Requirements</u>.  The following stipulated penalties shall accrue per day for each failure to satisfy during the first 5 years of any of the post-Project Implementation monitoring, maintenance, operation, and repair requirements set forth in Section VIII (Restoration Project Obligations of Honeywell), Section IX (Restoration Obligations of

the County), an approved Restoration Work Plan, or the applicable Scopes of Work (Appendix C):

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| 1st through 14th day | $500 |
| 15th through 30th day | $1,000 |
| 31st day and beyond | $1,500 |

63.   **Stipulated Penalty Amounts – Plans and Other Deliverables**.  The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate plans or deliverables pursuant to the Consent Decree:

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| 1st through 14th day | $500 |
| 15th through 30th day | $1,000 |
| 31st day and beyond | $2,000 |

64.   All penalties shall begin to accrue on the day after performance or payment is due, or a violation occurs, whichever is applicable, and shall continue to accrue through the final date of satisfactory performance or payment, or until the violations ceases.  However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under Section XI (Approval of Submittals), during the period, if any, beginning on the 31st day after Trustees' receipt of such submission until the date that the Trustees notify Settling Parties of any deficiency; or (b) with respect to judicial review by this Court of any dispute under Section XVI (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

65.   Settling Parties shall pay stipulated penalties to the Plaintiffs within 30 days of a written demand by either Plaintiff, unless Settling Parties invoke the Dispute Resolution procedures under Section XVI within the 30-day period.  Settling Parties shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to the State.  The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.  Penalties shall accrue as provided in the preceding Paragraph regardless of whether the Plaintiffs have notified Settling Parties of a violation or made a demand for payment.

66.   Settling Parties shall pay stipulated penalties owing to the United States and the State in the manner set forth in Paragraph 10(a) and Paragraph 10(b), respectively, and with confirmation notice required by Paragraph 15.

67.   Penalties shall continue to accrue as provided in Paragraph 64 during any dispute resolution period, but need not be paid until the following:

a.   If the dispute is resolved by agreement of the Parties or by a decision of the Trustees that is not appealed to this Court, accrued penalties determined to be owed

shall be paid to the Trustees within 15 days after the agreement or the receipt of the Trustees' decision unless such agreement or decision provides that penalties are not due;

b.      If the dispute is appealed to this Court and the Plaintiffs prevail in whole or in part, Settling Parties shall pay all accrued penalties determined by the Court to be owed to the Plaintiffs within 60 days after receipt of the Court's decision or order, except as provided in Paragraph 67(c);

c.      If the District Court's decision is appealed by any Party, Settling Parties shall pay all accrued penalties determined by the District Court to be owed to the Trustees into an Interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the Federal Deposit Insurance Company, within 60 days after receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to the Plaintiffs or to Settling Parties to the extent that they prevail.

68.      If Settling Parties fail to pay stipulated penalties when due, Settling Parties shall pay Interest on the unpaid stipulated penalties as follows:  (a) if Settling Parties have timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 67 until the date of payment; and (b) if Settling Parties fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 65 until the date of payment.  If Settling Parties fail to pay stipulated penalties and Interest when due, the United States or the State may institute proceedings to collect the penalties and Interest.

69.      The payment of penalties and Interest, if any, shall not alter in any way Settling Parties' obligation to make any payment required under this Consent Decree or to perform any other requirement of this Consent Decree.

70.      Except as provided in Section XVIII (Covenants and Reservations of Rights by Plaintiffs), nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the Plaintiffs to seek any other remedies or sanctions available by virtue of Settling Parties' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the Plaintiffs shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

71.      Notwithstanding any other provision of this Section, Plaintiffs may, in their unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.  For stipulated penalties accruing pursuant to Paragraph 61, the Plaintiff to whom payment is owed may, in its unreviewable discretion, waive payment of any portion of those stipulated penalties that have accrued pursuant to Paragraph 61.

# XVIII.     COVENANTS AND RESERVATIONS OF RIGHTS BY PLAINTIFFS

72.     **Covenant as to Settling Parties**.  Except as provided in Paragraph 73 (General Reservations of Rights Against Settling Parties) and Paragraph 74 (Special Reservations of Rights Against Settling Parties Regarding Natural Resource Damages), the United States and the State covenant not to sue or to take administrative action against Settling Parties for Natural Resource Damages.  This covenant shall take effect for Honeywell upon receipt of Honeywell's payments pursuant to Paragraphs 10-14 of this Consent Decree.  This covenant shall take effect for Onondaga County upon the Effective Date.  This covenant is conditioned upon the satisfactory performance by Settling Parties of their respective obligations under this Consent Decree.  This covenant extends only to Settling Parties and does not extend to any other person.

73.     **General Reservations of Rights Against Settling Parties**.  The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Parties with respect to all matters not expressly included within Plaintiffs' covenant in Paragraph 72.  Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all such rights, without limitation, against Settling Parties, and Settling Parties reserve all defenses, without limitation, with respect to:

> a.     liability for failure to meet a requirement of this Consent Decree;

> b.     liability for injunctive relief or administrative order enforcement under CERCLA Section 106, 42 U.S.C. § 9606, New York Environmental Conservation Law Article 27, Title 13, and New York Navigation Law Article 12;

> c.     liability under CERCLA Section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), New York Environmental Conservation Law Article 27, Title 13, and New York Navigation Law Article 12, for costs of removal or remedial action incurred or to be incurred by the United States or State;

> d.     liability under CERCLA Section 107(a)(4)(D), 42 U.S.C. § 9607(a)(4)(D), and for costs of any health assessment or health effects study carried out under 42 U.S.C. § 9604(i);

> e.     liability for damages or any other costs incurred or to be incurred by the United States or the State that are not within the definition of Natural Resource Damages;

> f.     liability arising from the past, present, or future disposal, release, or threat of release of hazardous substances outside of the Site;

> g.     liability based on the release of hazardous substances from a facility owned by Settling Parties when such ownership commences after the date of lodging of this Consent Decree and does not arise from Settling Parties' performance of the work required by this Consent Decree, any other federal or state consent decree, a federal or state administrative order, or a federal or state permit regarding the Site, assuming such work or performance is conducted in conformity with the requirements of any such decree, order, or permit;

32

        h.      liability based on the release of hazardous substances from a facility operated by Settling Parties when such operation commences after the date of lodging of this Consent Decree and does not arise from Settling Parties' performance of the work required by this Consent Decree, any other federal or state consent decree, a federal or state administrative order, or a federal or state permit regarding the Site, assuming such work is performed in conformity with the requirements of any such decree, order, or permit;

        i.      liability arising from Settling Parties' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of hazardous substances at the Site where such transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal commences after the date of lodging of this Consent Decree and does not arise from Settling Parties' performance of the work required by this Consent Decree or any other federal or state consent decree, federal or state administrative order, or a federal or state permit regarding the Site, assuming such work is performed in conformity with the requirements of any such decree, order, or permit; and

        j.      criminal liability.

    74.    **Special Reservations of Rights Against Settling Parties Regarding Natural Resource Damages**.  Notwithstanding any other provision of this Consent Decree, the United States and the State each reserves the right to institute proceedings against Settling Parties in this action or in a new action seeking recovery of Natural Resource Damages, based on:  (i) conditions relating to the Site, unknown to the Trustees as of the date of lodging of this Consent Decree, that contribute to injury to, destruction of, or loss of natural resources ("Unknown Conditions"); or (ii) information received by the Trustees after the date of lodging of this Consent Decree which indicates that there is injury to, destruction of, or loss of Natural Resource Damages of a type or future persistence unknown by the Trustees as of the date of lodging of this Consent Decree ("New Information").  Any Natural Resource Damages resulting from the release of mercury or any other hazardous substance from any former Honeywell or Onondaga County operation where such release occurred prior to the date of lodging of this Consent Decree shall not be considered Unknown Conditions or New Information for purposes of this Paragraph. For purposes of this Paragraph, the conditions and information known to the Trustees on the date of lodging of this Consent Decree shall include the conditions and information set forth in any sampling data and other data and information in the possession or control of the United States or the State at any time prior to the date of lodging of this Consent Decree; and/or all analyses, diagrams, maps, reports, and surveys performed at the Site by or on behalf of the United States or the State.

    75.    **Covenant as to Honeywell Indemnified Parties**.  Except as provided in Paragraph 76 (General Reservations of Rights Against Honeywell Indemnified Parties) and Paragraph 77 (Special Reservations of Rights Against Honeywell Indemnified Parties Regarding Natural Resource Damages), the United States and the State covenant not to sue or to take administrative action against Honeywell Indemnified Parties for Lake Bottom Subsite Natural Resource Damages.  This covenant shall take effect upon receipt of Honeywell's payments

pursuant to Paragraphs 10-14 of this Consent Decree. This covenant extends only to Honeywell Indemnified Parties and does not extend to any other person.

76. **General Reservations of Rights Against Honeywell Indemnified Parties**. The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Honeywell Indemnified Parties with respect to all matters not expressly included within Plaintiffs' covenant in Paragraph 75. Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all such rights against Honeywell Indemnified Parties, including with respect to:

     a.     liability for failure to meet a requirement of this Consent Decree;

     b.     liability for injunctive relief or administrative order enforcement under CERCLA Section 106, 42 U.S.C. § 9606, New York Environmental Conservation Law Article 27, Title 13, and New York Navigation Law Article 12;

     c.     liability under CERCLA Section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), New York Environmental Conservation Law Article 27, Title 13, and New York Navigation Law Article 12, for costs of removal or remedial action incurred or to be incurred by the United States or State;

     d.     liability under CERCLA Section 107(a)(4)(D), 42 U.S.C. § 9607(a)(4)(D), for costs of any health assessment or health effects study carried out under 42 U.S.C. § 9604(i);

     e.     liability for damages or any other costs incurred or to be incurred by the United States or the State that are not within the definition of Lake Bottom Subsite Natural Resource Damages;

     f.     liability arising from the past, present, or future disposal, release, or threat of release of hazardous substances outside of the Lake Bottom Subsite;

     g.     liability based on the release of hazardous substances from a facility at the Lake Bottom Subsite owned or operated by a Honeywell Indemnified Party when such ownership and/or operation commences after the date of lodging of this Consent Decree by a Honeywell Indemnified Party;

     h.     liability arising from a Honeywell Indemnified Party's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of hazardous substances at or in connection with the Lake Bottom Subsite that commences after the date of lodging of this Consent Decree; and

     i.     criminal liability.

77. **Special Reservations of Rights Against Honeywell Indemnified Parties Regarding Natural Resource Damages**. Notwithstanding any other provision of this Consent Decree, the United States and the State each reserves the right to institute proceedings against Honeywell Indemnified Parties in this action or in a new action seeking recovery of Lake Bottom Subsite Natural Resource Damages, based on: (i) conditions relating to the Lake Bottom

34

Subsite, unknown to the Trustees as of the date of lodging of this Consent Decree, that contribute to injury to, destruction of, or loss of natural resources ("Unknown Conditions"); or (ii) information received by the Trustees after the date of lodging of this Consent Decree which indicates that there is injury to, destruction of, or loss of Lake Bottom Subsite Natural Resource Damages of a type or future persistence unknown by the Trustees as of the date of lodging of this Consent Decree ("New Information").  Any Lake Bottom Natural Resource Damages resulting from the release of mercury or any other hazardous substance at the Lake Bottom Subsite from any former Honeywell or Onondaga County operation where such release occurred prior to the date of lodging of this Consent Decree shall not be considered Unknown Conditions or New Information for purposes of this Paragraph.  For purposes of this Paragraph, the conditions and information known to the Trustees on the date of lodging of this Consent Decree shall include the conditions and information set forth in any sampling data and other data and information in the possession or control of the United States or the State at any time prior to the date of lodging of this Consent Decree; and/or all analyses, diagrams, maps, reports, and surveys performed at the Lake Bottom Subsite by or on behalf of the United States or the State.

## XIX.   COVENANTS BY SETTLING PARTIES

78.    **Covenants by Settling Parties.**  The Settling Parties covenant not to sue and agree not to assert any claims or causes of action against the United States or the State, or their contractors or employees, with respect to Natural Resource Damages or this Consent Decree, including, but not limited to:

      a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund through CERCLA Section 106(b)(2), 107, 111, 112, or 113, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

      b.    any claims under CERCLA Section 107 or 113, 42 U.S.C. §§ 9607 or 9613, relating to Natural Resource Damages; or

      c.    any claims arising out of activities related to the Restoration Projects (excluding any claims based on the negligence of the United States or the State), including without limitation, claims based on the Trustees' selection of such Restoration Projects, implementation and oversight of Restoration Projects, and/or approval of the plans for such activities.

79.    Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## XX.   EFFECT OF SETTLEMENT; CONTRIBUTION

80.    Except as provided in Paragraph 75 (Covenant as to Honeywell Indemnified Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have

with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

81.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Party has resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the matters addressed in this Consent Decree.  The "matters addressed" in this Consent Decree are Natural Resource Damages; provided, however, that if the United States or the State exercises rights under the reservations in Section XVIII (Covenant and Reservations of Rights by Plaintiffs), other than in Paragraph 73(a) and Paragraph 76(a) (claims for failure to meet a requirement of the Consent Decree) or Paragraph 73(j) and Paragraph 76(i) (criminal liability), the "matters addressed" in this Consent Decree will no longer include those Natural Resource Damages that are within the scope of the exercised reservation.  The contribution protection afforded by this Consent Decree shall take effect upon receipt of Honeywell's payments pursuant to Paragraphs 10-14 of this Consent Decree.

82.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Party has resolved liability to the United States for Natural Resource Damages within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).  The contribution protection afforded by this Consent Decree shall take effect for Honeywell upon receipt of Honeywell's payments pursuant to Paragraphs 10-14 of this Consent Decree.  The contribution protection afforded by this Consent Decree shall take effect for Onondaga County upon the Effective Date.

83.     Each Settling Party shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

84.     Each Settling Party shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States and the State within 10 days after service of the complaint on such Settling Party.  In addition, each Settling Party shall notify the United States and the State within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

85.     **Res Judicata and Other Defenses**.  In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs or Natural Resource Damages, or other appropriate relief relating to the Site, Settling Parties shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing

in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XVIII (Covenants and Reservations of Rights by Plaintiffs).

## XXI.   ACCESS TO RESTORATION PROJECT PROPERTIES

86.     Settling Parties shall provide the Plaintiffs and their representatives, including attorneys, contractors, and consultants, with access at all reasonable times to the Site, any property that is subject to a Restoration Project, or any other real property where access is needed for purposes of this Consent Decree and is owned or controlled by Settling Parties, to:

a.     monitor the implementation of the Consent Decree requirements;

b.     verify any data or information submitted to the Plaintiffs under this Consent Decree;

c.     inspect and copy records, operating logs, contracts, or other documents maintained or generated by Settling Parties or their contractors, relating to implementation of this Consent Decree and consistent with Section XXII (Access to Information);

d.     conduct such tests, investigations, or sample collection as deemed necessary to monitor compliance with this Consent Decree or to assist in further identifying and quantifying natural resource injuries requiring restoration actions and in planning and carrying out maintenance actions as provided in Paragraph 86(f);

e.     obtain documentary evidence, including photographs, sound recordings, and other similar data;

f.     undertake any maintenance actions as the Trustees determine appropriate; and

g.     assess Settling Parties' compliance with this Consent Decree.

87.     Within 90 days after the Effective Date, Settling Parties shall execute and exchange with each other any access agreement(s) necessary to authorize the grantee all access rights necessary and required to implement, monitor, maintain or repair the Restoration Projects to be implemented on the lands, easements, or right-of-ways of the grantor by the grantee.

88.     With respect to the Invasive Species Control and Habitat Preservation Project (Appendix C, Project 9), any invasive species control activity undertaken by the Trustees or their representatives on land owned by Onondaga County shall be conducted by mutual agreement between the Trustees and Onondaga County.

## XXII. ACCESS TO INFORMATION

89.     Settling Parties shall provide to the Trustees, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within Settling Parties' possession or control or that of their contractors or agents relating to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records,

manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding any work required under this Consent Decree. Settling Parties shall also make available to the Trustees, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the implementation of this Consent Decree.

90. **Privileged and Protected Claims**.

a. Settling Parties may assert that all or part of a Record requested by the Trustees is privileged or protected as provided under federal or state law, in lieu of providing the Record, provided Settling Parties comply with Paragraph 90(b), and except as provided in Paragraph 92.

b. If Settling Parties assert a claim of privilege or protection, they shall provide the Trustees with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, Settling Parties shall provide the Record to the Trustees in redacted form to mask the privileged or protected portion only. Settling Parties shall retain all Records that they claim to be privileged or protected until the Trustees have had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Parties' favor.

91. **Business Confidential Claims**. Settling Parties may assert that all or part of a Record submitted to the Trustees under this Consent Decree is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Settling Parties shall segregate and clearly identify all Records or parts thereof submitted under this Consent Decree for which Settling Parties assert business confidentiality claims. Records submitted to the Trustees determined to be confidential by the Trustees will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to the Trustees, or if the Trustees have notified Settling Parties that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Parties.

92. Settling Parties may make no claim of privilege, protection, or confidentiality regarding: (1) any data regarding the Site, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any Record or portion of any Record that evidences conditions at or around the Site; or (2) any Record or portion of any Record that Settling Parties are required to create or generate pursuant to this Consent Decree.

## XXIII.   RETENTION OF RECORDS

93. Until 6 years after Honeywell has fully satisfied its obligations under this Consent Decree and until 26 years after the County has commenced County Maintenance (except for the implementation of the Invasive Species Control and Habitat Preservation Project (Appendix C, Project 9)), Settling Parties respectively shall preserve and retain all non-identical copies of

Records (including Records in electronic form) now in their possession or control or that come into their possession or control that relate in any manner to their compliance with this Consent Decree. Settling Parties must also retain, and instruct their contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in their possession or control or that come into their possession or control that relate in any manner to the implementation of the requirements of this Consent Decree, provided, however, that Settling Parties (and their contractors and agents) must retain, in addition, non-identical copies of all data generated during the implementation of the requirements of this Consent Decree and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary. The destruction of any Records by Settling Parties after the required retention period is at Settling Parties' risk.

94.     At the conclusion of this record retention period, Settling Parties shall notify the Trustees at least 90 days prior to the destruction of any such Records, and, upon request by the Trustees, and except as provided in Paragraph 90 (Privileged and Protected Claims), Settling Parties shall deliver any such Records to the Trustees.

## XXIV.        NOTICES AND SUBMISSIONS

95.     All approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, and requests specified in this Consent Decree must be in writing. Whenever, under this Consent Decree, notice is required to be given, or a report or other document is required to be sent, by one Party to another, it must be directed to the person(s) specified below at the address(es) specified below. Any Party may change the person and/or address applicable to it by providing notice of such change to all Parties. All notices and submissions shall be considered effective upon receipt, unless otherwise specified. Written notice by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree.

**As to the United States**:             EES Case Management Unit
                                         U.S. Department of Justice
                                         Environment and Natural Resources Division
                                         P.O. Box 7611
                                         Washington, D.C. 20044-7611
                                         eescdcopy.enrd@usdoj.gov
                                         Re: DJ # 90-11-3-08348/1


                                         Mark Barash
                                         Office of the Solicitor
                                         U.S. Department of the Interior
                                         One Gateway Center
                                         Suite 612
                                         Newton, MA 02458-2802

Anne Secord
Branch Chief, Environmental Quality
U.S. Fish and Wildlife Service
3817 Luker Road
Cortland, New York 13045


**As to the State**:                    Norman Spiegel
Chief Counsel/AAG
NYSOAG-Environmental Protection Bureau
120 Broadway, 26th Floor
New York, New York 10271-0332

Margaret Sheen
Assistant Regional Attorney
NYS Department of Environmental Conservation
615 Erie Blvd West
Syracuse, New York 13204

Sharon L. Brooks
Principal Economist
Office of General Counsel
NYS Dept. of Environmental Conservation
625 Broadway
Albany, New York 12233-1500
John D. Davis Environmental Scientist 4
NYSOAG-EPB
The Capitol
Albany, NY 12224

**As to Honeywell**:

Brian D. Israel
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001

John P. McAuliffe, P.E.
Program Director, Syracuse
Honeywell
301 Plainfield Road, Suite 330
Syracuse, NY 13212

**As to Onondaga County:**

Benjamin M. Yaus
Deputy County Attorney
John H. Mulroy Civic Center, 10th Floor
421 Montgomery Street
Syracuse, New York 13202

Kevin C. Murphy
The Wladis Law Firm, P.C.
P.O. Box 245
Syracuse, New York 13214

Travis Glazier
Director, Office of the Environment
Project Coordinator
John H. Mulroy Civic Center, 14th Floor
421 Montgomery Street
Syracuse, New York 13202

## XXV. CERTIFICATION

96.     Each report, plan, or other document submitted by Settling Parties pursuant to this Consent Decree or Appendices shall be signed by an official of Settling Parties and include the following certification:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

41

97.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

## XXVI.        RETENTION OF JURISDICTION

98.     This Court retains jurisdiction to modify or enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree.

## XXVII.        APPENDICES

99.     The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the RP/EA;

"Appendix B" is the List of Honeywell Indemnified Parties;

"Appendix C" is Scopes of Work for each Restoration Project;

"Appendix D" is a description of each parcel of County property against which this Consent Decree will be recorded by the County.

## XXVIII.        MODIFICATION

100.     Any material modification of this Consent Decree shall be made by agreement of all Parties and in writing, and shall not take effect unless approved by the Court.  Any non-material modification to this Consent Decree shall be made by agreement of all Parties and in writing, and shall not take effect until filed with the Court.  If any modification of this Consent Decree does not involve or impact Onondaga County, its agreement is not required.

101.     Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications (if agreed to by the Plaintiffs and Honeywell and/or Onondaga County, if required) to this Consent Decree.

102.     Honeywell and the Trustees may agree to add additional Honeywell Indemnified Parties to Appendix B of this Consent Decree in which case, within 20 days after Honeywell's receipt of any proceeds recovered from any future settlor with respect to the Lake Bottom Subsite, Honeywell shall pay five percent of all such proceeds to the United States and the State to be deposited into the segregated Onondaga Lake sub-account to be used by the Trustees in accordance with Section VII.  Payment shall be made in accordance with Paragraph 10(a).  If Honeywell and the Trustees agree to add additional Honeywell Indemnified Parties to this Decree, Honeywell and the Trustees must follow the procedures for modification of this Decree set forth in Paragraph 100 above.  Honeywell shall make all reasonable efforts to consolidate any requests to add additional Honeywell Indemnified Parties to Appendix B.

## XXIX.        LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

103.     This Consent Decree shall be lodged with the Court for at least 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States and the State

reserve the right to withdraw or withhold their consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate.  Settling Parties consent to the entry of this Consent Decree without further notice.

104.    If for any reason the Court should decline to approve this Consent Decree in the form presented, or if approval and entry is subsequently vacated on appeal of such approval and entry, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXX. SIGNATORIES/SERVICE

105.    Each undersigned representative of a Settling Party, the State, and the Assistant Attorney General for the Environment and Natural Resources Division of DOJ certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

106.    Each Settling Party agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Parties in writing that it no longer supports entry of the Consent Decree.

107.    Each Settling Party shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Parties agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  The Settling Parties need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXXI.        FINAL JUDGMENT

108.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

109.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and the Settling Parties.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS **15** DAY OF **March** , 20**18**.

_____
**Senior**   United States District Judge

Signature Page for Consent Decree regarding NRD for the Onondaga Lake Superfund Site

**FOR THE UNITED STATES OF AMERICA:**

12/17/17
Dated

JEFFREY H. WOOD
Acting Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
Washington, D.C. 20530

12/20/2017
Dated

KATHRYN C. MACDONALD
Senior Trial Attorney
N.D.N.Y. Bar Roll No.: 520952
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-7397

GRANT C. JAQUITH
Acting United States Attorney
Northern District of New York

THOMAS SPINA
Assistant United States Attorney
Northern District of New York
James Foley Building
445 Broadway, Room 218
Albany, New York 12207-2924
(518) 431-0247

44

Signature Page for Consent Decree regarding NRD for the Onondaga Lake Superfund Site

OF COUNSEL

MARK BARASH
Senior Attorney
Office of the Solicitor
U.S. Department of the Interior
One Gateway Center, Suite 612
Newton, MA 02458-2802

Signature Page for Consent Decree regarding NRD for the Onondaga Lake Superfund Site

**FOR THE STATE OF NEW YORK:**

11/21/17
Dated

NORMAN SPIEGEL
Assistant Attorney General, NDNY Bar Roll No. 102652
New York State Office of the Attorney General
Environmental Protection Bureau
120 Broadway
New York, New York 10271
(212) 416-8454

Dated

THOMAS BERKMAN
Deputy Commissioner and General Counsel
New York State Department of Environmental
Conservation
625 Broadway
Albany, New York 12233

46

Signature Page for Consent Decree regarding NRD for the Onondaga Lake Superfund Site

**FOR THE STATE OF NEW YORK**:

_____
Dated

_____
NORMAN SPIEGEL
Assistant Attorney General, NDNY Bar Roll No. 102652
New York State Office of the Attorney General
Environmental Protection Bureau
120 Broadway
New York, New York 10271
(212) 416-8454

11/21/17
Dated

_____
THOMAS BERKMAN
Deputy Commissioner and General Counsel
New York State Department of Environmental
Conservation
625 Broadway
Albany, New York 12233

46

Signature Page for Consent Decree regarding NRD for the Onondaga Lake Superfund Site

**FOR HONEYWELL INTERNATIONAL INC.:**

10/11/2017
Dated

D. EVAN VAN HOOK
Corporate V.P.
Health, Safety, Environment,
Product Stewardship and Sustainability
Honeywell International Inc.
115 Tabor Road
Morris Plains, NJ 07950
(973) 455-4132

November 17, 2017
Dated

BRIAN D. ISRAEL
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-6546

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Tom Byrne
Associate General Counsel/Chief Environmental Counsel
Honeywell International Inc.
115 Tabor Road
Morris Plains, NJ 07950
Office: (973) 455-2775
Cell: (973) 610-4816
tom.byrne@honeywell.com

47

Signature Page for Consent Decree regarding NRD for the Onondaga Lake Superfund Site

**FOR ONONDAGA COUNTY:**

12/1/17
Dated

_____
ROBERT A. DURR
County Attorney
John H. Mulroy Civic Center, 10th Floor
421 Montgomery Street
Syracuse, New York 13202
(315) 435-2170

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Robert A. Durr
County Attorney
John H. Mulroy Civic Center, 10th Floor
421 Montgomery Street
Syracuse, New York 13202
(315) 435-2170
RobertDurr@ongov.net

48